**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN A. SCATCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 20 CV 1045 |
| | ) | |
| VILLAGE OF MELROSE PARK, an Illinois | ) | Honorable Gary Feinerman |
| Municipal Corporation, MELROSE PARK BD | ) | |
| OF FIRE AND POLICE COMM'N, RONALD | ) | |
| SERPICO, SAM PITASSI, MICHAEL | ) | |
| CASTELLAN, PETER CAIRA, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF JOINT MOTION TO DISMISS**

NOW COME Defendants Village of Melrose Park and its Board of Fire and Police Commissioners, Mayor Ronald Serpico, Director of Police Sam C. Pitassi, Deputy Chief of Police Michael Castellan, and Ofc. Peter Caira, and submit this memorandum of law in support of their joint motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 1

    I.    Parties ............................................................................................................ 1

    II.    BOFPC Termination Charges, Proceedings, Findings & Decision. ..................... 2

    III.    State Court Administrative Review Case. ............................................... 3

    IV.    Appeal of the State Court Termination Case. ........................................ 4

    V.    Federal Court Case .......................................................................................... 5

LEGAL STANDARD FOR RULE 12(B)(6) MOTION TO DISMISS ....................... 6

ARGUMENT ............................................................................................................ 7

    I.    SCATCHELL'S ENTIRE FEDERAL SUIT IS BARRED BY CLAIM
        PRECLUSION .......................................................................................... 7

        A. Illinois Claim Preclusion (*Res Judiciata*) law Bars Scatchell's Federal Suit. ... 7

            1. The State Court Case ended in a Final Judgment on the Merits. .................. 8

            2. There is identity between causes ................................................. 9

            3. There is identity of Parties or their Privies. ................................ 10

        B. Scatchell had a Full and Fair Opportunity to Litigate his Claims
           in State Court .......................................................................................... 12

    II.    SCATCHELL'S FEDERAL SUIT IS BARRED BY ISSUE PRECLUSION ..... 13

    III.    SCATCHELL FAILS TO STATE A PLAUSIBLE SECTION 183 EQUAL
          PROTECTION RETALIATION CLAIM (COUNTS I AND II .......................... 15

        A. There is No Right to be Free from Third Party Retaliation under the Equal
           Protection Clause ................................................................................... 16

        B. There is No Actionable Retaliation Clam Given the One Year Gap Between the
           Father's Alleged Advocacy and the Investigaton into Scatchell's Conduct .... 17

    IV.    SCATCHELL FAILS TO STATE A PLAUSIBLE TITLE VII
          ASSOCIATIONAL DISCRIMINATION CLAIM (COUNT III) ...................... 19

V.  SCATCHELL FAILS TO STATE A PLAUSIBLE CLAIM UNDER COBRA (COUNT V) ................................................................................................. 19

VI.  SCATCHELL FAILS TO STATE A PLAUSIBLE CLAIM FOR INTRUSION UPON SECLUSION (COUNT V) ...................................................................... 22

VII.  SCATCHELL FAILS TO STATE A PLAUSIBLE CLAIM UNDER THE DRIVER'S PRIVACY PROTECTION ACT ("DPPA") (COUNT VI)............... 23

VIII.  SCATCHELL FAILS TO STATE A PLAUSIBLE CLAIM UNDER THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT (COUNT VII)........ 25

IX.  ABSENT A PLAUSIBLE CLAIM AGAINST THE INDIVIDUAL DEFENDANTS, THE INDEMNIFICATION COUNT SHOULD BE DISMISSED (COUNT VIII) ................................................................................ 27

CONCLUSION.................................................................................................................... 28

**<u>TABLE OF AUTHORITIES</u>**

Page(s)

Cases

7 Ind.Empl.Rts.Cases (BNA) 1235,
  1992 WL 333931 (D.S.C.1992) ................................................................... 21

*Allen v. McCurry*,
  449 U.S. 90 (1980) ....................................................................................... 7

*Am. Nat'l Bank & Trust Co. v. City of Chicago*,
  636 F. Supp. 374 (N.D. Ill. 1986) ........................................................... 8, 13

*Angelo v. Moriarty*,
  2016 WL 640525 (N.D. Ill. 2016) ............................................................. 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... 6, 23, 25

*Bagnola v. City of Chicago*,
  No. 96 C, 6342, 1997 WL 106126 (N.D. Ill. Feb. 12, 1997) ....................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 6

*Boyd v. Illinois State Police*,
  384 F.3d 888 (7th Cir. 2004) ..................................................................... 16

*Bradley v. Vill. of Univ. Park, Illinois*,
  59 F.4th 887 (7th Cir. 2023) ................................................................. 26, 27

*Burke v. Am. Stores Emp. Ben. Plan*,
  818 F. Supp. 1131 (N.D. Ill. 1993) ........................................................... 21

*Button v. Harden*,
  814 F.2d 382 (7th Cir. 1987) ..................................................................... 12

*Byung Moo Soh v. Target Mktg. Sys., Inc.*,
  817 N.E.2d 1105 (Ill. App. Ct. 2004) ....................................................... 25

*Carlson v. CSX Transp., Inc.*,
  758 F.3d 819 (7th Cir. 2014) ..................................................................... 17

*Carmody v. Bd. of Trustees*,
  747 F.3d 470 (7th Cir. 2014) ..................................................................... 17

*Catania v. Loc. 4250/5050 of the Commc'ns Workers of Am.*,
  834 N.E.2d 966 (Ill. App. Ct. 2005) ......................................................... 26

*Chagoya v. City of Chicago*,
  992 F.3d 607 (7th Cir. 2021) ................................................................. 26, 27

*Costello v. BeavEx, Inc.*,
  810 F.3d 1045 (7th Cir. 2016) ................................................................... 25

*Dahlstrom v. Sun-Times Media, LLC*,
  777 F.3d 937 (7th Cir. 2015) ..................................................................... 24

*Das v. Tata Consultancy Servs., Ltd,*,
  No. 22 C 6988, 2023 WL 7130423 (N.D. Ill. 2023) ................................... 27

*Davis v. City of Chicago*,
  53 F.3d 801 (7th Cir. 1995) ......................................................................... 9

iv

*Donovan v. Estate of Fitzsimmons,*
   778 F.2d 298 (7th Cir. 1985) ....................................................................................... 10

*Durgins v. City of East St. Louis,*
   272 F.3d 841 (7th Cir. 2001) ............................................................................. 8, 9, 10

*Dyer v. Lumpkin,*
   No. 01 C 1691, 2002 WL 31056705 (N.D. Ill. Sept. 13, 2002)....................... 10, 11

*Engquist v. Oregon Dep't of Agriculture,*
   553 U.S. 591 (2012)..................................................................................................... 16

*First Midwest Bank Guardian of LaPorta v. City of Chicago,*
   988 F.3d 978 (7th Cir. 2021) ..................................................................................... 15

*Franklin v. City of Chicago Police Dept.,*
   No. 02 C, 3354, 2004 WL 1921027 (N.D. Ill. July 9, 2004) ...................................... 8

*Garcia v. Vill. of Mount Prospect,*
   360 F.3d 630 (7th Cir. 2004) ............................................................................ passim

*Garrity v. New Jersey,*
   385 U.S. 493 (1967)....................................................................................................... 3

*Geinosky v. City of Chicago,*
   675 F.3d 743 (7th Cir. 2012) ..................................................................................... 16

*Ghiles v. City of Chicago Heights,*
   No. 12 C 7634, 2016 WL 561897 (N.D. Ill. Feb. 12, 2016)...................................... 18

*Girot v. Mun. Officers Electoral Bd. of City of Braidwood,*
   No. 05 C, 419, 2006 WL 59393 (N.D. Ill Jan. 5, 2006) ........................................... 12

*Gottlieb v. Krozel,*
   Case No. 12 C 3902, 2013 WL 4565431 (N.D. Ill. 4/26/13).............................. 13, 15

*Grove v. Carle Foundation Hosp.,*
   364 Ill. App.3d 412 (4th Dist. 2006)........................................................................... 8

*Hallmon v. School Dist. 89,*
   911 F. Supp.2d 690 (N.D. Ill. 2012) ......................................................................... 16

*Hayes v. City of Chicago,*
   670 F.3d 810 (7th Cir. 2012) ...................................................................... 7, 9, 10, 13

*Hively v. Ivy Tech Comm. College of Indiana,*
   853 F.3d 339 (7th Cir. 2017) ..................................................................................... 19

*Johnson v. City of Kewanee,*
   Case No. 21 CV 04051, 2023 WL 8091963 (C.D. Ill. 11/21/23) ............................. 20

*Karalyos v. Bd. of Educ.,*
   788 F. Supp. 2d 727 (N.D. Ill. 2011) ........................................................................ 28

*Karby v. Standard Products Co.*
   1992 WL 333931 (D.S.C. 1992)................................................................................. 21

*Karraker v. Rent-A-Center, Inc.,*
   239 F. Supp. 2d 828 (C.D. Ill. 2003) ........................................................................ 22

*Kidwell v. Eisenhower,*
   679 F.3d 957 (7th Cir. 2012) ..................................................................................... 18

*King v. City of Chicago,*
   No. 02 C 2608, 2004 WL 395211 (N.D. Ill Feb. 3, 2004)............................. 10, 12, 13

*Kremer v. Chem. Const. Corp.,*
   456 U.S. 461 (1982).............................................................................................. 7, 12

*Kristoffersson v. Port Jefferson Union Free School Dist.,*
  2023 WL 6119710 (E.D. N.Y. 9/18/23) ................................................................ 16
*Kunzelman v. Thompson,*
  799 F.2d 1172 (7th Cir. 2002) ............................................................................. 11
*Landers-Scelfo v. Corp. Off. Sys., Inc.,*
  827 N.E.2d 1051 (Ill. App. Ct. 2005) .................................................................. 26
*Lee v. City of Peoria,*
  685 F.2d 196 (7th Cir. 1982) ........................................................................ 8, 9, 12
*Licari v. City of Chicago,*
  298 F.3d 664 (7th Cir. 2002) ........................................................................ 7, 8, 10
*Little v. Tapscott,*
  No. 01 C 9738, 2002 WL 1632519 (N.D. Ill. 7/23/02) ....................................... 11
*Loos v. Cnty. of Perry, Illinois,*
  No. 3:20-CV-1107-MAB, 2023 WL 6382364 (S.D. Ill. 2023) ....................... 26, 27
*Lugo v. Int'l Bhd. of Elec. Workers Loc. 134,*
  175 F. Supp. 3d 1026 (N.D. Ill. 2016) ................................................................. 18
*Manicki v. Zeilmann,*
  443 F.3d 922 (7th Cir. 2006) ................................................................................. 9
*Manley v. City of Chicago,*
  236 F.3d 392 (7th Cir. 2001) ............................................................................... 12
*Mlsna v. Unitel Commc'ns, Inc.,*
  41 F.3d 1124 (7th Cir. 1994) ......................................................................... 20, 21
*Monell v. Dept. of Soc. Servs. of City of New York,*
  436 U.S. 658 (1978) ............................................................................................. 15
*Olson v. Champaign County,*
  784 F.3d 1093 ......................................................................................................... 1
*Paluck v. Gooding Rubber Co.,*
  221 F.3d 1003 (7th Cir. 2000) ............................................................................. 18
*Persinger v. Sw. Credit Sys., L.P.,*
  20 F.4th 1184 (7th Cir. 2021) .............................................................................. 22
*Pirela v. Village of North Aurora,*
  935 F.2d 909 (7th Cir. 1991) .......................................................................... 8, 12
*Pucillo v. Nat'l Credit Sys., Inc.,*
  66 F.4th 634 (7th Cir. 2023) ................................................................................ 22
*River Park, Inc. v. City of Highland Park,*
  184 Ill.2d 290 (1998) ............................................................................................. 9
*Rodriguez v. Ramsey,*
  Case No. 03 C 3930, 2007 WL 141910 (N.D. Ill. 2007) ........................... 6, 8, 12
*Rogers v. Desiderio,*
  58 F.3d 299 (7th Cir. 1995) ............................................................................ 7, 12
*Roper v. Rise Interactive Media & Analytics, LLC,*
  2023 WL 7410641 (N.D. Ill. 2023) ..................................................................... 22
*Sallenger v. City of Springfield,*
  630 F.3d 499 (7th Cir. 2010) ............................................................................... 16
*Scatchell v. Bd. of Fire and Police Commissioners,*
  *et al.,* 2022 IL App (1st) 201361 .................................................................... 4, 21

*Scatchell v. Village of Melrose Park, et al.,*
   159 N.E.3d 972 (Table), 2023 IL 6439445 ............................................................ 5, 6

*Scatchell v. Village of Melrose Park,*
   *et al.,* 2020 IL App (1st) 191414-U ...................................................................... 3, 4

*Schnitzer v. O'Connor,*
   274 Ill. App. 3d 314 (1995) .................................................................................... 11

*Schultze v. ABN AMRO, Inc.,*
   83 N.E.3d 1053 (Ill. App. Ct. 2017) ........................................................................ 26

*Senne v. Vill of Palatine, Ill.,*
   695 F.3d 597 (7th Cir. 2012) ............................................................................ 24, 25

*Sindermann v. Civil Service Comm'n of Gurnee,*
   275 Ill. App. 3d 917 (1995) .................................................................................... 21

*Smith v. Nolan,*
   648 F. Supp. 972 (N.D. Ill 1986) ........................................................................... 11

*Thompson v. N. Am. Stainless, LP,*
   562 U.S. 170 (2011) ............................................................................................... 17

*TransUnion v. Ramirez*
   141 S. Ct. 2190 ................................................................................................. 23, 25

*Vega v. Hempstead Union Free School Dist.,*
   801 F.3d 72 (2nd Cir. 2015) ................................................................................... 17

*William Anderson v. Chrysler Corp.,*
   99 F.3d 846 (7th Cir. 1996) .................................................................................... 10

*Wright v. Assoc. Ins. Co. Inc.,*
   29 F.3d 1244 (7th Cir. 1994) .................................................................................... 1

*Zamora v. City of Houston,*
   798 F.3d 326 (5th Cir. 2015) .................................................................................. 17

Statutes

18 U.S.C. § 2721(a)-(b) ............................................................................................. 24
18 U.S.C. § 2722(a), (b) ............................................................................................ 23
29 U.S.C. §§ 1161-1168 ............................................................................................ 19
42 U.S.C. 2000(e) .................................................................................................. 6, 19
42 U.S.C. § 1983 ................................................................................................ passim
42 U.S.C. §§ 300bb–1 through 300bb-8 ................................................................... 20
50 ILCS 725/3.8 ........................................................................................................ 14
745 ILCS 10/9-102 .................................................................................................... 27
820 ILCS 115/1 ......................................................................................................... 25
820 ILCS 115/2 ......................................................................................................... 26

Rules

Federal Rule of Civil Procedure 12(b)(6) ................................................................... 6
Illinois Supreme Court Rule 224 ................................................................................. 3

## INTRODUCTION

John Scatchell was fired as a Melrose Park police officer for serious misconduct, including assisting a known convicted felon in the possession and firing of a firearm, dishonesty, and insubordination. The termination was upheld on administrative review and on appeal in state court. Despite the finality of his termination, Scatchell wants another bite at the apple. He filed the present federal civil rights case alleging that his termination violated his constitutional and statutory rights. He could and should have timely filed these claims in his state court case but chose instead to split his claims. Now that his termination is final and conclusive, he must suffer the consequences of that decision. Namely, his suit is barred under the doctrines of claim and issue preclusion. Alternatively, even if some or all of his suits are not precluded, it should still be dismissed for failure to state plausible claims.

## STATEMENT OF FACTS[1]

### I.      Parties

Plaintiff John Scatchell was a police officer employed by the Village of Melrose Park ("Melrose Park") (Compl., d/e #1-1, ¶ 7, attached hereto as Exhibit A). Defendant Melrose Park was Scatchell's employer. *Id.* at ¶ 8.  The Defendant Board of Fire and Police Commissioners ("BOFPC") is a three-member administrative body. *Id.* at ¶ 10. The individual Defendants are Mayor Ronald Serpico, Director of Police Sam Pitassi, former Deputy Chief of Police Michael Castellan, and investigator Peter Caira. *Id.* at ¶¶ 12-14.

---

[1] The Statement of Facts is based on allegations in Scatchell's Complaint as well as pleadings from the state court termination case. This Court may consider documents at the motion to dismiss stage if those documents are "referenced in the plaintiff's complaint and central to his claim." *Wright v. Assoc. Ins. Co. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). This Court may also take judicial notice of publicly filed court documents in deciding a motion to dismiss. *See Olson v. Champaign County,* 784 F.3d 1093, 1097, n. 1 (7th Cir. 2015).

## II.      BOFPC Termination Charges, Proceedings, Findings and Decision

On October 28, 2017, Scatchell aggravated a prior on-duty neck and back injury. *Id.* at ¶ 54. His physician recommended that he stay home from work and rest due to the nature and demands of his job as a police officer. *Id.* at ¶ 56. He went on sick leave as of November 9, 2017. *Id.* at ¶ 57. On November 13, 2017, an anonymous person slid a letter under Castellan's office door reporting that Scatchell was abusing the department's sick leave policy by going hunting every morning. *Id.* at ¶ 60. Pitassi and Castellan assigned Caira to investigate. *Id.* at ¶ 62. Based on that investigation, as well as an internal affairs interrogation of Scatchell, Pitassi and Castellan filed a 12-count Statement of Charges against Scatchell and brought it before the BOFPC seeking his termination (*Id.* at ¶ 80; Disciplinary Charges, attached hereto as Exhibit B).

On December 6, 2018, after holding a multi-day evidentiary hearing, the BOFPC found that Scatchell violated the department's sick leave policy by engaging in a hobby or recreational activity which could impede recovery from his injury (BOFPC Findings and Decision, ¶ 7, attached hereto as Exhibit C). Specifically, the BOFPC cited the testimony of Scatchell's expert who admitted that Scatchell violated the sick leave policy, and the testimony of his doctor who prescribed rest and testified that Scatchell reported considerable pain and numbness after the hunting activity. *Id.* at ¶ 7. The BOFPC also found that Scatchell violated department policy by failing to report that he had gone hunting with a known convicted felon (Vito Scavo) and by failing to report that he had contact with a Department of Natural Resources (DNR) officer during the hunting trip. He also lied during the interrogation about his hunting activities and medical treatment and further lied to the DNR agent about whether Scavo had fired his shotgun. The BOFPC found that he had engaged in conduct unbecoming an officer, assisted Scavo in possessing and firing a shotgun, and accepted employment with Scavo's hunting guide business

without seeking approval. Finally, he disobeyed Castellan's direct order to answer questions at the BOFPC hearing and unjustifiably asserted the 5th Amendment privilege against self-incrimination despite being given *Garrity*[2] warnings. *Id.* at ¶¶ 8-10, 14-15, 17. Based on the above findings, the BOFPC found that sufficient cause existed for Scatchell's termination. *Id.* at p. 7.

### III.    State Court Administrative Review Case

On December 31, 2018, Scatchell filed a Verified Complaint for Judicial Review and Declaratory Relief, seeking statutory administrative review of the termination decision and other relief against the BOFPC, Melrose Park, Pitassi, Castellan, and members of the BOFPC (Admin Review Compl., Case No. 2018 CH 16150, attached hereto as Exhibit D).[3] Scatchell claimed that the termination decision was against the manifest weight of the evidence and violated his Fifth Amendment right against self-incrimination and Fourteenth Amendment Due Process rights. He also cited violations of various Illinois statutes and claimed that the decision was arbitrary and capricious and that there was insufficient cause for the termination (*Id.*).

On December 15, 2020, a Cook County Circuit Court judge affirmed the termination decision (Termination Order, 12/15/20, attached hereto as Exhibit E). The court rejected

---

[2] A *Garrity* warning is a form of immunity from criminal prosecution for statements given by a police officer being investigated for misconduct by his employer. *See Garrity v. New Jersey*, 385 U.S. 493 (1967).

[3] This is by no means Scatchell's only suit relating to his termination. He filed an action (now dismissed) in the Circuit Court of Cook County under Illinois Supreme Court Rule 224 seeking discovery relating to the investigation concerning his misconduct (Cook County Case No. 2018L001743). He also filed an action, again in Cook County, seeking to enjoin the Melrose Park Board of Fire and Police Commissioners from proceeding with charges against him (Cook County Case No. 2018CH07685). The circuit court held that the BOFPC had jurisdiction, and the Illinois Appellate Court affirmed. *Scatchell v. Village of Melrose Park, et al.,* 2020 IL App (1st) 191414-U, attached hereto as Exhibit F. He also attempted to join a federal lawsuit filed by his father, a retired Melrose police lieutenant, making the same allegations alleged in the present case. That request was denied. *Scatchell v. Village of Melrose Park, et al.,* Case No. 18CV3989, Dkt. #35, attached hereto as Exhibit G.

3

Scatchell's argument that the BOFPC could not use his refusal to testify as a basis for the firing and therefore found that the BOFPC did not violate his 5th Amendment rights. *Id.* at p. 4-5. Furthermore, even without Scatchell's testimony, the court found there was sufficient evidence supporting termination. *Id.* at p. 5. The court ruled that the BOFPC's findings were not against the manifest weight of the evidence and were indeed well supported by the evidence. *Id.* Given Scatchell's severe misconduct in going hunting while on sick leave and engaging in a business with firearms with a convicted felon without notifying his superiors, the court found termination was a permissible sanction (*Id.*). The court also rejected a phalanx of other claims leveled by Scatchell (*Id* at. p. 6).

The court also denied Scatchell's motion for leave to file an amendment to his administrative law complaint (Order Denying Amendment, 12/15/20, attached hereto as Exhibit H). The proposed amendment sought to add federal civil rights and other claims and further proposed naming Serpico and Caira as additional defendants. *Id.* at ¶ 4. The court ruled that Scatchell's motion was untimely because it was filed after the briefing on the administrative review and related counts. *Id.* at ¶ 6. The court also found that Scatchell knew about his federal civil rights claims at the time he filed his original suit on December 31, 2018, yet "did not attempt to file the new claims in *this* case until the existing issues were briefed and awaiting argument." (emphasis supplied). *Id.* The court concluded that "[to] open up the case to new parties, claims, and arguments at this late stage would prejudice the existing Defendants." *Id.*

### IV.     Appeal of the State Court Termination case

The Illinois Appellate Court affirmed the circuit court's termination decision, finding that the BOFPC's factual findings as seven of the eight counts were not against the manifest weight of the evidence. *See Scatchell v. Bd. of Fire and Police Commissioners, et al.,* 2022 IL App (1st)

4

201361, ¶¶ 39-83, attached hereto as Exhibit I. The Appellate Court also found there was ample evidence supporting just cause for the termination and rejected Scatchell's various constitutional and state law challenges to his termination. *Id.* at ¶¶ 95-129.

The Appellate Court also affirmed the lower court's decision denying Scatchell's motion to file an amended complaint. *Id.* at ¶¶ 130-142. The Court stated that the complaint for administrative review was filed in December 2018 and was fully briefed by December 2019, but Scatchell waited until March 2020 to seek leave to file the amendment. *Id.* at ¶ 131. The Court cited the multiple lawsuits that Scatchell had filed relating to his termination, which, in the Court's view, demonstrated that he knew about his claims of retaliation and bias as early June of 2018 yet waited nearly two years to seek an amendment in his administrative review case. *Id.* at ¶¶ 136-138. The Appellate Court also emphasized, correctly, that "Scatchell could [and should] have "made this administrative review action his original forum for raising these claims. He could have raised them when he filed his original administrative-review complaint. *** But he did not." *Id.* at ¶ 140. The Appellate Court concluded that the trial court, therefore, did not abuse its discretion in finding the proposed amendment untimely. *Id.* at ¶ 142.

Scatchell filed a petition for leave to appeal to the Illinois Supreme Court. The Supreme Court denied that petition on September 25, 2023. *See Scatchell v. Village of Melrose Park, et al.,* 159 N.E.3d 972 (Table), 2023 IL 6439445, attached hereto as Exhibit J.

## V.  Federal Court Case

Scatchell's federal complaint arises out of the same factual background as his failed state court cases. He claims that he was unlawfully investigated, charged, and terminated in retaliation for his association with his father, a retired Melrose Park police lieutenant, who allegedly spoke

out about alleged discriminatory police practices and brought his own federal lawsuit in 2018.[4]

Scatchell (junior) challenged the propriety of Defendants' internal investigation into his

misconduct, the filing of the disciplinary charges, and the BOFPC's evidentiary hearing, findings

of fact, and termination decision (Exhibit A, Compl., ¶¶ 52-129). He brings claims under 42

U.S.C. § 1983 and the Fourteenth Amendment, 42 U.S.C. 2000(e) (Title VII), and other federal

and state laws (Compl., ¶¶ 138-198). He seeks reinstatement and monetary and non-monetary

relief all stemming from his alleged wrongful termination (Compl., ¶¶ 130-137).

## LEGAL STANDARD FOR RULE 12(B)(6) MOTION TO DISMISS

Every complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A complaint that does not "fails to state a claim on which relief may be granted." Fed. R. Civ.

Proc. 12(b)(6). The court should accept all well-pleaded facts as true. *Twombly*, 550 U.S. at 556.

But this presumption of truth does not apply to legal conclusions masquerading as facts. *Iqbal*,

556 U.S. at 678. Thus, "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555. Ultimately, if a complaint "pleads facts

that are 'merely consistent with' a defendant's liability," it fails to cross the "plausibility"

threshold and should be dismissed. *Iqbal*, 556 U.S. at 678 (*quoting Twombly* 550 U.S. at 557)).

A litigant may raise claim and issue preclusion in a motion to dismiss. *See Rodriguez v.*

*Ramsey,* Case No. 03 C 3930, 2007 WL 141910, *6 (N.D. Ill. 2007). Preclusion is an affirmative

defense that can be raised in a motion to dismiss "where there are no relevant facts in dispute and

what happened in state court is subject to judicial notice." *Id.*

---

[4] *See Scatchell v. Village of Melrose Park, et al.,* Case No. 18CV3989 (pending before Judge Kness).

## ARGUMENT

I.    **SCATCHELL'S ENTIRE FEDERAL SUIT IS BARRED BY CLAIM PRECLUSION**

Scatchell filed two suits over the same alleged injuries. He split his claims between the state and federal case, and now essentially wants to relitigate his failed attempt to overturn his termination. As succinctly stated by the Seventh Circuit:

> This court deprecates the practice of filing two suits over one injury--often with an argument based on state law presented to a state court, and an argument arising under federal law presented to a federal court. Multiplication imposes needless costs on one's adversary, on the judicial system, and on other litigants, who must endure a longer queue. Plaintiffs hope that more suits will improve their chances: they seek the better of the outcomes. To discourage the tactic, judges award plaintiffs not the better outcome but the first outcome: whichever suit goes to judgment first is dispositive, and the doctrine of claim preclusion (res judicata) requires the other court to dismiss the litigation.

*Rogers v. Desiderio*, 58 F.3d 299, 300 (7th Cir. 1995) (citations omitted). Federal courts have consistently applied state *res judicata* law against federal civil rights plaintiffs. *Allen v. McCurry,* 449 U.S. 90, 94 (1980). In determining whether a federal claim is precluded by a prior state court judgment, a two-pronged analysis is required: (1) whether *res judicata* is applicable under state law; and (2) whether the plaintiff had a full and fair opportunity in the state court proceeding to litigate his claims. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982).

A.    **Illinois claim preclusion (*res judicata*) law bars Scatchell's federal suit.**

Claim preclusion, also called *res judicata,* bars litigants from relitigating claims that were or could have been litigated during an earlier case. *Allen v. McCurry,* 449 U.S. 90, 94 (1980); *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). Whether claim preclusion applies is a matter of Illinois law. *Id.* at 96. Under Illinois law, a claim is precluded when there is: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties or their privies. *Hayes, id.; Licari v. City of*

7

*Chicago,* 298 F.3d 664, 666 (7th Cir. 2002); *Garcia v. Vill. of Mount Prospect,* 360 F.3d 630, 636 (7th Cir. 2004). The doctrine applies not only to matters actually litigated in the prior suit but to every other matter that might have been raised and determined by it. *Durgins v. City of East St. Louis,* 272 F.3d 841, 843 (7th Cir. 2001). The doctrine applies to claims brought under Section 1983 and Title VII. *Lee v. City of Peoria,* 685 F.2d 196, 198 (7th Cir. 1982); *Pirela v. Village of North Aurora,* 935 F.2d 909, 911 (7th Cir. 1991); *Franklin v. City of Chicago Police Dept.,* No. 02 C 3354, 2004 WL 1921027, *2 (N.D. Ill. July 9, 2004).

### 1. The state court case ended in a final judgment on the merits.

For claim preclusion to apply, the prior decision must have been a final judgment on the merits rendered by a court of competent jurisdiction. *Licari,* 298 F.3d at 666. Under Illinois law, "[a]n order is final if it terminates litigation between the parties on the merits or disposes of rights of parties, either on the entire controversy or on a separate branch thereof." *Grove v. Carle Foundation Hosp.,* 364 Ill. App.3d 412, 416 (4th Dist. 2006). Clearly, Scatchell's state court case, affirmed on appeal, is a final judgment on the merits.

Likewise, an order denying Scatchell's untimely motion to amend his state lawsuit is also a final decision on the merits. *Grove,* 364 Ill. App.3d at 417. "A decision may be 'on the merits' for purposes of preclusion even though the court did not resolve the merits." *See Am. Nat'l Bank & Trust Co. v. City of Chicago*, 636 F. Supp. 374 (N.D. Ill. 1986) (hereinafter "Am. Nat'l Bank I") *affirmed by Am. Nat'l Bank & Trust Co. v. City of Chicago*, 826 F.2d 1547, 1553 (7th Cir. 1987). A "decision is on the merits … for purposes of preclusion when the litigant had an *opportunity* to receive an adjudication from that court." *Id.* The fact that Scatchell "bollixed his opportunity" by moving to amend his suit too late does not justify exposing Defendants to another round of litigation. *Id; See, also, Rodriguez v. Ramsey,* Case No. 03 C 3930, 2007 WL

8

141910, *3 (N.D. Ill. 2007) (holding that dismissal of administrative review suit "for untimeliness is a final adjudication of the merits because the litigant had the chance to make its case but failed to do so.").

### 2. There is identity between causes.

The Illinois Supreme Court has adopted the transactional approach to determine whether there is identity of claims for purposes of *res judicata. Hayes,* 670 F.3d at 813 (*citing, River Park, Inc. v. City of Highland Park,* 184 Ill.2d 290 (1998)). Under that approach, identity of causes exists if a single group of operative facts gave rise to the claims and is related in time, space, origin, and motivation. *Hayes, id.; Garcia v. Vill. of Mount Prospect,* 360 F.3d 630, 636 (7th Cir. 2004). "Even though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action." *Lee,* 685 F.2d at 200. If the same facts are essential to both proceedings, there is identity between the allegedly different causes of action asserted and *res judicata* bars the latter. *Id.* Further when "the same action is charged as both retaliation and discrimination, the evidentiary overlap is so extensive that the plaintiff is forbidden to make each the subject of a separate suit." *Manicki v. Zeilmann,* 443 F.3d 922, 926 (7th Cir. 2006).

Illinois treats constitutional and non-constitutional arguments as a single claim, and slight variations in the relief requested do not authorize multiplication of lawsuits. *Davis v. City of Chicago*, 53 F.3d 801, 802 (7th Cir. 1995). A failed administrative review action forecloses any later action in federal court arising out of the same transaction. *Durgins*, 272 F.3d at 843. Therefore, after review of an administrative decision, the reviewing court's judgment is *res judicata* as to all issues raised before it, and all issues, which could have been raised before it on the record but were not, are deemed waived. *Bagnola v. City of Chicago*, No. 96 C 6342, 1997

9

WL 106126, *3 (N.D. Ill. Feb. 12, 1997). "Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost." *King v. City of Chicago*, No. 02 C 2608, 2004 WL 395211, *4 (N.D. Ill Feb. 3, 2004) *quoting William Anderson v. Chrysler Corp.*, 99 F.3d 846, 852 (7th Cir. 1996).

A comparison of Scatchell's state case with his present federal action shows that they are based on the same nucleus of operative facts. In both cases, he alleged that he was wrongfully investigated, charged, and terminated. The two suits are related in time, space, origin, and motivation, and the underlying "transaction" - the investigation, charges, and termination – is the same. *See Hayes*, 670 F.3d at 814 (holding that a police officer's Title VII claim involved the same set of operative facts as his claim before the police board who terminated him). Scatchell could have argued in state court that his termination was retaliatory in violation of his constitutional or other statutory or common law rights. He could have joined (and in fact attempted to do so, albeit too late) all his present claims in the state court suit. *Durgins,* 272 F.3d at 843 (holding that *res judicata* barred federal suit brought by terminated police officer because she "could have presented all of her theories – evidentiary, statutory, and constitutional – to state court and obtained a decision in one consolidated proceeding."). His failure to do so bars his present suit in its entirety.

### 3. There is identity of parties or their privies.

As stated above, the third element of *res judicata* is identity of parties or their privies. *Licari*, 298 F.3d at 666. Strict identity of parties is not necessary for a finding of privity. *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 301 (7th Cir. 1985). Privity exists between two parties who adequately represent the same or similar legal interests. *Id.*; *see Dyer v. Lumpkin*, No. 01 C 1691, 2002 WL 31056705, *4 (N.D. Ill. Sept. 13, 2002). "[T]he parties must be so

closely aligned that they represent the same legal interest." *Little v. Tapscott,* No. 01 C 9738, 2002 WL 1632519, \*5 (N.D. Ill. 7/23/02) (*citing Kunzelman v. Thompson,* 799 F.2d 1172, 1178 (7th Cir. 2002)). The identity of the interest controls in determining privity, not the nominal identity of the parties. *Dyer*, 2002 WL 31056705 at \*4 *quoting Schnitzer v. O'Connor*, 274 Ill. App. 3d 314, 318 (1995). "The modern trend is to expand the scope of *res judicata* to bind persons whose interests are so wedded to those of existing parties that it would be a waste of judicial effort to allow a second action simply because those persons were not named in the first suit." *Smith v. Nolan*, 648 F. Supp. 972, 975 (N.D. Ill 1986).

Scatchell was a plaintiff in both the administrative review action and the present case. Therefore, the third element of claim preclusion is met as to Scatchell. Defendants Melrose Park, BOFPC, Pitassi, and Castellan were also sued in both actions. Therefore, the third element is also met as to those Defendants. That leaves Serpico and Caira. Neither were directly named parties in the state court case. Nonetheless, as discussed below, the privity element is still easily satisfied.

First, privity is established because both Serpico and Cairia were Melrose Park employees and therefore had the same interests as their employer in the termination proceedings. *Garcia,* 360 F.3d at 636. Second, in moving to amend his administrative review complaint, Scatchell alleged that Serpico was behind the "trumped up, ginned up, phony, stupid, and selectively enforced" termination charges. (Pltf. Motion to Amend, ¶ 1, attached hereto as Exhibit K). Similarly, in this federal suit, Scatchell alleged that Defendants - which included Serpico and Caira – conspired to retaliate against him in seeking his termination. (Ex. A, Compl., ¶ 1). These allegations equate Serpico and Caira's interests with the other Defendants named in the prior suit. Finally, Caira was assigned by the charging parties, Pitassi and Castellan, to

11

investigate Scatchell's misconduct. Therefore, he was in privity with them. *See Rodriguez*, 2007 WL 141910, *3 (holding that police investigator employed by sheriff and assigned to investigation employee's misconduct was in privity with sheriff).

### B. Scatchell had a full and fair opportunity to litigate his claims in state court.

If Scatchell could have joined his present claims with the state court administrative review case, then he had a full and fair opportunity to litigate those claims under Illinois law. *Garcia*, 360 F.3d at 639; *Girot v. Mun. Officers Electoral Bd. of City of Braidwood*, No. 05 C 419, 2006 WL 59393, *6 (N.D. Ill Jan. 5, 2006). Such is the case here. Scatchell was not limited to statutory administrative review in state court. He could have joined his federal civil rights and other claims and obtained a decision on those issues at that same time – had he timely done so (which he did not). *Rogers,* 58 F.3d at 301. Thus, he had a reasonable opportunity to bring his constitutional and statutory claims before the state court. *See Manley v. City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001) (holding that a police officer appealing a review board's termination decision to the circuit court could have joined § 1983 and § 1985 claims); *Pirela*, 935 F.2d at 913 (state courts are permitted to hear Title VII claims). While his motion to amend the administrative review suit was denied as untimely, his failure to avail himself of the full procedures provided by state law "does not constitute a sign of their inadequacy." *Kremer*, 456 U.S. at 485; *Lee*, 685 F.2d at 202.

Scatchell chose to pursue an administrative review of the BOFPC's decision in state court. Because he followed this route, he had to allege every ground for relief that he had against Defendants in state court. *See Button v. Harden*, 814 F.2d 382, 384 (7th Cir. 1987). Having chosen that forum, it was the only place his present constitutional and statutory claims could have been raised. *See King*, 2004 WL 395211 at *5. "To hold otherwise would result in a piecemeal litigation

by first requiring review of an administrative body's decision and then entertaining another action to test the constitutionality of such decision." *Id.* (*quoting Am. Nat. Bank I*, 636 F. Supp at 379).

The one thing Scatchell was barred from doing – but did -- was to pursue his claims first in state court to a final judgment and then try again in federal court hoping for a different result. *King*, 2004 WL 395211 at *6. He chose to split his causes of action and now "must abide by the consequences of those choices." *Garcia*, 360 F.3d at 644. Accordingly, his present claims are barred by *res judicata.*

## II.     SCATCHELL'S FEDERAL SUIT IS BARRED BY ISSUE PRECLUSION

The doctrine of issue preclusion (also called "collateral estoppel") bars Scatchell from relitigating the facts and issues relating to his termination. Issue preclusion "prevents litigants from relitigating an *issue* that has already been decided in a previous judgment." *Hayes,* 670 F.3d at 814. Under Illinois law, issue preclusion applies when (1) there is a final judgment in the prior case; (2) the party against whom estoppel is sought was a party in the previous case; and, (3) the issue decided in the prior case is identical to the issue presented in the subsequent case. *Gottlieb v. Krozel,* Case No. 12 C 3902, 2013 WL 4565431, *5 (N.D. Ill. 4/26/13). Final factual findings made in an adjudicatory, judicial, or quasi-judicial proceeding preclude litigation of those same issues in a subsequent proceeding. *Id.* at *6.

The elements of issue preclusion are easily met in this case. As previously discussed, the termination decision is final, Scatchell was a party to that decision, and the same core issue that he claims here – that he was wrongfully fired from his job – was actually litigated in the prior case.

Specifically, the Illinois Appellate Court upheld seven of the eight counts of misconduct based on the BOFPC's findings of fact: (1) abuse of sick leave, (2) failure to report contact with

13

the DNR officer, (3) making false statements to the DNR officer, (4) conduct unbecoming an officer, (5) violation of departmental policies by allowing a convicted felon to fire a shotgun, (6) starting a secondary job without departmental approval, and (7) disobeying a direct order by unjustifiably asserting a 5th Amendment privilege against testifying at the BOFPC hearing. (Exhibit I, *Scatchell v. BOFPC* at ¶¶ 41-83). The Court also affirmed the BOFPC's finding that Scatchell's behavior warranted termination, particularly the egregious offense of lying to the DNR officer and investigators about whether he saw his fellow hunting partner and convicted felon, Vito Scavo, fire a shotgun. *Id.* at ¶¶ 84-94. The Appellate Court concluded that "[t]he decision to terminate Scatchell was neither unreasonable nor arbitrary, and we believe it was appropriate considering the nature and scope of Scatchell's misconduct." *Id.* at ¶ 94.

The Appellate Court also rejected Scatchell's claim that the Defendants violated the Uniform Peace Officers Disciplinary Act, 50 ILCS 725/3.8, because the Department relied on an anonymous tip in opening an investigation. *Id.* at ¶ 97-99. The Court also rejected Scatchell's Fourth Amendment challenge to the propriety of the internal investigation, *Id.* at ¶¶ 100-102; his claim that the investigation violated the collective bargaining agreement, *id.* at ¶ 103; his claim that the Department violated its own procedures during its investigation, *id.* at ¶ 104; his claim that the BOFPC violated the Open Meetings Act, *id.* at ¶¶ 105-113; and, his claim that the BOFPC committed procedural errors at the termination hearing in violation of his due process rights. *Id.* at ¶¶ 114-125. One of those challenges that the Court rejected related to Scatchell's theory that the Department arbitrarily and selectively enforced its policies by treating other officers more favorably when it came to similar policy violations. *Id.* at ¶¶ 123-125. Another failed challenge concerned alleged *ex parte* communications between Pitassi and Castellan and the BOFPC which he claimed showed bias and denied him a fair hearing. *Id.* at ¶¶ 127-129.

14

In this federal suit, like his state court action, he levels a phalanx of claims and theories as to why he was wrongfully investigated, charged, and fired. He claims retaliation based on his association with his father (Ex. A, Compl., ¶¶ 20-51), and attacks the investigation into his misconduct as flawed (*Id*. at ¶¶ 52-78), the disciplinary charges as manufactured (*Id*. at ¶¶, 72-92), and the BOFPC proceedings as tainted and biased. *Id*. at ¶¶ 93-96. As he did in the state court case, he dredges up the same allegations of an inequitable disciplinary system within the Police Department and the BOFPC. *Id*. at ¶¶ 102-120. He brings constitutional challenges to his termination under 42 U.S.C. § 1983 and Title VII. *Id*. at Counts I-III.

In sum, Scatchell is attempting to relitigate the very issues that were actually decided against him in the state court action: that was wrongfully or unlawfully investigated, charged, and fired. The Illinois circuit and appellate court found that he wasn't, and that decision is final and conclusive. He simply cannot relitigate those facts and issues no matter how many colorful conspiracies he manufactures. The doctrine of issue preclusion bars him from doing so. *See Gottlieb,* at *6 (applying issue preclusion to federal constitutional or other theories because the acceptance of those theories would directly conflict with the state court's final determination that plaintiff's termination was lawful).

### III. SCATCHELL FAILS TO STATE A PLAUSIBLE SECTION 1983 EQUAL PROTECTION RETALIATION CLAIM (COUNTS I AND II)

In Counts I and II, Scatchell brings claims under 42 U.S.C. § 1983 against Melrose Park pursuant to *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and against the individual Defendants. The threshold issue in any § 1983 claim, including one brought under *Monell*, is whether the plaintiff has established a violation of a constitutional right. *See First Midwest Bank Guardian of LaPorta v. City of Chicago,* 988 F.3d 978, 987 (7th Cir. 2021); *see,*

*also, Sallenger v. City of Springfield*, 630 F.3d 499, 504-505 (7th Cir. 2010) (holding that there

where there is no constitutional violation by a municipal employee, there is no *Monell* liability).

    **A.    There is no right to be free from third party retaliation under the Equal Protection Clause.**

    Scatchell claims a violation of his rights under the Equal Protection Clause of the

Fourteenth Amendment (Compl., Counts I and II). To state an equal protection claim, he must

allege discrimination based on membership in a protected class or a "class of one." *Geinosky v.*

*City of Chicago,* 675 F.3d 743, 747 (7th Cir. 2012). Scatchell brings neither. He is not a member

of any protected class, and a "class of one" theory does not apply to employment claims. *See*

*Engquist v. Oregon Dep't of Agriculture,* 553 U.S. 591, 601 (2012). Instead, he claims that he

was investigated, charged, and fired in retaliation for his association with his father who

allegedly opposed the enforcement of a residency requirement against a black Melrose Park

police officer, Kyle Lavalais.

    There is no general right to be free from retaliation under the Equal Protection Clause.

*See Boyd v. Illinois State Police,* 384 F.3d 888, 898 (7th Cir. 2004) (alleged retaliation against

plaintiff for participating in litigation is not the same thing as retaliation on the basis of a

protected trait or membership in a particular class); *Hallmon v. School Dist. 89,* 911 F. Supp.2d

690, 706-707 (N.D. Ill. 2012) ("the Equal Protection Clause does not prohibit state actors from

retaliating against persons who complain of equal protection violations—that is, it does not

contain an anti-retaliation provision analogous to that of Title VII"). Defendants have not found

a single case recognizing that retaliation based on mere familial association with someone who

advocates about racial discrimination states a section 1983 equal protection claim. *See*

*Kristoffersson v. Port Jefferson Union Free School Dist.,* 2023 WL 6119710, *8 (E.D. N.Y.

16

9/18/23) (dismissing section 1983 equal protection claim based merely on race of persons for whom advocacy is occurring). Counts I and II, therefore, fail to state a plausible claim.

Scatchell's reliance on *Thompson v. N. Am. Stainless, LP,* 562 U.S. 170 (2011) is misplaced (Compl., Count I, ¶ 145). In *Thompson,* the plaintiff brought a Title VII claim alleging that his employer fired him to retaliate against his fiancé (and fellow employee) who had previously filed a charge of sex discrimination. Citing Title VII's antiretaliation provision, the Court recognized a third-party retaliation claim under these circumstances. *Id.* at 174. *Thompson* is inapposite here, however, because it did not involve a Section 1983 equal protection claim.

Scatchell also cites *Zamora v. City of Houston,* 798 F.3d 326 (5th Cir. 2015), and *Vega v. Hempstead Union Free School Dist.,* 801 F.3d 72 (2nd Cir. 2015). Like *Thompson, Zamora* did not involve a section 1983 equal protection claim. And, to the extent that *Vega* did, it is distinguishable because the plaintiff in that case *brought* an equal protection discrimination and retaliation claim based on his own race, not based on a family member's alleged advocacy for another's race.

### B. There is no actionable retaliation claim given the one-year gap between the father's alleged advocacy and the investigation into Scatchell's conduct.

Scatchell has also pled himself out of court on the issue of causation. Allegations of causation must be plausible on their face to survive a motion to dismiss. *Carmody v. Bd. of Trustees,* 747 F.3d 470, 480 (7th Cir. 2014). At the pleading stage, the Seventh Circuit has recognized that "a retaliation claim can indeed be so bare bones that a lengthy period between the protected activity and the alleged retaliation will make any causal connection between the two implausible. If the best a plaintiff can do is allege that he engaged in protected activity and then, years later, the employer took an adverse action against him, the claim may not be permitted to proceed." *Carlson v. CSX Transp., Inc.,* 758 F.3d 819, 828 (7th Cir. 2014).

Here, the investigation relating to Scatchell's misconduct started on November 13, 2017 (Compl., ¶¶ 60-62). But his father's advocacy on behalf of Lavalais allegedly took place a year earlier in November of 2016 (Compl., ¶ 30). Without any explanation for the delay in the pleading, the one-year time gap does not support a plausible claim as a matter of law. *Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1010 (7th Cir. 2000) (1 year does not establish causation); *Lugo v. Int'l Bhd. of Elec. Workers Loc. 134*, 175 F. Supp. 3d 1026, 1038-39 (N.D. Ill. 2016) (holding that the plaintiff's retaliatory termination claim with a one-year gap was implausible where the plaintiff "provide[d] no evidence of retaliation other than timing"). Shorter time periods have doomed retaliation claims. *See Ghiles v. City of Chicago Heights*, No. 12 C 7634, 2016 WL 561897, at *2 (N.D. Ill. Feb. 12, 2016) (dismissing a retaliation claim because an unexplained six month delay between the protected activity and retaliation was "too remote" to link the two events and establish causation). Indeed, the Seventh Circuit "typically allow[s] no more than a few days to elapse between the protected activity and the adverse action" *Kidwell v. Eisenhower*, 679 F.3d 957, 966 (7th Cir. 2012).

Scatchell alleges no facts that explain the one-year gap between his father's alleged advocacy and the investigation into his own misconduct. In other words, he alleges no facts plausibly connecting his father's activity with the initiation of the department's investigation against him. If anything, his allegations undermine such a connection. He alleges that the actual catalyst for the investigation was the "anonymous letter" that was slipped under Castellan's door on November 13, 2017. He alleges no adverse facts or incidents that occurred regarding him in the preceding year leading up to the letter that triggered the investigation. Therefore, his allegations do not state a plausible cause of action.

IV.    **SCATCHELL FAILS TO STATE A PLAUSIBLE TITLE VII ASSOCATIONAL DISCRIMINATION CLAIM (COUNT III)**

In Count III, Scatchell brings a Title VII "associational discrimination" claim against Melrose Park. Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment[ ] because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Scatchell doesn't allege that he was subjected to discrimination based on his race, color, religion, sex, or national origin. Rather, he alleges that he was subjected to a hostile work environment based on his association with his father (Ex. A, Compl., Count III, ¶ 163).

While the Seventh Circuit has recognized that a person who is subjected to employment discrimination based on his association with a person of a protected class can bring a Title VII claim, *See Hively v. Ivy Tech Comm. College of Indiana,* 853 F.3d 339, 347 (7th Cir. 2017), that is not Scatchell's claim here. Neither he nor his father are members of a protected class. Nowhere does he allege that *he* was subjected to a hostile work environment because of *his* association with a person of a protected class. Rather, his claim is based on his father's advocacy on behalf of Lavalais. Defendants have not found a single case that has recognized an associational discrimination claim under these circumstances.

V.    **SCATCHELL FAILS TO STATE A PLAUSIBLE CLAIM UNDER COBRA (COUNT IV)**

In Count IV, Scatchell alleges that Melrose Park failed to provide him with the required notice of his rights, and later improperly rescinded his rights, under the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. §§ 1161-1168 ("COBRA") (Ex. A, Compl., Count IV, ¶¶ 171-172). He alleges that he incurred $6,000 in medical expenses *Id.* at ¶ 173.

19

At the onset, the correct statute governing the continuation of benefits under group health plans offered by local government employers is the Public Health Services Act ("PHSA"), 42 U.S.C. §§ 300bb–1 through 300bb-8. *See Johnson v. City of Kewanee,* Case No. 21 CV 04051, 2023 WL 8091963, *3 (C.D. Ill. 11/21/23). Under PHSA, local government employers must offer 18 months of continuing coverage to qualified beneficiaries who otherwise would lose coverage as a result of a "qualifying event." 42 U.S.C. §§ 300bb–1(a), 300bb–2(2). An employer must notify the plan administrator of the occurrence of a qualifying event, an administrator must then notify the qualified beneficiary of the right to elect continuation coverage, and a plan must provide that coverage if elected. *Mlsna v. Unitel Commc'ns, Inc.*, 41 F.3d 1124, 1128–29 (7th Cir. 1994). The PHSA defines the term "qualifying event" to include "termination (other than by reason of [the] employee's gross misconduct)." §300bb–3(2). In other words, a termination based on the employee's "gross misconduct" is not a qualifying event that triggers continuing health care coverage, or the need to provide notice of such rights.

Neither PHSA nor COBRA provide a definition for "gross misconduct." Thus, the courts "look to federal case law and state law for guidance." *Johnson*, 2023 WL 8091963, at 6. Conduct that is "outrageous, extreme or unconscionable" qualifies while behavior that is "inadvertent or sporadic" or mere "negligence or incompetence" does not. *Id.* at *6-7. In *Johnson*, Judge Darrow recently looked to Illinois unemployment law for guidance. *Id.* Under Illinois law, an employee can be denied unemployment benefits if his misconduct amounts to a "deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or

other explicit instruction from the employing unit." *Id.* at 7 (*citing*, *Burke v. Am. Stores Emp. Ben. Plan*, 818 F. Supp. 1131, 1135 (N.D. Ill. 1993).

Scatchell's behavior easily meets the gross misconduct standard. He assisted a known convicted felon in the possession and firing of a firearm, lied to law enforcement and his own employer, and disobeyed a direct order. He deliberatively and intentionally violated multiple departmental policies and engaged in behavior that was conduct unbecoming a police officer. Indeed, in affirming his termination, the Illinois Appellate Court called his conduct egregious and devoid of "integrity, honesty, and trustworthiness." (Ex. I, *Scatchell v. Bd. of Fire and Police Commissioners, et al.,* 2022 IL App (1st) 201361, ¶¶ 90-91). The Court also found "the nature of his false statements … extremely concerning" and that, as a police officer sworn to uphold the law, he "acted in an irresponsible and dishonest manner." *Id.* at 92 (*citing, Sindermann v. Civil Service Comm'n of Gurnee*, 275 Ill. App. 3d 917, 929 (1995)).

While he alleges in one paragraph of his Federal Complaint that Melrose Park failed to provide notice of his COBRA rights, he later conceded that Defendant extended then improperly rescinded them. (Ex. A, Compl., ¶¶ 171-172). It appears, therefore, that his real qualm is the recission. In this regard, *Mlsna v. United Communications,* 41 F. 3d (7th Cir. 1996), 1124, 1128 offers dispositive guidance, "An employee could quit his job and his employer could later discover facts leading it to change the employee's departure status to termination for gross misconduct … it would be strange for an employee to have the power to preempt his employer's decision to terminate him for gross misconduct. *See, also, Karby v. Standard Products Co.,*7 Ind.Empl.Rts.Cases (BNA) 1235, 1992 WL 333931 (D.S.C.1992) (accepting a change of departure status to termination for gross misconduct in light of facts discovered after employee

had left the company).” Count IV, therefore, fails to state a plausible claim and should be dismissed.

## VI.     SCATCHELL FAILS TO STATE A PLAUSIBLE CLAIM FOR INTRUSION UPON SECLUSION (COUNT V)

In Count V, Scatchell brings a state law claim for "intrusion upon seclusion" against the individual Defendants. He alleges that his private information was knowingly disclosed to Defendant Caira and others (Ex. A, Compl., Count V, ¶¶ 175-182). He claims that the disclosure caused "unauthorized credit card transactions, damages, anguish, and suffering." *Id.* at ¶ 183.

Under Illinois law, there are four theories that underlie the tort of invasion of privacy: intrusion upon seclusion, appropriation of a person's name or likeness, publicity given to private life, and publicity placing a person in a false light. *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 639–40 (7th Cir. 2023). "Intrusion upon seclusion "occurs when a person 'intrudes ... upon the solitude or seclusion of another or his private affairs or concerns' and this 'intrusion would be highly offensive to a reasonable person.'" *Id.* It is plaintiff's burden to tie the type of injury to the comparable theory that applies. *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184 1192 (7th Cir. 2021) (reasoning that plaintiff's alleged harm must resemble "the harm associated with intrusion upon seclusion."). But the act of prying itself must cause the harm; plaintiffs who allege that the publication of private information caused their harm "plead[s] themselves out of court." *Roper v. Rise Interactive Media & Analytics, LLC*, 2023 WL 7410641, at 7 (N.D. Ill. 2023) (quoting *Angelo v. Moriarty*, 2016 WL 640525, at 5 (N.D. Ill. 2016)); *see also Karraker v. Rent-A-Center, Inc.,* 239 F. Supp. 2d 828, 838 (C.D. Ill. 2003) ("The key distinction of this privacy tort is that the injury stems from the intrusion itself and not from any publication.").

Scatchell's claim is foreclosed because he claims that release or publication to third parties caused him harm. (Ex. A, Compl. ¶ 180). He does not allege that his damages result from

the *intrusion.* Furthermore, he grossly mischaracterizes the collection of his personal information by positing that he was "compelled to disclose" his personal information" to Defendants as part of his employment. Dkt. 1-1 at 43. What he means is the voluntary and required disclosure of information that is required for employment at the Melrose Park Police Department. In other words, no unauthorized action occurred because he consented to the collection of his information. While he may feel that the publication of his information was highly offensive, he has not carried his burden at this stage to plead that the intrusion—that is, the collection of his information for employment—was highly offensive. Given the affirmance of his termination, he cannot seriously challenge that Defendants legitimately obtained the information to pursue their investigation of his misconduct. The acquisition, in other words, was in furtherance of a valid police investigation.

Finally, he injects a litany of conclusory allegations regarding personal information of his family and friends. This Court should disregard these allegations as they are no more than formulaic conclusions, and therefore not entitled to the assumption of truth. *Iqbal,* 556 U.S. at 679. Even more so, he has not established how he has standing to allege injuries on behalf of parties that are not privy to, or related to, the core of his complaint. *TransUnion*, 141 S. Ct. at 2210.

## VII.   SCATCHELL FAILS TO STATE A PLAUSIBLE CLAIM UNDER THE DRIVER'S PRIVACY PROTECTION ACT ("DPPA") (COUNT VI)

In Count VI, Scatchell alleges that Defendants Melrose Park and Caira knowingly obtained and disclosed his protected personal information from a motor vehicle record in violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2722(a), (b) (Ex. A, Compl., Count VI, §§ 185-188). The DPPA prohibits a state's Department of Motor Vehicles ("DMV") from disclosing personal information in a motor vehicle record except for uses

23

explicitly enumerated in the statute. *See* 18 U.S.C. § 2721(a)-(b). "Personal information" is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information." *Id.* §2725(3).

However, personal information in a motor vehicle record may be disclosed by a DMV for, among other permissible uses, "use by any government agency, including any court or law enforcement agency, in carrying out its functions," or for use by a private person acting on behalf of a government agency in carrying out its functions. *Id.* §2721(b)(1). Personal information may also be disclosed by a DMV "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding" or for "investigation in anticipation of litigation." *Id.* §2721(b)(4).

Here, Scatchell was the subject of a police investigation, administrative-board investigation, and all investigative findings were affirmed by the Illinois Appellate Court. In other words, Scatchell's information was obtained from a lawful source for lawful and permissible purposes. *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 949–50 (7th Cir. 2015). The Seventh Circuit noted that the DPPA was passed predominantly as a public safety measure and "[n]ot surprisingly, the Act's expanded authority for law enforcement was an important part of the same narrative." *Senne v. Vill of Palatine, Ill.*, 695 F.3d 597, 605 (7th Cir. 2012). The Court further noted, however, that in the Congressional records, Senator Harkin qualified that the exception for law enforcement use "'is not a gaping loophole in this law.'" *Id.* (quoting 139 Cong. Rec. S15,962 (daily ed. Nov. 17, 1993) (statement of Sen. Harkin)). Rather, the exception "'provides law enforcement agencies with latitude in receiving and disseminating this personal information,' when it is done '*for the purpose of deterring or preventing crime or other legitimate law enforcement functions*.'" *Id.* at 608 (quoting 139 Cong. Rec. S15,962 (daily

24

ed. Nov. 17, 1993) (statement of Sen. Harkin)) (emphasis in original). Thus, "[g]iven the concern of Congress for these safety and security issues, the disclosed information actually must be used for the purpose stated in the exception." *Id.* at 609. Accordingly, Caira's investigation, and the BOFPC's hearing, easily qualify as permissible access to and disclosure of information gained from the DMV.

Finally, here again, Scatchell injects a litany of conclusory allegations, devoid of any facts, regarding personal information of his family and friends. This Court should disregard these allegations as they are no more than conclusions, and therefore not entitled to the assumption of truth. *Iqbal,* 556 U.S. at 679. Even more so, Scatchell has not established how he has standing to allege injuries on behalf of parties that are not privy to, or related to, the core of his complaint. *TransUnion LLC v. Ramirez*, 141 S. Ct. at 2210. Regarding statutory harms, it is not enough to allege a defendant violated the statute; "[o]nly those plaintiffs who have been *concretely* harmed by a defendant's statutory violation" will have standing. *TransUnion*, 141 S. Ct. at 2205.

## VIII.  SCATCHELL FAILS TO STATE A PLAUSIBLE CLAIM UNDER THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT (COUNT VII)

In Count VII, Satchell claims that he was not paid for unused vacation, sick and compensatory time in violation of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq*. (Ex. A, Compl., Count VII, ¶¶ 98(c), 189-196), yet there are no factual allegations in the Complaint showing how he would have been entitled to 2019 vacation when he was discharged in December 2018, or how he was eligible to be paid for unused sick or comp time.

The IWPCA "provide[s] employees with a cause of action against employers for the timely and complete payment of earned wages or final compensation, without retaliation from employers." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016) (quoting *Byung Moo Soh v. Target Mktg. Sys., Inc.*, 817 N.E.2d 1105, 1107 (Ill. App. Ct. 2004) Under the IWPCA, a

plaintiff must prove "that: (1) the defendant was an employer as defined in the Wage Payment Act; (2) the parties entered into an employment contract or agreement; and (3) the plaintiff was due final compensation." *Bradley v. Vill. of Univ. Park, Illinois*, 59 F.4th 887, 903–04 (7th Cir. 2023). The IWPCA defines "wages" as "compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." *Chagoya v. City of Chicago*, 992 F.3d 607, 624 (7th Cir. 2021) (*quoting* 820 ILCS 115/2).

An "employment agreement need not be a formally negotiated contract" and "can be entirely implicit." *Id.* at 624–25 (quoting *Landers-Scelfo v. Corp. Off. Sys., Inc.*, 827 N.E.2d 1051, 1058–59 (Ill. App. Ct. 2005)). Nor must a plaintiff "plead all contract elements if [he] can plead facts showing mutual assent to terms that support the recovery." *Id.* at 624 (quoting *Landers*, 827 N.E.2d at 1059); *see also Bradley v. Village of University Park*, 59 F.4th 887, 903 (7th Cir. 2023) (explaining that an "agreement" under the IWPCA "requires only a manifestation of mutual assent ... without the formalities and accompanying legal protections of a contract" (quoting *Catania v. Loc. 4250/5050 of the Commc'ns Workers of Am.*, 834 N.E.2d 966, 972 (Ill. App. Ct. 2005))). Yet, "the IWPCA holds the employer only to its promise under the employment agreement." *Chagoya*, 992 F.3d at 624 (citing *Enger*, 812 F.3d at 570). Further, an employer's promise is not actionable unless it is "unequivocal." *Schultze v. ABN AMRO, Inc.*, 83 N.E.3d 1053, 1059–60 (Ill. App. Ct. 2017).

Scatchell alleges that "[t]he CBA [Collective Bargaining Agreement] and past practices constitute an agreement to pay [him] wages as that term is defined under the [IWPCA]" (Ex. A, Compl., ¶¶ 190, 196). Scatchell has offered *no* factual details regarding either the CBA or past practices. *Loos v. Cnty. of Perry, Illinois*, No. 3:20-CV-1107-MAB, 2023 WL 6382364, at 23–24 (S.D. Ill. 2023) ("Thus, to state a claim under the IWPCA, the employee is required to

26

demonstrate the employment contract, agreement, or policy that governed their employment provided for paid vacation."); *Chagoya*, 992 F.3d at 625 ("Here, the record is also devoid of any implicit agreement between the parties or of any acquiescence by the City that operators would be compensated for the activities at issue."). Thus, Scatchell has failed to allege sufficient facts to survive a motion to dismiss under *Iqbal*'s pleading standards.

Without an employment agreement, Plaintiff must plausibly allege mutual assent that gave rise to an implicit agreement under IWPCA. But, here too, Plaintiff was required to "plead facts showing mutual assent to terms that support the recovery." *Das v. Tata Consultancy Servs., Ltd.*, No. 22 C 6988, 2023 WL 7130423, at *4 (N.D. Ill. 2023) (collecting cases); *Bradley*, 59 F.4th at 903–04 (dismissing an IWCPA claim because Plaintiff "could not demonstrate the mutual assent necessary to prove a claim under the Wage Payment and Collection Act."). All that Scatchell offered was one vague phrase, "[t]he CBA and past practices." In other words, Plaintiff has not "pointed to any unequivocal promise" and has therefore failed to state a plausible IWPCA claim. *Das*, 2023 WL 7130423, at 4; *Loos*, 2023 WL 6382364, at 23–24 ("Simply put, there is no contract, no collective bargaining agreement, no handbook, and no oral representations from Judge Campanella regarding earned time off. Nor is there any evidence as to the basic rules of Loos' alleged earned vacation time, such as the rules for accrual, use, and carryover.").

### IX. ABSENT A PLAUSIBLE CLAIM AGAINST THE INDIVIDUAL DEFENDANTS, THE INDEMNIFICATION COUNT SHOULD BE DISMISSED (COUNT VIII)

In Count VIII, Scatchell sues Melrose Park for indemnification pursuant to 745 ILCS 10/9-102. Absent a plausible claim against the individual Defendants, however, Melrose Park

would incur no indemnification obligation and therefore should be dismissed. *See Karalyos v. Bd. of Educ.*, 788 F. Supp. 2d 727, 734 (N.D. Ill. 2011).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed.

Respectfully submitted,

<table>
<tr>
<td>

**s/ Michael D. Bersani**

Michael D. Bersani, Atty. Bar No. 06200897
Hervas, Condon & Bersani, P.C.
333 Pierce Road, Suite 195
Itasca, Illinois 60143-3156
Phone: 630-773-4774; Fax: 630-773-4851
mbersani@hcbattorneys.com
*Attorney for Defendants Pitassi, Castellan & Caira*

</td>
<td>

**s/Jeffrey Scott Fowler**

Jeffrey Scot Fowler (6205689)
Laner Muchin, Ltd.
515 North State Street, Suite 2400
Chicago, IL 60654-4688
(312) 467-9800
jfowler@lanermuchin.com
*Attorney for the Vll. of Melrose Park*

</td>
</tr>
<tr>
<td>

**s/Patrick Halpin Oconnor**

Patrick Halpin O'Connor
Hartigan & O'Connor P.C.
53 West Jackson Boulevard, Suite 460
Chicago, IL 60604
*patoconnor@hartiganlaw.com*
Attorney for the Melrose Park Board of Fire
and Police Commissioners

</td>
<td>

**s/K. Austin Zimmer**

K. Austin Zimmer
Joseph Giambrone
Del Galdo Law Group, LLC
1441 South Harlem Avenue
Berwyn, IL 60402
zimmer@dlglawgroup.com
*Attorneys for Ronald Serpico*

</td>
</tr>
</table>

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN A. SCATCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 20 CV 1045 |
| | ) | |
| VILLAGE OF MELROSE PARK, an Illinois | ) | Honorable Gary Feinerman |
| Municipal Corporation, MELROSE PARK BD | ) | |
| OF FIRE AND POLICE COMM'N, RONALD | ) | |
| SERPICO, SAM PITASSI, MICHAEL | ) | |
| CASTELLAN, PETER CAIRA, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2023, I electronically filed the foregoing *Defendants' Memorandum of Law in Support of its Joint Motion to Dismiss,* with the Clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which will send notice to:

**TO:**   Gianna Scatchell Basile, Disparti Law Group, 121 W. Wacker Dr, Suite 2300, Chicago, Il 60601 gia@dispartilaw.com

Cass T. Casper, Esq., Disparti Law Group, 121 W. Wacker Dr, Suite 2300, Chicago, Il 60601; ccasper@dispartilaw.com;

Jeffrey Fowler, LANER MUCHIN, LTD., 515 N. State Street #2400, Chicago, Illinois    60654; jfowler@lanemuchin.com

Patrick Halpin O'Connor, HARTIGAN & O'CONNOR, PC, 53 West Jackson Blvd., Suite 460, Chicago, IL 60604; patoconnor@hartiganlaw.com

K. Austin Zimmer, DEL GALDO LAW GROUP, 141 South Harlem Avenue, Berwyn,    IL 60402, 708-222-7000, zimmer@dlglawgroup.com

**s/ Michael D. Bersani**
Michael D. Bersani, Atty. Bar No. 06200897
*Attorney for Defendants Pitassi, Castellan & Caira*
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, Illinois 60143-3156
Phone:  630-773-4774; Fax:  630-773-4851
mbersani@hcbattorneys.com

29