FILED DATE: 1/24/2020 12:00 AM 2020L001001

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
LAW DIVISION

| | |
|---|---|
| John A. Scatchell,<br><br>     Plaintiff,<br><br>v.<br><br>Vill. of Melrose Park, an Illinois Municipal Corporation, Melrose Park Bd of Fire and Police Comm'n, Ronald Serpico, Sam Pitassi, Michael Castellan, Peter Caira,<br><br>     Defendants. | Case No:<br>Ad Damnum: $50,000.01<br><br>Jury Trial Demanded |

## **COMPLAINT**

Plaintiff, JOHN A. SCATCHELL, by his attorneys, Gianna R. Scatchell, Esq., LAW OFFICES OF GIANNA SCATCHELL, and Cass T. Casper, Esq., TALON LAW, LLC, brings this Complaint against the defendants, Village of Melrose Park, Melrose Park Board of Fire and Police Commission, individual Defendants, Ronald Serpico, Sam Pitassi, Michael Castellan, and Peter Caira, (collectively, the "Defendants") and alleges upon personal knowledge regarding himself and his own acts, and on belief, regarding all other matters:

## **NATURE OF ACTION**

1. Plaintiff John Scatchell Jr. sues to enforce his constitutional, federal, and state law rights arising out of the Defendants' unlawful conduct as part of a conspiracy to retaliate against Plaintiff by firing him as a Melrose Park Police Officer because of his association with his father. Plaintiff seeks all remedies including reinstatement, lost wages and benefits, compensatory damages, punitive damages, and attorneys' fees and costs.



EXHIBIT
**DEFS' A**

1

FILED DATE: 1/24/2020 12:00 AM    2020L001001

2.  The facts leading up to this Complaint were triggered by three sets of events—Events 1 and 2 set the stage for the facts that led to Event 3, which forms the basis of this lawsuit:

    a)  <u>Event 1</u>: Defendants Pitassi and Castellan issued a direct order compelling the only African American police officer to move into Melrose Park by relying on an unconstitutional statute and disregarding the residency exemption that applied to him.

    b)  <u>Event 2</u>: Plaintiff's father, John Scatchell Sr. ("Scatchell Sr."), now a retired MPPD lieutenant and former Fraternal Order of Police ("FOP") President opposed this selective enforcement. When Scatchell Sr. refused to acquiesce to the Defendants' discrimination of the only African American police officer, they retaliated against him. Scatchell Sr. exercised his rights under Title VII and the First and Fourteenth Amendments which included opposing acts of racial discrimination relating to the only African American Police Officer (e.g. signing two declarations his behalf, voting to arbitrate his residency issue, offering to testify at his arbitration), filing an EEOC Charge alleging retaliation with regard to his protected activity, and filing a federal lawsuit alleging the same. *See Scatchell v. Village of Melrose Park*, 18-cv-3989.[1]

    c)  <u>Event 3</u>: Not content with making Scatchell Sr.'s conditions of employment a living hell, the individual Defendants then used their public authority to drive home the message to Scatchell Sr. by extending their reprisals to his son, Scatchell Jr by ultimately terminating him based upon trumped up and ginned up charges.

## <u>JURISDICTION AND VENUE</u>

---

[1] On January 29, 2019, Scatchell Sr. filed a Motion to Amend his Complaint to consolidate Sr. and Jr.'s claims. Defendants objected. In August 2019, the Court denied Scatchell Sr.'s Motion. *Scatchell v. Melrose Park, et al.*, 18-cv-3989 (J. Norgle). This lawsuit follows.

FILED DATE: 1/24/2020 12:00 AM   2020L001001

3.   This Court has jurisdiction over Plaintiff's claims pursuant to its common law powers and under Article VI, § 9 of the Illinois' Constitution, providing that "Circuit Courts shall have original jurisdiction of all justiciable matters. . ."

4.   Jurisdiction over the federal claims arises under 42 U.S.C. §§ 1983, 1988, 28 U.S.C. §§ 1331, 1343, and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, and attorneys' fees under 42 U.S.C. §1988.

5.   Venue is proper in this Court pursuant to 735 ILCS 5/2-101 because all of Defendants' illegal acts complained of herein took place in Cook County, Illinois, and/or at Defendants' offices located in Chicago, Illinois, Cook County, within the jurisdictional boundaries of this Court.

6.   Venue is further proper pursuant to 735 ILCS 5/2-101 because Plaintiff resides in Cook County, Illinois, and, On belief, at least one of the Defendants resides in Cook County, Illinois.

## **PARTIES**

7.   Plaintiff John Scatchell Jr.[2] ("Scatchell Jr." or "Scatchell") is a resident of Melrose Park. He was employed as a full-time Melrose Park police officer from September 26, 2012 until his unlawful termination on December 6, 2018.

8.   Defendant Melrose Park ("VMP" or "Village") employs over 15 employees. The VMP is the individual Defendants' employer and Plaintiff's former employer.

9.   Defendant VMP has indemnification obligations for wrongful acts committed by its officials, employees, and agents. *See* 745 ILCS §§10/1-202 and 9-102.

---

[2] Plaintiff is not a true Jr., but for ease of reference he is listed as Jr. and his father as Sr. throughout these pleadings.

FILED DATE: 1/24/2020 12:00 AM   2020L001001

10. Defendant VMP owns, operates, directs, and controls both the Melrose Park Police Department ("MPPD"), the primary law enforcement agency and the Board of Fire and Police Commission ("BOFPC"), the three-member administrative agency subject to 65 ILCS §5/101-1 *et seq*.

11. Defendant Ronald Serpico ("Serpico") is an elected official serving as the Mayor of Melrose Park and is also an attorney with a private practice in the VMP. Serpico is a final policy maker and chief executive officer. Serpico engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

12. Defendant Sam Pitassi ("Pitassi") is the Director of Police. Pitassi oversees and operates the MPPD. Defendant Serpico appoints Pitassi annually. Pitassi engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

13. Defendant Michael Castellan ("Castellan") was the Deputy Chief at all times relevant and had certain duties as delegated by Defendant Pitassi including Plaintiff's internal investigation and disciplinary proceedings. He was appointed by Mayor Serpico. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

14. Defendant Peter Caira ("Caira") is the Assistant to Director Pitassi. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

15. At all times relevant, Defendant Pitassi promulgated rules, regulations, policies, and procedures as Director of Police for the training, the supervision, the advisement, and the discipline (up to a five days) of the MPPD regarding: (1) conduct; (2) personnel files and personally identifiable information; (3) compensatory time and sick leave; (4) hiring and recruiting; (5) restructuring and transfers; and (6) referrals to the employee assistance program.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

FILED DATE: 1/24/2020 12:00 AM   2020L001001

16. All administrative remedies for the Title VII claim have been exhausted. All conditions precedent has been fulfilled including receipt of the right-to-sue letter issued by the Department of Justice on December 3, 2019. (Plaintiff's Right to Sue letter attached as Ex. A).

### FACTUAL ALLEGATIONS

### The Background

17. Plaintiff's family has been a pillar of the Melrose Park community through a long line of public servants. This tradition began with Scatchell Jr.'s grandfather who served as a firefighter and rose through the ranks to become the VMP fire chief until he retired. The tradition continued with Jr.'s father, Scatchell Sr. who served as an MPPD officer for over 33 years and retired last year with the rank of lieutenant. Additionally, several of Scatchell Jr.'s uncles, cousins, and friends have similarly devoted their lives to the safety and protection of the residents of Melrose Park by serving as police officers or fire fighters.

18. Scatchell Jr. followed in his father's footsteps and became a Melrose police officer. He proudly served for over six (6) years until Defendants fired him and shattered his dream of having a long and fulfilled career serving the residents of the Village like his father and grandfather did.

19. On belief, the individual Defendants' conspiracy began against when Scatchell Sr., as FOP President, opposed the VMP's selective enforcement of its residency policy as it applied to the only African American police officer.

### I.   VMP'S SELECTIVE ENFORCEMENT AGAINST ITS ONLY AFRICAN AMERICAN OFFICER

### A.  The VMP's History of Disparate Treatment against African Americans

20. The VMP has fostered and condoned a culture of discrimination against African Americans, which is evidenced in its disparate treatment of African American police officers in its hiring, promotional, and disciplinary practices.

21. The VMP maintains a residency ordinance that requires its employees to live in Melrose Park unless an exemption applies. *VMP Ordinance § 2.52.020*.

22. The VMP maintained a five-year residency precondition for police candidates designed to disqualify outsiders. This ordinance was repealed after the Department of Justice ("DOJ") filed a civil rights lawsuit challenging the legality of the VMP's unlawful barriers to fair and non-discriminatory hiring. *USA v. Vill. of Melrose Park, et al*, 1:85-cv-10493. In 1987, the DOJ and VMP entered into a consent decree. In 2007, the VMP revived its 5-year residency pre-condition. *VMP Ordinance § 2.60.140*.

**B. <u>Defendants Enforce the Residency Policy against its only African American Officer</u>**

23. As part of the Consent Decree, the VMP hired the first African American police officer, Kyll Lavalais ("Lavalais").

24. Thirty-two years after the VMP entered into the Consent Decree, Lavalais is the first and the last full-time African American police officer, sergeant, and lieutenant to serve on the MPPD.

25. Lavalais faced discrimination throughout his employment. Defendants countered his discrimination complaints by retaliating against him in transfers, denials of promotion, and selective enforcement of the residency policy.[3]

26. On September 1, 2016, after 22 years of unblemished service, Defendants Pitassi and Castellan notified Lavalais, through counsel Jeffrey Fowler, Esq., Laner Muchin, that he violated the residency policy—notwithstanding his residency exemption[4]—and ordered him to re-establish residency within the VMP in one year to avoid discipline up to and including termination.

---

[3] *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013); *See also Lavalais v. Vill. of Melrose Park*, No. 16 C 10454, 2017 WL 1545660, at *5 (Apr. 28, 2017).

[4] *VMP Ordinance §2.52.090* ("The residency requirement shall not apply to or be imposed upon any employee that is a minority or was hired pursuant to the judicial decree 85C 10493").

FILED DATE: 1/24/2020 12:00 AM    2020L001001

FILED DATE: 1/24/2020 12:00 AM    2020L001001

27. The VMP's residency ultimatum was pre-textual because Lavalais was the only MPPD officer covered by the consent decree residency exemption and the Defendants relied on an unconstitutional statute as their basis for issuing the Order.[5]

28. Lavalais was also the next sergeant to be promoted to lieutenant and was less than two years away from retiring with maximum pension benefits.

### C. Scatchell Sr. Opposes the Defendants' Selective Enforcement

29. Lavalais grieved the residency issue with Scatchell Sr. as president of the FOP Lodge 19, which is the sole bargaining agent for MPPD officers.

30. On November 10, 2016, Scatchell Sr., as FOP president, informed Defendants VMP, Serpico, Pitassi, and Castellan that the FOP opposed the residency order and would be filing a demand for arbitration on Lavalais' behalf.

31. The next day, on November 11, the VMP posted its Board Agenda announcing that Scatchell Sr. would be promoted to deputy chief at the next Board meeting on November 14, 2016.

32. This announcement came as a surprise to Scatchell Sr. because he was out of town and no one contacted him from the VMP, as is customary.

33. On belief, Defendant Serpico proposed this promotion to sway Scatchell Sr. away from arbitrating on Lavalais' behalf.

### D. Defendants Respond to Scatchell Sr.'s Protected Opposition with a Slew of Retaliatory Events

34. When Scatchell Sr. remained firm in his opposition against the Defendants' selective residency practices, the VMP Trustees voted to table his promotion indefinitely.

---

[5] *In re Pension Reform Litigation*, 2015 IL 118585 ("Declaring the law, 5 ILCS § 315/15 unconstitutional in its entirety as a violation of the pension protection clause, and permanently enjoined its enforcement.")

35. On November 14, 2016, the individual Defendants' retaliatory animus became evident when a VMP attorney contacted Scatchell Sr.'s attorney informing her that the VMP Trustees would be "tabling" his promotion hours *before* the Board meeting even occurred.

36. Shortly thereafter, on November 22, 2016, another VMP attorney falsely accused Scatchell's counsel of taking positions "adverse" to the VMP and threatening to "sue [it] twice" on "two separate matters."

37. On belief, Defendant VMP's attorney considered the "two adverse positions" to be the Lavalais matter and Scatchell Sr.'s promotion.

38. On November 25, 2016, Scatchell's counsel responded to the VMP attorney by stating:

"I would be remiss if I did not voice I am concerned that my continued representation of the FOP would cause some quid pro quo adverse actions against Lt. John Scatchell and Officer John Scatchell Jr. This concern is buttressed by the recent events surrounding Lt. Scatchell's promotion. I really hope these facts are coincidences and not in retaliation for my taking "adverse position(s) against the Village."

39. Later that day, on November 25, 2016, Defendant VMP confirmed the attorney's fears of reprisal when it posted the November 28, 2016 Board Agenda announcing that Lt. Steve Rogowski, not Scatchell Sr., would be promoted to deputy chief. On belief, the VMP never announced a promotion it did not ultimately appoint.

40. Scatchell Sr. was the most senior officer on the MPPD after Defendants Pitassi and Castellan.

41. Since 2017, the VMP terminated two other MPPD employees for purported residency violations that were either African American or associated with African Americans including:

a) Devon Moss an MPPD officer married to an African American woman and who has bi-racial children. On belief, at the time of termination Moss was the next officer on the sergeant list to be promoted to sergeant.

FILED DATE: 1/24/2020 12:00 AM    2020L001001

FILED DATE: 1/24/2020 12:00 AM   2020L001001

   **b)** Angela Williams, an African American woman, worked as a civilian employee in the MPPD's records department for nearly 20 years.

42. Meanwhile, Defendants turned a blind eye and even promoted certain non-African American officers who live outside of the VMP. On belief:

   **a)** Gennaro Manzo resides in Palatine and declared a homestead exemption on his Palatine home. Despite this blatant residency violation, Defendants Pitassi and Castellan transferred Manzo to a coveted detective position.[6]

   **b)** Steve Pesce resides in Carol Stream. Despite not living in the VMP, the Defendants promoted Pesce to sergeant and he ran and was elected to the Melrose Park Library Board.

## II.   **DEFENDANTS CONSPIRE AND RETALIATE AGAINST SCATCHELL SR.**

43. The VMP regulates and investigates police officers' residency compliance and Defendants Pitassi and Castellan enforce the residency policy.

44. Political loyalty to Defendant Serpico and his administration is, as a matter of long-established custom and practice having the air of official policy, a requirement for employment at the MPPD.

45. Defendants blacklist and retaliate against officers who question leadership, oppose or report misconduct, or do anything that goes against Mayor Serpico's will.

46. The individual Defendants viewed each of Scatchell Sr.'s protected actions as a separate act of defiance against the Serpico Administration.

---

[6] Steve Pesce and Gennaro Manzo both purchased homes in the VMP from Defendant Pitassi's wife who sells real estate. Both officers maintain their separate residences outside of Melrose Park.

FILED DATE: 1/24/2020 12:00 AM     2020L001001

47. The individual Defendants and others reached a mutual understanding to commit acts in retaliation against the Scatchell's, which set into motion a chain reaction of harassment and retaliation against Scatchell Sr. and then against Scatchell Jr.

48. In entering into and carrying out their conspiracy, the individual Defendants sought to punish Scatchell Sr. and then Scatchell Jr. for taking positions against the Serpico Administration and to intimidate others from opposing it.

### A. The VMP Escalates its Retaliation against Scatchell Sr.

49. In the months that followed Scatchell Sr.'s "adverse positions" and additional oppositional conduct, the individual Defendants and others escalated their retaliatory behavior against Scatchell, Sr. To illustrate:

   a) Unknown individuals set off three quarter sticks of dynamite in front of the Scatchell residence. Deputy Chief Rogowski administratively locked the police report and closed the case without interviewing most witnesses and without inventorying the spent debris.

   b) Scatchell Sr. was involuntarily transferred from Shift Supervisor to Station Supervisor. His office was moved to a small office called "the hole." This transfer was a step backward for him professionally because it was a non-supervisory role with non-substantive duties.

   c) Defendant Pitassi received at least three anonymous letters relating to Scatchell, Sr. and Scatchell, Jr., which, on belief, were concocted by the Administration to justify investigations into both.

   d) Defendants attempt to pin a false excessive force case against Scatchell Sr.

### B. Scatchell Sr. Files an EEOC Charge and Defendants' Retaliation Escalates even further

50. In September 2017, Scatchell Sr. filed an EEOC charge against the Defendants and others alleging retaliation based on his protected oppositional conduct in the Lavalais matter.

10

51. Around October 23, 2017, the individual Defendants learned about Scatchell Sr.'s EEOC complaint, which sparked further retaliation against him such as:

a) On October 24, 2017, the VMP's human resources director, Christine Piemonte called Scatchell Sr. to ask if he had any security jobs for her convicted felon brother, which was a pretext to ascertain if Scatchell, Sr. was working unauthorized secondary employment and if he would hire a felon if he was.

b) On October 26, 2017, the VMP promogulated a memorandum that prohibited its employees from recommending service providers owned by other VMP employees. It was common knowledge that Scatchell Sr. owned a plumbing company and was regularly referred business by VMP employees. The memorandum was distributed at the behest of Serpico in order to further punish Scatchell, Sr. for daring to defy Serpico's will in the Lavalais matter.

c) On October 26, 2017, Deputy Chief Rogowski began an "informal investigation" into Scatchell Sr.'s alleged conduct on a traffic stop that occurred two months earlier.

d) On or about October 26, 2017, MPPD officers Giovanni Castellan and Robert Anzaldi Jr. each submitted to/from memoranda in response to Rogowski's informal investigation against Scatchell Sr. Both to/from memos contained dramatically embellished details that varied wildly from their original reports. Both Scatchell's were on-scene, yet neither was asked to provide a to/from with their version of the traffic stop.

e) On November 13, 2017, three weeks after Defendants were on notice of Scatchell Sr.'s EEOC Charge, Defendants Pitassi and Castellan tasked Defendant Caira to begin an internal investigation against Scatchell Jr. without speaking with him first as required by the SOP's. Defendant Serpico was on notice of this investigation.

11

FILED DATE: 1/24/2020 12:00 AM   2020L001001

**f)** On December 7, 2017, Defendants Pitassi and Castellan served Scatchell Jr. with a Notice of Interrogation seeking his suspension or his termination.

**g)** On December 11, 2017, the VMP enacted a mandatory age limit that automatically retires any police officer who turns 62 and has 30 years of creditable pension service. On belief, Defendants believed that Scatchell Sr. was turning 62 at the end of December 2017, which led to enacting said ordinance.

### III. DEFENDANTS INVESTIGATE SCATCHELL JR. IN SEARCH OF A CRIME

**52.** Three weeks after learning about Scatchell Sr.'s EEOC complaint, the individual Defendants put events into motion against Plaintiff that support this lawsuit.

**53.** Defendants set upon a concerted course of unlawful conduct seeking Scatchell Jr.'s termination based on ginned-up, trumped-up, trivial bases that were pretextual litigation figments to justify firing him as retaliation against Scatchell Sr.

### A. Scatchell Jr. Aggravates a Prior On-duty Injury

**54.** On or about October 28, 2017, Plaintiff aggravated a prior on-duty neck and back injury.

**55.** Plaintiff immediately sought medical treatment from his primary care physician because his insurance requires a physician referral to make an appointment with an orthopedic surgeon.

**56.** The physician recommended that he stay home from work because the nature of police work could worsen the injury and because the Plaintiff's mandatory uniform attire weighs at least 25 pounds. He was allowed to travel and to get light exercise.

**57.** While Scatchell Jr. was on sick leave from November 9, 2017 to December 7, 2017, he presented at least five (5) doctor's notes to his supervisors.

**58.** The Defendants never denied that Scatchell Jr. was injured.

12

59. The Defendants never ordered Scatchell Jr. to visit a doctor selected by the VMP to verify his injury.

**B. Defendants' $200,000+ Taxpayer-Sponsored Witch Hunt against Scatchell Jr.**

60. On November 13, 2017, a mere four days after Scatchell Jr. went on sick leave, an anonymous person "slid" a letter under Defendant Castellan's office door. This apocryphal letter accused Scatchell Jr. of getting "special treatment" and of abusing the sick leave policy by going "hunting" as stated below:

> Chief;
>
> i would like to inform you about something that is going on. The reason I am not putting my name on this letter is that I do not want any problems from his father. In the pass, the Melrose Park Police Department brought charges against Officer Phil Negron for calling in sick with a doctor's letter. Officer Negron was not sick or injured, he was working his other jobs and doing other activities. I feel that if the Melrose Park Police Department does this for one officer, they should do it for the entire department.
>
> John Scatchell is calling in sick when, in fact, he is not. I feel when an officer does this he does not care about this department or his follow officers. He only cares about himself. He is out HUNTING every morning. I do not feel, because his Father is a Lieutenant with our department, that he should receive special treatment.
>
> An officer who cares.

61. Before November 13, 2017, Plaintiff was an exemplary employee that was never disciplined. Scatchell Jr. met or exceeded the legitimate expectation and requirements of being a police officer and received numerous compliments and letters of commendation from his supervisors.

62. To investigate whether the Letter had merit Defendants Pitassi and Castellan assigned Defendant Caira armed with the "full resources of the department" to investigate and report all findings including bona fide and unfounded claims.

FILED DATE: 1/24/2020 12:00 AM    2020L001001

FILED DATE: 1/24/2020 12:00 AM   2020L001001

63. This investigation was flawed and unprecedented. Defendant Caira and others, both on and off-duty, surveilled Scatchell Jr. and his family months after the internal investigation ended.

   **a)** Defendant VMP spent at least $200,000 prosecuting Scatchell Jr.'s suspected abuse of four (4) sick days, which included Defendant Caira's at least 219 hours of overtime conducting   "surveillance" on Scatchell Jr.

   **b)** By comparison, within months of Scatchell Jr.'s investigation, Caira spent only 16.5 hours investigating a murder.

### C.   Defendants Deviated from following its Protocol to Investigate Personnel Disputes

64. As a full-time police officer covered by the Collective Bargaining Agreement ("CBA"), Scatchell Jr. could not be relieved from duty, suspended, discharged, or disciplined without the Village of Melrose Park having established just cause.

65. Individual Defendants not only treated the Plaintiff differently from all comparably situated employees, but they violated the CBA and SOP's in doing so.

66. According to § 5.3 of the CBA, "[a] three-panel Review Board shall oversee the application of the Sick Leave Policy … provided that the Review Board shall not inquire into any particular case until the officer has been on sick leave for at least one (1) month."

67. In violation of §5.3 the CBA: (a) Defendants Pitassi, Castellan, and Caira, <u>not</u> the "Review Board," investigated Scatchell's use of sick leave; (b) a "Review Board" was never convened; and (c) the internal investigation against Scatchell Jr. began at least 26 days too soon.

### E.   Defendants Flouted the Protocol Outlined in SOP §1020 Governing Personnel Disputes

68. Defendants Pitassi, Castellan, and Caira singled out Plaintiff by completely abandoning the procedural protections put in place by the SOP §1020.

14

69. Defendant Castellan even acknowledged this double standard. In *Scatchell v. TollPass*, Castellan Dep. 17:4 June 10, 2019) ("Q: "Are you familiar with [SOP 1020]? A: Yes. Q: Did you rely on [§1020] in the internal investigation of Scatchell? A: "I did not.")

70. SOP §1020.3(d) provides that anonymous complaints "should be accepted and investigated if information is provided."

71. Defendants had no admissible or reliable evidence to create a reasonable suspicion that Scatchell Jr. was abusing the sick leave policy. The letter was not signed, contained no dates, no times, and no locations of the alleged sick leave abuse, more was required.[7]

72. Yet, the Defendants Pitassi and Castellan gave Caira unfettered access and an unlimited budget to investigate this "anonymous" letter.

73. Castellan further testified that he knew that the anonymous letter could never be authenticated. (*Scatchell v. Melrose Park*, 18 CV 03989, Castellan Dep., 80:10-11 September 18, 2019) ("Who's going to validate this [letter], because it's anonymous?").

74. Additionally, Defendants violated SOP §1020.10.2, by not giving Scatchell Jr. "access to all materials considered by the Chief in recommending the proposed discipline" and not giving him "a chance to respond within five days of receiving the disciplinary notice."

75. Defendants Pitassi and Castellan acted in dereliction of SOP §1020.9, which requires that an internal investigation that encompasses both administrative and criminal elements must be conducted by separate investigators.

76. Instead, Defendants Pitassi and Castellan assigned Defendant Caira to conduct an improper "dual investigation" by acting as both the administrative and criminal investigator.

---

[7] *See Sharud Din v. City of Chicago*, 883 F.Supp. 270, 273 (N.D. Ill. 1995) (finding an anonymous letter was inadmissible because the police officer who wrote the letter had not come forward to authenticate it); *see also Goldschmidt v. Coco*, 493 F. Supp. 2d 1055, 1061 n.3 (N.D. Ill. 2007) (On the basis of hearsay and irrelevance, Court deemed inadmissible a letter by an anonymous courthouse employee).

FILED DATE: 1/24/2020 12:00 AM    2020L001001

FILED DATE: 1/24/2020 12:00 AM    2020L001001

77. This improper dual investigation allowed Defendant Caira to unlawfully obtain information from law enforcement databases under the guise of a criminal investigation, while relying on the lower burden of proof in Administrative Law to sustain the Statement of Charges.

### D. **Defendants' Multi-faceted Retaliation against Scatchell Jr.**

78. Despite Defendants Pitassi and Castellan's initial auspices of an internal investigation into Scatchell Jr.'s alleged sick leave abuse, a closer examination of Defendant's Caira's conduct reveals the retaliatory underbelly that tainted the entire internal investigation by:

a) Procedural Defects.

    i. Defendants Pitassi and Castellan quickly assigned Defendant Caira to investigate Scatchell Jr. even though (1) the MPPD had an internal affairs officer and had never previously assigned Caira to an internal investigation; (2) the MPPD had an obvious conflict of interest; and (3) they could have referred the matter to the Illinois State Police or Cook County State's Attorney, but did not.

    ii. No Prior Notice of Suspected Misconduct – For nearly seven (7) years, Defendants Pitassi, Castellan, and the VMP provided Scatchell Jr. no feedback, no warnings, and no discipline regarding his use of sick leave or any other off duty conduct complained of. Defendants' Notice of Interrogation was the first time that Defendants put Scatchell Jr. on notice that they objected to such conduct.

    iii. Unsworn Interrogation and Unlawfully Obtained Evidence – Defendants subjected Scatchell Jr. to a 4 ½ hour interrogation based on an unauthenticated, anonymous letter. Scatchell Jr. was never sworn-in as a witness during his Interrogation, which makes the Interrogation inadmissible hearsay. During the Interrogation, the

16

Defendants relied on unlawfully obtained evidence to build criminal and administrative cases against Scatchell, Jr.

iv. <u>Violated the Uniform Peace Officers' Disciplinary Act</u> – The Uniform Peace Officers' Disciplinary Act requires that all complainants must be known and all complaints against an officer must be sworn. 50 ILCS 725/1. Defendants relied on an unsworn and anonymous letter as the basis to investigate, interrogate, and recommend Plaintiff's termination. Defendants concealed the existence of this letter for nearly six (6) months.

v. <u>Improper Medical Release</u> – Defendant Pitassi compelled Scatchell Jr. to fill out a medical authorization form, which was different than the MPPD Sick Leave Form.

vi. <u>Defendants altered Plaintiff's medical authorization</u> – This alteration was significant as it created the false appearance that Scatchell had submitted authorization when he did not.

vii. <u>Improper Medical Release</u> – Defendants also requested Scatchell Jr.'s medical records using a defective subpoena. When the hospital did not produce the requested records, Defendants Pitassi and Castellan filed a Petition to Enforce the BOFPC's Subpoena instead of resubmitting the subpoena using the proper protocol.

viii. <u>The VMP Prosecutor Acts as the Judge, Jury, and Executioner</u> – The VMP prosecutor improperly usurped the BOFPC's authority by filing a Petition to Enforce the BOFPC's subpoena on the Board's behalf. The BOFPC's attorney, not the VMP's prosecuting attorney should have been the one to file this Petition.[8]

---

[8] Manual on Police and Fire Disciplinary Matters (If a person served with a subpoena fails to appear and testify or produce books and papers as required, the board must apply to the circuit court to compel compliance with the terms of the subpoena.)

17

**b)** <u>Destroying or Suppressing Material Evidence</u>

**i.** <u>Failing to inventory and preserve the anonymous letter and envelope</u> – Defendants cannot establish the letter's chain of custody or even the original copy of the letter.

**ii.** <u>Disregarding Relevant Evidence</u> – Defendants failed to conduct even the most basic investigation. Specifically, none of the individual Defendants (a) reviewed the key fob entries and exits from the MPPD on November 13, 2017; (b) interviewed any witnesses; (c) reviewed or preserved the footage from MPPD's state-of-the-art camera system, including the cameras that point to Castellan's office; or (d) gave an order, as a paramilitary organization, for the author to come forward. Any of these actions could have revealed the author of the letter.

**c)** <u>Unlawful Surveillance and Privacy Breaches</u>

**i.** <u>Reckless Disclosure of Plaintiff's Personally Identifiable Information</u>: Defendants compelled, and then improperly provided, used, disclosed, and transmitted Plaintiff's "PII" including his social security number, home address, phone number, and driver's license number to third parties or publicly, including disclosing Scatchell Jr.'s PII to a convicted felon, and to several DuPage Medical offices.

**ii.** On belief, the VMP prosecutor sent the unredacted subpoenas at least five (5) days *after* Plaintiff's attorney informed him of the breach.

**iii.** <u>Misusing Law Enforcement Databases to Look up Personal Information</u>: During and the MPPD's internal investigation of Scatchell Jr., Defendant Caira misused electronic law enforcement databases to access Scatchell Jr.'s, his friend's, and his relative's sensitive PII including their: full names, birthdays, social security numbers, home addresses, TollPass transponder location history, license plates,

18

driving records, photos, vehicle information, FBI criminal records. These searches violated department and state policies because Scatchell Jr.'s investigation was not criminal and neither his friends nor his relatives were employed by the VMP or involved in its investigation.

**iv.** <u>Warrantless Access to Scatchell Jr.'s Mother's TollPass records</u>: Defendant Caira improperly obtained Scatchell Jr.'s mother's TollPass transponder records and location data by Emailing a TollPass lieutenant to circumvent the TollPass' privacy policy, which requires a subpoena or a court order;

**v.** When Plaintiff's counsel sent the Illinois TollPass a FOIA request to investigate the potential breach, the TollPass lieutenant forwarded a copy of her FOIA request to Defendant Caira with the header "SPAM" to conceal their improper conduct.

| | |
|---|---|
| **From:** | Schneider, Lt. David < ▓ @getipass.com> |
| **Sent:** | Friday, February 02, 2018 4:39 PM |
| **To:** | ....J@melroseparkpd.com |
| **Subject:** | *****SPAM***** Fw: FOIA 18-0028 - Melrose Park |

**d)** <u>Restriction on Travel</u>: Defendant Castellan ordered Scatchell Jr. to remain in Illinois when he had preapproved days off.

**e)** <u>Removing Scatchell Jr. from Training Opportunities</u>: Plaintiff's supervisors prematurely removed Scatchell Jr. from Emails involving future training or evidence technician opportunities. Officers with less seniority continued to receive such messages.

**f)** <u>Blocking Scatchell Jr.'s Phone Calls and Text Messages</u>: Defendant Pitassi and Deputy Chief Rogowski blocked Scatchell Jr.'s phone calls and text messages. On belief, Defendant Castellan could not respond to Scatchell Jr.'s text messages without seeking prior approval.

19

FILED DATE: 1/24/2020 12:00 AM   2020L001001

FILED DATE: 1/24/2020 12:00 AM 2020L001001

g) Due at least to the blocked calls and texts and/or the directive not to answer him, Scatchell Jr. was unable to get ahold of the Director or either deputy chief while he was on duty, which created an unnecessary risk to officer safety.

### E. Defendants Manufactured Reasons to Terminate Plaintiff

79. Defendants Pitassi and Castellan bypassed any lesser disciplinary options and deviated from any semblance of progressive discipline by providing Scatchell Jr. with no lesser alternative to punishment such as an informal investigation, verbal warning, or forfeiture of vacation days as they have done with other similarly situated officers involving similar or worse infractions.

80. On March 27, 2018, Defendants Pitassi and Castellan filed a 12-count Statement of Charges against John Scatchell Jr. and brought it before the BOFPC seeking his termination.

81. On belief, Defendants Pitassi and Castellan omitted several material facts from their Statement of Charges relative to Scatchell Jr.'s internal investigation including:

a) That Defendant Caira improperly obtained the evidence related to Scatchell Jr. alleged sick day abuse and off-duty misconduct as described above;

b) That Defendant Caira contacted several government agencies using Scatchell Jr.'s PII to provide "tips" to each agency about Scatchell Jr.'s alleged "unlawful activities" including communications to the IRS, the Illinois Department of Natural Resources ("DNR"), the Illinois State Police ("ISP"), and the Illinois TollPass; and

c) That Defendants Castellan and Caira spoke with various potential witnesses during Scatchell Jr.'s disciplinary proceedings from the DNR, Illinois TollPass, and the Illinois State Police District 15 (including a call from the TollPass Headquarters around 10:00 p.m. even though it closes at 5:00 p.m.).

### F. Officer Involved Shooting

**82.** In July 2018, Plaintiff and other officers were involved in an officer-involved shooting.

**83.** Defendants, again, substantially departed from the MPPD SOP's regarding Officer Involved Shootings as further retaliation against Scatchell Jr. For example:

    **a)** Defendants Castellan and Pitassi ordered Scatchell Jr. to return to work within one (1) week after the shooting (the Chicago Police Department, by comparison, gets 30 days);

    **b)** Defendant VMP's human resources director, Christine Piemonte, ignored Scatchell Jr.'s requests for police psychologist referrals and Employee Assistance Program resources;

    **c)** When Scatchell was medically cleared to return to work, Defendants Pitassi and Castellan ordered him to go on mandatory ride-a-longs, often with officers with less seniority than him or he was forced to wait until the assigned officer was available to pick him up.

    **d)** Other officers involved in the same shooting were not forced to do the same;

    **e)** Castellan ignored Scatchell Jr.'s requests to put the ride-a-long mandate in writing;

    **f)** Defendant Castellan ordered such "supervising" officers to observe Plaintiff and write down anything "weird that he did" even though none of them were medically qualified to make that call and even though Plaintiff was not made aware of these evaluations;

    **g)** MPPD detectives deliberately did not interview Plaintiff for his statement of the OIS even though he was on scene from the onset and had discharged his weapon during the call.

**84.** With no legitimate reason, and to paint Scatchell Jr. as posing a safety threat, Defendants Pitassi and Castellan, through counsel, sent ex parte communications to two of his doctors to "ensur[e] the safety of Ofc. Scatchell and the public" and to "make sure that [they are] aware of their obligations" pursuant to the Illinois Firearm Owners Identification Card Act.[9]

---

[9] *See 430 ILCS 65/8/1(f)*(requiring a clinical psychologist to inform the Illinois Department of Human Services if a patient poses a "clear and present danger to himself or others" within 24 hours of making that determination).

FILED DATE: 1/24/2020 12:00 AM    2020L001001

FILED DATE: 1/24/2020 12:00 AM  2020L001001

85. This letter was factually inaccurate, highly improper, and designed for no other reason than to ostracize, harass, and intimidate Scatchell Jr.

86. Defendants had no legitimate basis for sending this letter, and on belief, no other VMP employee has been so treated when facing disciplinary charges.

87. Scatchell Jr.'s attorneys were not included or informed of these communications.

### G. Defendants' Conspiracy to Cover-Up the Tainted Investigation

88. The Defendants have taken numerous calculated steps to cover-up or suppress their liability into Plaintiff's termination including denying FOIA requests, refusing to turn over relevant discovery, or forcing Plaintiff to file additional cases in an effort to get redress.

89. Pursuant to this scheme, among other things, Defendants and others engaged in the following unlawful conduct:

   a) Defendants Pitassi and Castellan knowingly removed letters of commendation from Scatchell Jr.'s personnel file.

   b) Defendants Pitassi and Castellan, through counsel, denied Scatchell Jr.'s right to discovery in the BOFPC proceedings. The Records show that the VMP prosecutor had already billed for answering Plaintiff's discovery, yet never produced it.

   c) Defendants Pitassi, Castellan, and Caira denied knowing who wrote the anonymous letter, yet vigorously opposed Scatchell Jr.'s 224 Petition.[10]

90. Defendant VMP deliberately provided partial, incorrect, or improperly redacted public records in response to Plaintiff's counsel's FOIA requests by:

   a) Ordering Plaintiff's counsel and his family not to send additional FOIA requests to the FOIA officer;

---

[10] Plaintiff filed the Illinois Supreme Court Rule 224 Petition for pre-suit discovery for the purpose of discovering the author of the anonymous letter and who disclosed the Illinois TollPass records.

22

FILED DATE: 1/24/2020 12:00 AM    2020L001001

**b)** Denying Plaintiff's FOIA request for Defendant Pitassi's MPPD Emails by falsely asserting that "Pitassi does not have an Email address."

**c)** Dismissing Plaintiff's request for Defendants Pitassi, Castellan, and others municipal phone records falsely alleging that Verizon does not provide detailed call records.

**d)** Inexplicably responding to Plaintiff's FOIA request for Defendant Castellan's phone records with two different sets of data both purporting to be his phone records from the same time period. One set produced hundreds of rows of data, while the other set record produced less than 10 rows of data.

**e)** Providing the Defendants with timely, unredacted copies of records that Plaintiff requested while improperly withholding or improperly redacting the same for Plaintiff.

**91.** In ways such as these, Defendants knowingly created a false and misleading record that omitted material facts, mischaracterized or exaggerated evidence, and withheld exculpatory information from his defense.

**92.** These actions have deprived Plaintiff of his ability to properly investigate and defend himself against the Statement of Charges.

## H. <u>Defendants Tainted the BOFPC Proceedings with Bias</u>

**93.** Defendant BOFPC was required to conduct a fair and an impartial hearing.

**94.** The Board proceeding was a total sham and would never have occurred but-for the Defendants' hell-bent determination to punish Scatchell Sr. by way of his son for daring to challenge them in the Lavalais residency matter and for asserting his own protected conduct.

**95.** Defendants, including the BOFC, substantially departed from its duties and policies through a series of actions that undermine the impartiality and the fairness of the entire proceeding, *to wit*:

23

FILED DATE: 1/24/2020 12:00 AM  2020L001001

a) Admittedly not relying on the CBA or the SOP's in their termination decision;

b) Failing to consider progressive discipline or mitigating evidence;

c) Denying Scatchell Jr. the opportunity to call the Defendant Pitassi as a witness, and then denying his offer of proof for the same;

d) Engaging in multiple *ex parte* communications with each of the individual Defendants after the BOFPC brought charges against Scatchell Jr. Such communications occurred before and after almost every one of Scatchell Jr.'s BOFPC hearings;

e) Not disclosing or including such *ex parte* communications into the administrative record.

f) Allowing Defendants Pitassi and Castellan to amend the Statement of Charges while not considering Scatchell Jr.'s Answer to the Amended Statement of Charges; and

g) Allowing the VMP's prosecutor to interject improper, personal opinions about Scatchell, Jr.'s credibility during his closing argument before the BOFPC.

96. On December 6, 2018, three days before Scatchell's 30th birthday, the BOFPC terminated Scatchell Jr. from his position as a police officer.

**I. Defendants Continue to Retaliate against Scatchell even after they Terminate him**

97. Even though the individual Defendants and others achieved their desired outcome—Scatchell Jr.'s termination—they continued to retaliate against Scatchell Jr.

98. Defendants, among other acts, retaliated against Scatchell Jr. by:

a) Defendant Pitassi deliberately attempted to blacklist Scatchell Jr. by adding him to the Illinois' police officer misconduct database. This was less than one week after Scatchell Jr. was terminated in violation of 50 ILCS 705/6.2. This was the first time that Pitassi ever filed such a report, even though other MPPD officers were terminated or resigned under

investigation. Pitassi knew, either actually or constructively, that reporting Scatchell to this database would foreclose his chances of being hired by another police department.

b) Certain unknown MPPD officers broke the personal lock on Scatchell Jr.'s MPPD locker and removed his personal effects despite his attorney's request to be present when it was opened and the MPPD not having an SOP regarding this issue.

c) Defendant VMP, in violation of the Illinois Wage Payment and Collection Act, refused to pay Scatchell Jr. nearly $16,000.00 for his unused 2019 vacation and compensatory time despite previous demands. This compensatory time is calculated based on the officer's prior year of work.

d) Defendant VMP never provided Scatchell Jr. with the Notice of Rights and Unemployment Insurance Benefit Handbook as it is required to do by the Illinois Department of Employment Security within five (5) days of separation.

e) Defendant VMP offered Scatchell Jr. benefits pursuant to Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Two weeks after Scatchell Jr.'s qualifying deadline passed, Defendant VMP informed him that it had "offered [him] COBRA benefits in error" and subsequently rescinded them alleging that he was ineligible due to "gross misconduct." On belief, Defendant VMP extended COBRA insurance coverage to other terminated employees.

f) Defendant VMP denied Scatchell Jr.'s application for unemployment benefits citing "serious misconduct" for "being employed by a felon which is against the law." Scatchell, Jr. never worked for a convicted felon and even submitted an affidavit to that effect.

FILED DATE: 1/24/2020 12:00 AM    2020L001001

25

FILED DATE: 1/24/2020 12:00 AM   2020L001001

**g)** Defendants sent Plaintiff's grandmother a post-humous red-light ticket on the day that she was buried, which was two months after the alleged violation occurred. On belief, most offenders receive such tickets within a few weeks of an alleged violation.

**h)** Defendant Serpico told his grandmother's estate's attorney that if Plaintiff's father showed up to the closing, that he would inflict bodily harm onto him. Then, during his deposition he stated that he was kidding.

**i)** The day after Plaintiff's grandmother's home closed, Defendant Serpico directed VMP employees to call Scatchell Sr.'s cell phone at 7:30 a.m. to pay for the red-light ticket.

### J. MPPD's Broken Disciplinary System

**99.** Defendant VMP operates a dysfunctional disciplinary system that is flawed at all levels based on its de facto policy, practice and/or custom of concealing certain officers' misconduct.

**100.** The concealment and suppression of the existence of misconduct includes: failure to sufficiently investigate allegations of misconduct; failure to accept complaints from citizens against police officers; the failure to investigate criminal conduct where off or on duty officers are involved; failure to promptly identify or record witness statements or to preserve evidence; fabrication of exculpatory evidence or destruction of evidence; and failure to initiate prompt disciplinary procedures related to the alleged misconduct, even when the allegation of misconduct has obvious merit, and failure to properly supervise or train police officers.

**101.** In the rare instances when complaints of misconduct are sustained, discipline is haphazard and unpredictable and is meted out based on rank and internal connections, which does little to deter misconduct.

### K. Defendants' Pitassi and Castellan's Double-Standard Disciplinary Policy

26

102.    Defendants Pitassi and Castellan have family members on the MPPD. Defendant Pitassi's

son is Sam Pitassi Jr. and Defendant Castellan's nephew is Giovanni Castellan.

103.    Defendants Pitassi and Castellan claim that their relatives on the MPPD are held to a

"higher standard" of conduct than other police officers. On belief, the opposite is true.

104.    Pitassi Jr. and Giovanni Castellan have been responsible for several major SOP infractions.

105.    In fact, on or about December 23, 2017, the *Sun Times* published an article, *Melrose Park*

*police brass faced with disciplining cop relatives*, which questioned Defendants Pitassi and

Castellan's double standard regarding the disciplinary process as applied to their relatives.

### i.    *Defendant Castellan's Nephew: Giovanni Castellan*

106.    Defendant Giovanni Castellan has been an MPPD officer for approximately three years.

107.    In that time, Giovanni racked up several SOP violations including, on belief:

a)  <u>Stalking a Victim</u>: Giovanni inappropriately contacted the victim of domestic violence
matter. She went to the police department to make a complaint, but the matter was
whitewashed by a Supervisor. *Discipline imposed*: None.

b)  <u>Arrest for Disorderly Conduct while on Probation:</u> Giovanni was arrested, while off duty,
for disorderly conduct in another town. He was accused of driving his car at a female
pedestrian in an aggressive manner. Giovanni was also accused of taunting the woman by
walking past her and making pig noises. *Discipline imposed*: Giovanni only forfeited two
vacation days with the opportunity for them to be reinstated even though he was on
probation and should have been automatically terminated.

c)  <u>Violating the Residency Policy</u>: When Giovanni was arrested, he listed his home address
in Oak Brook—in violation of the residency policy. *Discipline imposed*: None.

FILED DATE: 1/24/2020 12:00 AM    2020L001001

**d)** <u>Castellan's Nephew's Excessive Force Complaint</u>: In late 2019, while on a traffic stop, Giovanni used physical force and broke the suspect's arm. *Discipline imposed*: None

**e)** <u>"Unintentionally" Shooting at an Unarmed African American Suspect</u>: Two weeks later, Giovanni responded to a call of retail theft in progress. The suspect ran away, and Giovanni began a foot pursuit that culminated with him "unintentionally" shooting at the unarmed African American suspect during the "heat of the moment and the chase."[11] Giovanni knew, or should have known, that deadly force would never have been justified on a retail theft. *Discipline imposed*: On belief, none.

**f)** <u>Fired from Working Security at the District 89</u>. The Superintendent of District 89 School fired Giovanni from working security at the District's schools. On belief, after being terminated, he pulled over the Superintendent to annoy her and to harass her.

### ii. *Defendant Pitassi's son, Sam Pitassi Jr.*

**108.** Defendant Pitassi's son, Sam Pitassi Jr. ("Pitassi Jr.") has been an MPPD officer for approximately seven years.

**109.** <u>Chief Pitassi's Son Negligently Fires Duty Weapon in a Bathroom Stall:</u> Pitassi Jr. negligently fired his gun while in a bathroom stall during a break from a training session at another police department. *Discipline imposed*: He was required to take education courses to avoid forfeiting two days of vacation time.

**110.** <u>Chief Pitassi's Son Rear-Ends Civilian while Driving Squad Car:</u> Later in 2017, Pitassi, Jr. "negligently" rear-ended a civilian's vehicle with his squad car. The police report blamed the accident on the civilian driver — even though rear-end collisions are almost always the striking

---

[11] https://chicago.suntimes.com/crime/2019/11/27/20984574/melrose-park-officer-gun-discharge-jewel-osco-shoplifting-suspect.

vehicle's fault. The woman Pitassi Jr. rear-ended was hospitalized. He was not immediately tested for drugs or alcohol, which is against policy. *Discipline imposed*: He forfeited two vacation days with the opportunity for them to be reinstated. Instead, Pitassi Jr. was transferred to a specialty assignment in the tactical unit, which would be considered a promotion.

111.  Chief Pitassi's Son's Vehicle Collides with a Skateboarder: On September 21, 2019 Pitassi Jr., while on sick leave, was involved in another traffic incident. This time, the police report alleges that a minor child on a Skateboard struck Pitassi Jr.'s truck. On belief, Pitassi Jr. was not immediately tested for drugs or alcohol or investigated for leaving the house while on sick leave. *Discipline imposed*: On belief, none.

112.  Working at the Local Marijuana Dispensary: On belief, on January 1, 2020, Pitassi Jr. began moonlighting at one of the cannabis dispensaries.

### iii.  *Disparate Treatment: The MPPD Officers' Tolerated Misdeeds*

113.  MPPD's culture reveals a troubling pattern of misconduct among similarly situated MPPD officers who have not faced extensive investigations or disciplinary actions for conduct that clearly violates the MPPD's policies and practices, which perpetuates a code of silence.

114.  This Code of Silence is an implicit understanding between and among members of the MPPD resulting in a refusal or failure to report instances of misconduct of which they are aware despite their obligation to do so as sworn peace officers to protect themselves or their fellow officers from discipline, criminal prosecution, or civil liability.

115.  This failure to discipline engendered the firm understanding among MPPD Officers, that they are above the law and can act with impunity without the fear of consequences.

FILED DATE: 1/24/2020 12:00 AM   2020L001001

116.     The Municipal policymakers, Serpico and the Village Board of Trustees, are aware, condone, or facilitate the enforcement of this "code of silence," which is neither manifestly job-related nor consistent with business necessity.

117.     The examples below provide a small snapshot of the capriciousness of MPPD's disciplinary process:

   a) <u>Removed Shell Casings from Crime Scene</u>: Two MPPD officers were at a bar when allegedly one or both of them shot off their weapons. Shell casings were removed from the crime scene. *Discipline imposed*: None.

   b) <u>Improper Overtime Payments</u>: On at least two paychecks, Ofc. Gene Cacciatore was paid for overtime that he did not work. When Cacciatore reported this overpayment to Defendant Castellan who did not order him to return the money. *Discipline imposed*: None. He was promoted to sergeant.

   c) <u>Stolen Police Car</u>: Lt. DiMaio left his marked squad car unlocked and running while he responded to a call. The woman who called the police stole the squad car. It was the ISP, not DiMaio, who reported the vehicle as stolen. The ISP notified the MPPD that one of its squads was traveling at a high rate of speed on an expressway. *Discipline imposed*: Forfeited three vacation days and was removed as shift commander for one week.

   d) <u>Stolen Vehicle</u>: A few years later, Lt. DiMaio's personal vehicle was left running unattended and was stolen off of his driveway costing the MPPD more time and resources. *Discipline imposed*: None.

   e) <u>Battering a Resident</u>: On belief, Lt. DiMaio, as Station Supervisor, left his post and went to a call where he punched one of the residents. The resident filed a sworn citizen's complaint and requested an investigation. *Discipline imposed*: None.

FILED DATE: 1/24/2020 12:00 AM    2020L001001

f)  <u>Threatening another officer and a supervisor</u>: Sam Chiapetta threatened Sgt. Cacciatore and his supervisor, Scatchell Sr. stating: "Who the fuck are you to come ring my doorbell at my house? You come to my house again you motherfucker and I'll destroy you" … "you ring my doorbell again and I will come after you with everything I have and you can bring John [Scatchell Sr.] with you." *Discipline imposed*: No discipline after an informal investigation. Chiapetta was promoted to lieutenant six (6) months later.

g)  <u>Stolen golf cart</u>: On belief, two officers, while drunk stole, destroyed, and hid a golf cart belonging to a local business owner. *Discipline imposed*: Neither officer was disciplined.

h)  <u>Sick Leave Abuse</u>: Castellan's godchild, Anzaldi Jr. was a lateral transfer from Berkeley. His personnel file indicates that he violated the sick leave policy several times.

i)  <u>Squad Accident without a Drug Test</u>: In 2018, Anzaldi Jr. was involved in an accident with his squad car. Similar to Pitassi Jr., Anzaldi Jr. was not immediately tested for drugs or alcohol as is required by the SOP's. *Discipline imposed*: None.

j)  <u>Not Properly Searching a Prisoner</u>: The Cook County Department of Corrections rejected a prisoner held in MPPD's lock-up because the MPPD officers did not properly search the prisoner and drugs were found in his pocket. *Discipline imposed*: None.

k)  <u>Prisoner Dying in Holding Cell</u>: In December 2018, a prisoner died in the MPPD holding cell. *Discipline imposed*: None.

l)  <u>Writing Bogus Parking Tickets</u>: On belief, officer Nikole Spatafora wrote around $10,000 worth of bogus parking tickets to the same vehicle over the course of several weeks. On further belief, the DMV suspended the vehicle owner's driver's license because of the bogus tickets. *Discipline imposed:* Unknown Suspension.

31

**m)** <u>Relocating another Officer's Breast Milk</u>: Lt. Maiello unplugged a mini refrigerator that contained a female police officer's breast milk from the break room and moved it into the hallway. *Discipline imposed*: Forfeited an unknown number of compensatory days.

**n)** Officer Raul Rodriguez used a harness that was inventoried as evidence to saddle a rookie officer. He then pretended to ride this rookie while pointing his service weapon at the ceiling. Defendant Pitassi testified that this behavior was "a problem." *Discipline Imposed*: None. Rodriguez was recently promoted to Assistant to the Deputy Chief.



**o)** <u>Off-duty Fight</u>: Officer Panzini was involved in an off-duty fight at the local Target store where he allegedly beat up another patron. *Discipline imposed*: Unknown suspension.

**p)** <u>Catch and Release Tactics</u>: Officer Panzini detained an anti-abortion activist. Panzini dropped him off in Maywood even though he was never arrested. Panzini berated the

32

protestor by stating: "This isn't an arrest, so shut up with your bullshit and go show this garbage to somebody in fucking Wheaton."[12] *Discipline imposed*: On belief, none.

**q)** <u>Hiring a Racially Insensitive Police Officer</u>: Frank Fazio, on belief, was hired to fill Scatchell Jr.'s vacancy. The BOFPC hired Fazio even though he resigned from the Glen Ellyn police department to avoid being terminated for using an ethnic slur against Mexicans by calling them "beaners." The BOFPC claimed it was unaware of Fazio's misconduct and blamed Glen Ellyn for not informing them of Fazio's background.[13] Yet, the VMP could not even confirm if it had reviewed Fazio's personnel file or if it followed up on Fazio's response on his MPPD employment application about his time with Glen Ellyn: "I was asked to resign."

**r)** <u>False police report</u>: An officer lied in a police report by saying that a car accident occurred in the VMP when it happened elsewhere. *Discipline imposed*: None.

**s)** <u>Battering a Suspect</u>: Two MPPD officers battered a suspect. One of the officers put the suspect in a chokehold while the other officer sat on him and repeatedly hit him with her handcuffs. This incident was also captured on video and provided to the MPPD supervisors. *Discipline imposed*: None. Both officers are now field training officers who train and mentor new MPPD police officers.

**t)** <u>Shooting and Killing an African American</u>: An off-duty MPPD officer, Vito Migliore went to Maywood, Illinois and shot and killed one African American male and wounded another. *Discipline imposed*: On belief, notwithstanding his gross misconduct and

---

[12] https://chicago.suntimes.com/2019/1/17/18363963/anti-abortion-activist-says-melrose-park-cop-chastised-and-left-him-in-maywood.

[13] https://chicago.suntimes.com/2019/7/19/20698300/melrose-park-police-ethnic-slur-frank-fazio-iii-ron-serpico

FILED DATE: 1/24/2020 12:00 AM    2020L001001

potential criminal activity, Migliore was allowed to keep working for the MPPD as a law enforcement officer. In January 2020, Migliore was allowed to return to full duty.

**u)** <u>Roommates with a Dangerous Convicted Felon</u>: Darrell Farmer, a part time MPPD officer lived with a convicted felon who allegedly kidnapped his girlfriend, raped her, and brought her back to his Melrose Park home that he shares with Farmer.

118.    The only thing that the aforementioned officers have in common is that none of them filed a civil rights charge against any of the individual Defendants, nor do they associate with anyone who did, such as Scatchell Jr. or Scatchell Sr.

### L.   **The BOFPC's Arbitrary and Capricious Disciplinary Standard**

119.    The BOFPC's disciplinary system fails to provide clear guidance on appropriate, fair, and consistent penalty ranges.

120.    The BOFPC ultimately carried out the individual Defendants' retaliation by terminating Scatchell for his first alleged acts of misconduct, while turning a blind eye when other preferred officers were accused of substantially similar or more egregious misconduct.

121.    On belief, the BOFPC never terminated a police officer for abusing the sick leave policy, much less an officer who had never previously violated the sick leave policy.

122.    Instead, when the BOFPC sustained charges of sick leave abuse, it failed to punish the officer or punished them with an unpaid suspension. For example:

**a)** The BOFPC suspended—not terminated—Officer Negron for violating the sick leave policy even though he had a prior disciplinary history, which included at least five prior sick leave violations, insubordinate behavior, and conduct unbecoming of a police officer.

**b)** The BOFPC also did not suspend or terminate Defendant Serpico's son, former Melrose Park fire fighter, Michael Serpico even though he violated at least six (6) direct orders and

34

FILED DATE: 1/24/2020 12:00 AM   2020L001001

had not shown up to work in some time. On belief, the charges against Michael Serpico were withdrawn and he voluntarily resigned.

123.    In similar fashion, the BOFPC did not terminate Melrose Park fire fighter Tim Ude, who while off duty, walked into the emergency room of Loyola Hospital and stole medical supplies. When he was confronted by a hospital employee, Ude lied and said that the fire department needed the medical supplies. The MPPD arrested him. Ude was brought before the BOFPC, but was allowed to voluntarily resign nearly five (5) months after his arrest.

124.    The BOFPC allowed other police officers the chance to resign (Ofc. Pretzie and Ofc. Espinosa) prior to being terminated.

125.    Scatchell Jr. was never given the option to resign.

## M. **Defendants History of Third-Party Retaliation**

126.    As a matter of widespread practice so prevalent as to comprise municipal policy, those who have dared to oppose the Serpico Administration have experienced retaliation in a manner similar to that alleged by Plaintiff. For example, and on belief:

127.    *Trombetta v. Board of Education*, 2003 WL 23685091

   a)    District 89 School District terminated Generoso Trombetta ("Trombetta") in retaliation for exercising his First Amendment rights to manage and support his cousin's opposing mayoral campaign against Defendant Serpico.

   b)    After a 14-day trial, in just three hours, the jury found in favor of Trombetta holding that Defendant Serpico retaliated against Trombetta and other "political enemies" by persuading and influencing the school board to terminate Trombetta's contract and to investigate his five-year old niece even though Serpico was not on the school board. The jury awarded Trombetta $1 million in punitive damages against Serpico.

128. *Figueroa v. Village of Melrose Park and Sam C. Pitassi*, 1:13-cv-3026

    a) Blanca and Anthony Figueroa are siblings. The VMP hired Anthony as a firefighter and Blanca as a police officer. Blanca sued the MPPD and Defendant Pitassi alleging gender discrimination. The case ultimately settled sometime around the end of 2015. Less than two years later, in April 2017, the BOFPC brought charges against Anthony Figueroa for his purported residency violation. He was ultimately terminated even though several other firefighters live outside of the VMP in violation of the residency policy.

129. On belief, additional examples of misconduct will be uncovered after a reasonable opportunity to conduct discovery related to MPPD's disciplinary practices and policies, and its disproportionate enforcement of said practices and policies.

<u>**COMMON PRAYER FOR RELIEF**</u>

WHEREFORE, the Plaintiff, John Scatchell Jr. prays that this Honorable Court:

130. Conduct a mediated settlement conference or to refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

131. Award Scatchell Jr. for his past and future loss of wages and benefits, plus interest;

132. Order Defendants to reinstate Plaintiff to a comparable position or in lieu of reinstatement, award him front pay including benefits and creditable pension time;

133. Award Scatchell Jr. actual, compensatory, special, consequential damages, emotional distress and reputation harms to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

134. Award Plaintiff prejudgment interest on these damages, punitive, and/or exemplary damages to the extent permissible by law against the individual Defendants only;

FILED DATE: 1/24/2020 12:00 AM   2020L001001

135. Order affirmative relief necessary to eradicate the effects of the Defendants' unlawful employment practices, including an audit of sick leave and overtime records;

136. Award the Plaintiff reasonable attorneys' fees, costs, and litigation expenses; and,

137. Grant such further relief as the Court deems necessary and proper under the circumstances.

## COUNT I- *Monell* Claim for Deprivation of the Fourteenth Amendment Right to be Free from Retaliation and for Equal Protection Violations
### Plaintiff v. Defendant Village of Melrose Park, Illinois

138. The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

139. That the retaliation against Plaintiff was part of systemic express acts, customs, policies, and practices espoused by the Village of Melrose Park and its policymakers to punish Lt. Scatchell Sr., and then his son, Scatchell Jr. for taking positions "adverse to the Village" and for protected associational conduct with persons in suspect classifications such as Lavalais, as described throughout this Complaint.

140. Defendant VMP's retaliation against family members who also work for the VMP, corresponding school district or park district through the described various abusive tactics regardless of actual guilt or innocence was known to the MPPD supervisors, who themselves participated or acquiesced in said practice.

141. Defendant VMP's adverse actions against Plaintiff for his father's protected associational conduct with a person in a suspect classification – Lavalais, who is African American – constitutes an Equal Protection violation based on suspect classification discrimination.

142. The actions, policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

FILED DATE: 1/24/2020 12:00 AM   2020L001001

FILED DATE: 1/24/2020 12:00 AM    2020L001001

143.    That as a result of employing an action, custom, policy, or practice espoused by Melrose Park to retaliate against plaintiff and other officers who complained about its unlawful employment practices, Plaintiff suffered and will likely continue to suffer harm including, without limitation, loss of vocation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment in their favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for punitive damages as under *Trombetta v. Board of Education*, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and order Melrose Park, Illinois to reinstate Plaintiff to his position and benefits with full make-whole relief, and for all such other relief that the Court deems just and proper.

### COUNT II – 42 U.S.C. § 1983 Fourteenth Amendment Equal Protection Deprivation Based on Retaliation - Plaintiff John Scatchell Jr. v. All Individual Defendants

144.    The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

145.    The 14th Amendment to the United States Constitution guarantees the Plaintiff the right to be free from retaliation for protected activity, including the right to be free from third-party reprisals for his father's protected conduct. *Accord, Thompson v. North American Stainless, LP*, 131 S. Ct. 863 (2011)(finding of retaliation based on a close family member's protected activity); *Zamora v. City of Houston*, 798 F.3d 326, 335 (5th Cir. 2015), cert. denied sub nom.; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015).

146.    As described more fully above, by the direct and personal actions of the individual Defendants under color of law, Plaintiff was subjected to an extensive and unprecedented investigation and termination from the police force because of his familial relationship with his father, who engaged in protected speech and Title VII conduct as described above.

38

147.   Each of the Individual Defendants reached an understanding to trump up charges against Plaintiff as retaliation against Scatchell Sr.'s protected conduct, which led to Plaintiff's termination and deprivation of Constitutional rights.

148.   The object of the conspiracy was to terminate and harass anyone who opposed Lavalais' departure, or who opposed the Serpico Administration's preferences, which included the Plaintiff and Scatchell Sr.

149.   The Individual Defendants' adverse actions against Plaintiff for his father's protected associational conduct with a person in a suspect classification – Lavalais, who is black – constitutes an Equal Protection violation based on suspect classification discrimination.

150.   As part of this plan, Defendants engaged the conduct described throughout the complaint and including, but not limited to: (a) unlawfully accessing and disclosing Plaintiff's PII; (b) improperly restricting Plaintiff's right to travel outside of the VMP during his pre-approved compensatory time off; (c) unlawful surveillance of Scatchell Jr.; (d) mischaracterizing or disregarding evidence; (e) ignoring contrary evidence and failing to correct or report false or exculpatory evidence; (f) disregarding or deviating from protocol set forth by the CBA or SOP's; (g) accusing Scatchell Jr. of committing various crimes; (h) improperly withholding or redacting public records in violation of FOIA; and (i) terminating Scatchell, Jr. for asserting his Constitutional rights such as by his protected activity.

151.   In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity under color of law, with the overt acts being all of the aforementioned harassing, discriminatory, and retaliatory acts taken against Plaintiff.

152.   This pattern is undertaken according to a policy, custom, or practice that deprives persons of their rights under the 14th Amendment, in violation of 42 U.S.C. § 1983.

FILED DATE: 1/24/2020 12:00 AM    2020L001001

153.    As a result of Scatchell Sr.'s exercise of protected activity, Defendants Serpico, Pitassi, Castellan, and Caira, retaliated against Plaintiff Scatchell Jr. by subjecting him to an unprecedented investigation and sham disciplinary proceedings before the BOFPC that resulted in Plaintiff Scatchell Jr.'s albeit void termination in the manner described above which is enough to deter other reasonable employees from engaging in other protected activity or opposing unlawful activity.

154.    Defendants Serpico, Pitassi, Castellan, and Caira at all times, under color of law and through their state-based actions, directly or personally investigated, oversaw, surveilled, or specially attended to Scatchell Jr. in unprecedented ways outlined hereinbefore, during, and throughout his investigation and ultimate termination before the BOFPC.

155.    That the misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

156.    As a result of the aforementioned deprivation, Plaintiff has suffered monumental injuries, *to wit*, subjection to a sham and unprecedented police surveillance and investigation, subjection to proceedings before the abolished "Board of Fire and Police Commission," and termination from his job as a police officer and corresponding loss of pay, benefits, reputational damage, humiliation, and garden variety of emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff, John Scatchell, Jr. requests that this Court enter judgment in his favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and order Melrose Park to reinstate John Scatchell Jr. to his position and benefits with full make-whole relief, and for all such other relief to which he is entitled, and the Court deems just and proper.

FILED DATE: 1/24/2020 12:00 AM    2020L001001

FILED DATE: 1/24/2020 12:00 AM    2020L001001

### COUNT III - Civil Rights Act of 1964 – Associational Discrimination
### Plaintiff v. Village of Melrose Park, Illinois

**157.**   The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

**158.**   Defendant Village of Melrose Park, Illinois has been an Employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. 2000e, et seq.

**159.**   Scatchell Jr. has been an employee within the meaning of Title VII and an employee of the Village of Melrose Park, Illinois.

**160.**   Scatchell Jr. has the fundamental right to preserve the sanctity and integrity of his family by way of his father-son relationship.

**161.**   Plaintiff associated and never denounced or distanced himself from his father's actions and refused to disavow his father's right and lawful actions.

**162.**   Plaintiff's relationship to his father was the moving force behind the BOFPC charges, and his ultimate termination.

**163.**   The foregoing actions against Scatchell, Jr. constitute a severe and pervasive hostile work environment, all that started during his employment with the Village and such actions because of his association with his father Scatchell, Sr. who opposed the unlawful and discriminatory practices concerning Kyll Lavalais. This harassment created a hostile work environment and ultimately resulted in Plaintiff's unlawful termination.

**164.**   As a direct and proximate result of Defendants' unlawful actions, Plaintiff Scatchell Jr. has suffered economic and non-economic damages, including lost pay, benefits, promotional opportunities, reputational damage, garden variety emotional distress, and general, special, and consequential damages, all as a result of Defendant VMP's unlawful actions.

**165.**   Defendants' discrimination against Plaintiff based on his association to his father is oppressive, malicious, and exceptionally reprehensible, and demonstrated total disregard for

41

and reckless indifference to Plaintiff's civil rights. Consequently, an award of punitive damages against the individual Defendants is warranted.

WHEREFORE, for the foregoing reasons, Plaintiff, John Scatchell, Jr. requests that this Court enter judgment in his favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and order Melrose Park to reinstate John Scatchell Jr. to his position and benefits with full make-whole relief, and for all such other relief to which he is entitled, and the Court deems just and proper.

### COUNT IV – Interference with COBRA Rights
### Plaintiff v. Defendant Village of Melrose Park, Illinois

166.   The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

167.   The federal claims arise under the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C.A. §§ 1161 to 1168 (COBRA) and federal common law.

168.   At all times relevant, the VMP offered certain group health plans ("Plan") to its employees.

169.   On belief, the VMP exercised discretionary authority or control with respect to the Plan's management.

170.   Defendant VMP was required to provide Scatchell Jr. with a Notice of Rights pursuant to COBRA upon both hiring and firing.

171.   Defendant VMP failed to provide either of the required Notice of Rights under COBRA.

172.   The Defendant VMP extended then improperly rescinded Scatchell Jr.'s COBRA rights by waiting until after his qualifying deadline passed by two weeks to notify him that he was ineligible.

173.    As a direct and proximate cause of Defendants' conduct, Plaintiff, has incurred at least $6,000.00 of medical expenses. These costs are ongoing.

FILED DATE: 1/24/2020 12:00 AM   2020L001001

WHEREFORE, for the foregoing reasons, Plaintiff, John Scatchell, Jr. requests that this Court enter judgment in his favor and against Defendants in an amount to be proved at trial, including compensatory, special, consequential damages, for attorneys' fees, and order that the VMP shall pay Scatchell $100 a day for each day from the first day following the last date on which Defendants were obligated to provide him with COBRA notice until this Court enters judgment in the present matter, and for all such other relief that the Court deems just and proper.

### COUNT V – State Claim - Intrusion Upon Seclusion
**Scatchell Jr. v. All Individual Defendants**

174.    The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

175.    Plaintiff had a legitimate expectation of privacy to his PII and was entitled to protection of this information against disclosure to unauthorized third parties.

176.    Defendants owed a duties to police officer employees, including Plaintiff to keep his PII confidential.

177.    Defendants failed to protect Plaintiff's PII stored within its personnel files and databases and released it to unknown and unauthorized third parties.

178.    By way of Defendants' failure to protect the PII in its records, Defendants allowed or deliberately provided such information to and to examine Plaintiff's PII.

179.    The unauthorized release to, custody of, and examination by of Plaintiff's PII – especially where the information includes, Plaintiff's full name, home address, biometric data, social security number, date of birth, driver's license number, cell phone number, height, weight, eye color, any combination of the data thereof is highly offensive to a reasonable person.

180.    While Plaintiff was compelled to disclose his PII to Defendants as part of his employment, Defendants were, at all times, supposed to keep his PII confidential and protected from unauthorized disclosure.

FILED DATE: 1/24/2020 12:00 AM    2020L001001

181.    By disclosing Scatchell Jr.'s personal information, Defendants created, or substantially created an intrusion upon his constitutional right to privacy, safety, and security.

182.    Defendants acted with a knowing state of mind when they knowingly divulged Plaintiff's PII to Defendant Caira and others and had actual knowledge of their inadequate information practices.

183.    As a direct and proximate cause of the Defendants' acts and omissions, the Plaintiff's PII was disclosed to third parties without authorization to suffer unauthorized credit card transactions, damages, anguish, and suffering.

WHEREFORE, for the foregoing reasons, Plaintiff, John Scatchell, Jr. requests that this Court enter judgment in his favor and against Defendants in an amount to be proved at trial, including compensatory, special, consequential damages, attorneys' fees, and for all such other relief to which he is entitled, and the Court deems just and proper.

### COUNT VI– Violations of the Driver's Privacy Protection Act
### Plaintiff v. Defendants VMP and Caira

184.    The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

185.    The Driver's Privacy Protection Act ("DPPA") prohibits any person from obtaining or disclosing personal information from a motor vehicle record without a permissible purpose and from falsely representing the purpose for which one is obtaining such records. 18 U.S.C. § 2722(a) and (b).

186.    Defendant Caira knowingly obtained and disclosed Scatchell Jr.'s protected personal information from a motor vehicle record as described above.

187.    When Defendant Caira knowingly obtained and disclosed Scatchell Jr.'s protected personal information, said Defendant lacked Scatchell Jr.'s express consent as required by the DPPA.

44

FILED DATE: 1/24/2020 12:00 AM  2020L001001

188. Defendant Caira violated § 2722(a) and (b) of the DPPA when it knowingly obtained the Plaintiffs' personal information from a motor vehicle record for an impermissible purpose and/or when he falsely represented the true purpose for which it was obtaining such information, namely for an improper internal investigation.

WHEREFORE, for the foregoing reasons, Plaintiff, John Scatchell, Jr. requests that this Court enter judgment in his favor and against Defendants in an amount to be proved at trial, compensatory, special, consequential damages, for non-economic emotional distress, for attorneys' fees under 18 U.S.C. § 2724(b)(3), and for all such other relief to which he is entitled, and the Court deems just and proper.

### COUNT VII – Illinois Wage Payment and Collection
### Plaintiff v. Defendants VMP, Pitassi, and Castellan

189. The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

190. The CBA and past practices at the MPPD constitute an agreement to pay Plaintiff wages as that term is defined under the Illinois Wage Payment and Collection Act (the "IWPCA").

191. Specifically, MPPD officers work the previous year for the next year's benefits (e.g. Scatchell Jr. worked 2018 for 2019's sick days, compensatory time, and vacation days).

192. Plaintiff worked most of 2018 and should be compensated for his 2019 vacation, sick time, and compensatory time, which is approximately $16,000.00.

193. On or about December 2018, Plaintiff timely demanded that the Defendant VMP pay him for these benefits.

194. As of the date of filing, Defendant VMP still has not paid these benefits.

195. Under the IWPCA, Defendants Pitassi and Castellan are personally liable for all amounts due and owing to Plaintiff including statutory penalties in the amount of two percent per month.

45

196.   Defendants VMP, Pitassi, and Castellan violated the IWPCA by discharging Plaintiff and failing to pay him the amounts due and owing to him under the CBA and pursuant to the past practices of the MPPD.

WHEREFORE, Plaintiff John Scatchell Jr. prays for: (a) All lost wages, benefits, and other amounts resulting from Defendants VMP, Pitassi and Castellan's violations of the IWPCA; (b) Statutory penalties in the amount of two percent per month; (c) Costs, attorneys' fees, and all other relief available under the IWPCA; and (d) such other relief as the Court deems just and proper.

### COUNT VIII – Indemnification Against Village of Melrose Park
### Plaintiff v. Defendant Village of Melrose Park, Illinois

197.   The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

198.   Defendant VMP is a municipal corporation required to indemnify the individual Defendants and the BOFPC within the meaning of 735 ILCS §10/9-102 for all actual damages caused by the individual Defendants and BOFPC.

WHEREFORE, for the foregoing reasons, Plaintiff, John Scatchell, Jr. requests that this Court enter judgment in their favor and against Defendants and order Defendant Village of Melrose Park, Illinois to indemnify the other Defendants.

### JURY DEMAND

Plaintiff, John Scatchell Jr. demands a trial by jury on all issues so triable.

Dated: January 23, 2020

Respectfully submitted,

John A. Scatchell

/s Gianna Scatchell
/s Cass T. Casper
_____
Plaintiff's Attorneys

46

FILED DATE: 1/24/2020 12:00 AM   2020L001001

Gianna R. Scatchell
ARDC No. 6300771
LAW OFFICES OF GIANNA SCATCHELL
360 W. Hubbard Street, 1404
Chicago, Illinois 60654
(312) 248-3303
gia@lawfirm.gs

Cass T. Casper, Esq.
TALON LAW, LLC
105 West Madison Street, Suite 1350
Chicago, Illinois 60602
Chicago, Illinois 60603
P: (312) 351-2478
F: (312) 276-4930
E: ctc@talonlaw.com

FILED DATE: 1/24/2020 12:00 AM    2020L001001

State of Illinois ⟩
⟩ ss.
County of Cook ⟩

## ATTORNEY CERTIFICATION

Under the penalties as provided by law pursuant to section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true. 735 ILCS 5/1-109.

*John Scatchell*

_____

John A. Scatchell

FILED DATE: 1/24/2020 12:00 AM   2020L001001

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### LAW DIVISION

| | |
|---|---|
| John A. Scatchell, | |
| Plaintiff, | |
| v. | Case No: |
| | Ad Damnum: $50,000.01 |
| Vill. of Melrose Park, an Illinois Municipal Corporation, Melrose Park Bd of Fire and Police Comm'n, Ronald Serpico, Sam Pitassi; Michael Castellan, Peter Caira, | Jury Trial Demanded |
| Defendants. | |

### AFFIDAVIT OF DAMAGES
### PURSUANT TO SUPREME COURT RULE 222

The undersigned being first duly sworn upon oath, deposes and states the she is a party to the above entitled cause of action seeking money damages or collection of taxes and states that this cause of action:

[X]                                     does exceed $50,000.00.

By _____

Gianna Scatchell

Under the penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure, the undersigned, an attorney, certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

_____

Gianna Scatchell

49

<span style="color:red">EXHIBIT A</span>



U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL

7018 1830 0000 1246 8988

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

December 03, 2019

Mr. John A. Scatchell
c/o Gianna Scatchell, Esquire
Law Offices of Gianna Scatchell
360 W. Hubbard
Suite 1404
Chicago, IL 60654

Re: EEOC Charge Against Village of Melrose Park Police Dept.
     No. 440201906878

Dear Mr. Scatchell:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Chicago District Office, Chicago, IL.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Eric S. Dreiband
Assistant Attorney General
Civil Rights Division

by *Karen L. Ferguson*
    Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Chicago District Office, EEOC
     Village of Melrose Park Police Dept.

FILED DATE: 1/24/2020 12:00 AM    2020L001001

Civil Action Cover Sheet - Case Initiation  (05/27/16) CCL 0520

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

FILED
1/24/2020 12:00 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

2020L001001

John Scatchell

v.

Vill. of Melrose Park, Melrose Park Bd of Fire and Police Comm'n,
Ronald Serpico, Sam Pitassi, Michael Castellan, Peter Caira,

No. _____

**FILED DATE: 1/24/2020 12:00 AM   2020L001001**

## CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand ■ Yes ☐ No

**(FILE STAMP)**

### PERSONAL INJURY/WRONGFUL DEATH
CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries
  (including Structural Work Act, Road
  Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

### TAX & MISCELLANEOUS REMEDIES
CASE TYPES:
- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

By: Gianna Scatchell
_____
(Attorney)                    (Pro Se)

### COMMERCIAL LITIGATION
CASE TYPES:
- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice
  (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action
  (Please specify below.**)
- ☐ 075 Other Commercial Litigation
  (Please specify below.**)
- ■ 076 Retaliatory Discharge

### OTHER ACTIONS
CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** _____
_____

Primary Email: gia@lawfirm.gs

Secondary Email: ctc@talonlaw.com

Tertiary Email: christina@lawfirm.gs

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice form the **Clerk's Office** for this case at this email address: _____

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
1/24/2020 12:00 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

2020L001001

FILED DATE: 1/24/2020 12:00 AM    2020L001001

| | |
|---|---|
| **2120 - Served** | **2121 - Served** |
| **2220 - Not Served** | **2221 - Not Served** |
| **2320 - Served By Mail** | **2321 - Served By Mail** |
| **2420 - Served By Publication** | **2421 - Served By Publication** |

**Summons - Alias Summons**  **(08/01/18) CCG 0001 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

John A. Scatchell
_____

(Name all parties)

v.

Vill. of Melrose Park, Melrose Park Bd of Fire &
Police Comm'n, Ronald Serpico, Sam Pitassi,
Michael Castellan, Peter Caira

Case No. _____

☑ **SUMMONS**    ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service.  To file your answer or appearance you need access to the internet.  Please visit www.cookcountyclerkofcourt.org to initiate this process.  Kiosks with internet access are available at all Clerk's Office locations.  Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service.  If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons**  (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 49640

Atty Name: Gianna Scatchell

Atty. for: Plaintiff

Address: 360 W. Hubbard Street, 1404

City: Chicago

State: IL    Zip: 60654

Telephone: (312) 248-3303

Primary Email: gia@lawfirm.gs

Witness: 1/24/2020 12:00 AM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 1/24/2020 12:00 AM    2020L001001

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

**Daley Center Divisions/Departments**

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 1/24/2020 12:00 AM    2020L001001