UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| John Scatchell Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2020-cv-01045 |
| | ) | Hon. Steven C. Seeger |
| | ) | |
| | ) | |
| Village of Melrose Park, an Illinois | ) | Jury Trial Demanded |
| Municipal Corporation; Ronald M. Serpico; | ) | |
| Sam C. Pitassi; Michael Castellan; and Peter | ) | |
| Caira, and other Unknown Melrose Park | ) | |
| Police Officers, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, John Scatchell Jr., by his attorneys, complains against the Defendants, Village of Melrose

Park, Ronald M. Serpico, Sam C. Pitassi, Michael Castellan, and Peter Caira "Defendants," as

follows:

## NATURE OF ACTION

1. Plaintiff John Scatchell Jr. sues to enforce his constitutional, federal, and state law rights

   arising out of the Defendants' unlawful conduct as part of a conspiracy to retaliate against him

   based on his association with his father, John Scatchell Sr.

## JURISDICTION AND VENUE

2. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case

   arises under federal law, specifically, 42 U.S.C. §§ 1983, 1988, Title VII of the Civil Rights

   Act of 1964, 42 U.S.C. § 2000(e), et seq., and attorneys' fees under 42 U.S.C. §1988.

1

3. This Court has supplemental jurisdiction over any of the state law claims pursuant to 28 U.S.C. § 1367 as they arise from the same core of operative facts as give rise to his federal law claims.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b). On information and belief, all or most of the parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## PARTIES

5. Plaintiff John Scatchell Jr. ("Scatchell Jr.") is a resident of Melrose Park. He was employed as a full-time Melrose Park police officer from September 26, 2012, until his termination on December 7, 2018.

6. Defendant Village of Melrose Park ("Village," or "VMP") is a municipality incorporated in the State of Illinois and the employer of the defendants. The Village has indemnification obligations for wrongful acts committed by its officials, employees, and agents. See 745 ILCS §§ 10/1-202 and 9-102.

7. Defendant VMP owns, operates, directs, and controls both the Melrose Park Police Department ("MPPD"), the primary law enforcement agency and the Board of Fire and Police Commission ("BOFPC"), the three-member administrative agency that handles police and fire hiring and disciplinary matters.

8. Defendant Ronald M. Serpico ("Serpico"), is an elected official serving as Mayor of the Village of Melrose Park. He is a final policymaker for the VMP. He engaged in the conduct complained of while acting under the color of law. Serpico engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

9. Defendant Sam C. Pitassi ("Pitassi"), is the Director of Police and acted as an agent of the Village of Melrose Park. At all times relevant, Pitassi has been appointed by the Board of

2

Trustees on an annual basis. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

10. At all times relevant, Defendant Michael Castellan ("Castellan") was one of two Deputy Chiefs of Police of the Village of Melrose Park and acted as an agent of the Village. Castellan was appointed by the Board of Trustees on an annual basis. Castellan supervised and handled Plaintiff's internal investigation. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

11. Defendant Peter Caira ("Caira") is the Assistant to the Police Chief/Director and, at all times relevant, acted as an agent of the Village. On belief, Caira has been appointed by the Board of Trustees on an annual basis. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

12. At all times relevant, Defendant Pitassi promulgated rules, regulations, policies, and procedures as Director of Police for the training, the supervision, the advisement, and the discipline (up to a five days) of the MPPD regarding: (1) conduct; (2) personnel files and personally identifiable information; (3) compensatory time and sick leave; (4) hiring and recruiting; (5) restructuring and transfers; and (6) referrals to the employee assistance program.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. All administrative remedies for purposes of the Title VII claim have been exhausted. All conditions precedent to the institution of this lawsuit have been fulfilled, including receipt of the right-to-sue letter issued by the Department of Justice on December 3, 2019. A copy of the Right to Sue letter is attached hereto as Exhibit A.

## FACTUAL ALLEGATIONS

## Background

**14.** Scatchell Jr. comes from the 60-year history of public servants who dedicated themselves to the safety and protection of Melrose Park by serving as both police officers and firefighters.

**15.** For example, Scatchell Jr.'s father, Scatchell Sr., served as a lieutenant for the MPPD for over 33 years.

**16.** Scatchell Jr. was an MPPD officer for seven years until his termination.

**17.** On belief, the individual Defendants' conspiracy against Scatchell Jr. began when his father, opposed the VMP's selective enforcement of its residency policy as it applied to the only African American police officer.

**18.** Scatchell Jr. contends that he was not fired for violating the sick leave policy and other violations, but rather, he was terminated for his association with his father, Scatchell Sr.

**19.** When the Defendants could not adequately punish Scatchell Sr. for daring to oppose the administration's will, they clearly delivered the message to Scatchell Sr. that they would extend their reprisals to his son, John Scatchell Jr.

## Scatchell Sr. Opposes the VMP's Selective Enforcement against its only African American Police Officer

**20.** The VMP regulates and investigates police officers' residency compliance and Defendants.

**21.** Pitassi and Castellan enforce the residency policy.

**22.** On or about May 1, 2016, the VMP selectively enforced its residency requirement, disproportionately impacting certain employees, including Lt. Kyll Lavalais ("Lavalais"), the sole African American officer.

4

23. This was not the first time that Lavalais experienced racial discrimination at the MPPD. Four separate times, Lavalais either sued or filed charges with the EEOC based on Defendants' racial discrimination, disparate treatment, denial of transfer, and retaliation.[1]

24. On belief, Defendants knew that several non-African American MPPD officers lived outside of the Village in violation of its residency requirement.

25. On further belief, the Defendants were aware that these non-African American officers were either moving to or from the Village because Defendant Serpico handled some of their real estate closings.

26. The Defendants were aware that Lavalais was covered by the residency exemption outlined in VMP ordinance §2.52.090, which states, "[t]he residency requirement shall not apply to any employee who is a minority or was hired under the judicial decree 85-C-10493."

27. On or about October 1, 2016, as president of the FOP, Scatchell Sr., received Lavalais' Third Grievance[2] and request to arbitrate his residency issue.

28. On or about November 10, 2016, in response to Lavalais' grievance, the FOP, under Scatchell Sr.'s presidency, Emailed the VMP indicating that the FOP intended to arbitrate Lavalais' grievance.

## Scatchell Sr.'s Almost-Promotion to Deputy Chief

29. The next day; the VMP Board of Trustees released their bi-monthly meeting agenda, which surprisingly listed Scatchell Sr.'s temporary two-month appointment to Deputy Chief.

30. This action was unprecedented, as no employee had ever been appointed to such a high-ranking position for only two months.

---

[1] See *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013); *See also Lavalais v. Vill. of Melrose Park*, No. 16 C 10454, 2017 WL 1545660, at *5 (Apr. 28, 2017).

[2] Scatchell Sr. never received the first two grievances.

31. Later, Attorney Vasselli claimed that the mention of a two-month duration for Scatchell Sr.'s Deputy Chief appointment was a "typo," leading Defendant VMP to issue a revised agenda that announced his promotion to Deputy Chief without a time frame.

**Scatchell Sr.'s Promotion is "Tabled."**

32. Due to the unusual circumstances of his upcoming promotion, Scatchell Sr. requested a contract for his new role as deputy chief, recognizing that he would be transitioning from the protection of a rank-and-file position to serving at the discretion of Defendant Serpico.

33. When Scatchell Sr. continued to oppose the Defendants' selective residency practices, the VMP Trustees voted to table his promotion indefinitely.

34. The retaliatory intent of the individual Defendants was clearly manifested on November 14, 2016, when a VMP attorney notified Scatchell Sr.'s legal counsel that his promotion would be "tabled" by the VMP Trustees, a decision communicated hours *before* the scheduled Board meeting.

35. Historically, Village Trustees have not voted down any proposals from Serpico, underscoring the unusual nature of this postponement.

36. During the Board meeting, Defendant Serpico prompted a Trustee to propose tabling Scatchell Sr.'s promotion.

37. The Board unanimously approved motion, and his promotion was indefinitely put on hold.

**Scatchell Sr. is Accused of Taking Adverse Positions to Melrose Park**

38. The situation intensified on November 22, 2016, when Village attorney Michael Del Galdo accused Scatchell Sr. of opposing the Village, specifically stating that he had threatened legal action against the Village on two different occasions.

39. On November 25, 2016, Scatchell's counsel responded to the VMP attorney by stating:

"I would be remiss if I did not voice I am concerned that my continued representation of the FOP would cause some quid pro quo adverse actions against Lt. John Scatchell and Officer John Scatchell Jr. This concern is buttressed by the recent events surrounding Lt. Scatchell's promotion. I really hope these facts are coincidences and not in retaliation for my taking "adverse position(s) against the Village."

40. Within 18 months, both Scatchell Sr. and Jr. had separated from the MPPD.

41. At the next VMP Board meeting, Defendant Serpico nominated Steven Rogowski for the deputy chief role, a recommendation that the Board approved, bypassing Scatchell Sr. for the position.

42. Before Scatchell Sr.'s tabled promotion, the VMP never announced a promotion that it did not ultimately appoint.

**Defendants Conspire and Retaliate Against Scatchell Sr.**

43. Political loyalty to Serpico's Administration is, as a matter of long-established custom and practice having the air of official policy, a requirement for employment at the MPPD. It is enforced through a culture of blacklisting and retaliation against dissenting officers.

44. Serpico is believed to have tabled Scatchell Sr.'s promotion as retribution for his advocacy on issues seen as contrary to Village interests, including support for Lavalais and his grievances.

45. The individual Defendants viewed each of Scatchell Sr.'s protected actions as a separate act of defiance against the Serpico Administration.

46. In executing their conspiracy, the individual Defendants aimed to penalize both Scatchell Sr. and Jr. for opposing the Serpico Administration, serving as a warning to deter others from dissent.

**The VMP Escalates its Retaliation against Scatchell Sr.**

47. The individual Defendants intensified their retaliation, evidenced by:

a) In mid-December 2016, unknown individuals set off three-quarter sticks of dynamite in front of the Scatchell residence. Deputy Chief Rogowski administratively locked the police report and closed the case without interviewing most witnesses and without inventorying the spent debris. Defendants dismissed the dynamite explosion as merely fireworks.

b) By late December 2016, Scatchell Sr. was voted out as the FOP president, and the FOP's first order of business was to fire its attorney and rescind its decision to arbitrate on Lavalais' behalf.

c) In May 2017, Scatchell Sr. was involuntarily transferred from Shift Supervisor to Station Supervisor. His office was moved to a small office called "the hole." This transfer was a step backward for him professionally because it was a non-supervisory role with non-substantive duties.

d) From September – November 2017, Defendant Pitassi received at least three anonymous letters relating to Scatchell, Sr. or Scatchell, Jr., which, on belief, were concocted by the Administration to justify investigations into both.

e) In August 2017, Defendants attempted to pin a false excessive force case against Scatchell Sr. stemming from a traffic stop.

**Scatchell Sr. Files an EEOC Charge and Defendants' Retaliation Escalates even further.**

48. In September 2017, Scatchell Sr. filed an EEOC charge against the Defendants and others alleging retaliation based on his protected oppositional conduct in the Lavalais matter.

49. On belief, on October 23, 2017, the individual Defendants learned about Scatchell Sr.'s EEOC complaint, which sparked further retaliation against him.

50. On October 26, 2017, Deputy Chief Rogowski began an "informal investigation" into Scatchell Sr.'s alleged conduct on a traffic stop that occurred two months earlier.

51. On November 13, 2017, less than three weeks after Defendants were on notice of Scatchell Sr.'s EEOC Charge, Defendants Pitassi and Castellan tasked Defendant Caira to begin an internal investigation against Scatchell Jr. without speaking with him first as required by the SOP's. Defendant Serpico was on notice of this investigation.

52. On December 7, 2017, Defendants Pitassi and Castellan served Scatchell Jr. with a Notice of Interrogation seeking his termination.

53. On December 11, 2017, the VMP introduced a new rule mandating retirement for police officers at age 62 with 30 years of pensionable service. On belief, Defendants believed that Scatchell Sr. was turning 62, not 61, at the end of December 2017.

**Defendants Investigate Scatchell Jr. in Search of a Crime**

54. On October 28, 2017, Scatchell Jr. exacerbated a pre-existing work-related neck and back injury and sought medical advice seeking a specialist referral.

55. His doctor advised against working due to the risk of aggravating the injury, especially given the heavy gear required for police duty and the risk of physical contact. He was allowed to travel and to get light exercise.

56. Scatchell Jr. submitted five doctor's notes during his sick leave from November 9 to December 7, 2017.

57. The Defendants acknowledged his injury but did not mandate an evaluation by a VMP-appointed physician to confirm it.

58. On November 13, 2017, a mere four days after Scatchell Jr. went on sick leave and 18 days after the VMP viewed Scatchell Sr.'s charge, an anonymous person "slid" a letter under

Defendant Castellan's office door. This apocryphal letter accused Scatchell Jr. of getting "special treatment" and of abusing the sick leave policy by going "hunting" as stated below:

Chief;

I would like to inform you about something that is going on. The reason I am not putting my name on this letter is that I do not want any problems from his father. In the pass, the Melrose Park Police Department brought charges against Officer Phil Negron for calling in sick with a doctor's letter. Officer Negron was not sick or injured, he was working his other jobs and doing other activities. I feel that if the Melrose Park Police Department does this for one officer, they should do it for the entire department.

John Scatchell is calling in sick when, in fact, he is not. I feel when an officer does this he does not care about this department or his follow officers. He only cares about himself. He is out HUNTING every morning. I do not feel, because his Father is a Lieutenant with our department, that he should receive special treatment.

An officer who cares.

59. The letter did not indicate where Scatchell was hunting, when he was hunting, where he was hunting, or why this anonymous tip was reliable.

60. Prior to the allegations on November 13, 2017, Scatchell Jr. was an exemplary officer with a clean disciplinary record, consistently meeting or surpassing job expectations and earning commendations.

61. To assess the credibility of the Letter's accusations, Defendants Pitassi and Castellan tasked Defendant Caira, with extensive department resources, to investigate all claims, regardless of their validity.

62. However, the investigation into alleged sick leave abuse by Scatchell Jr., spearheaded by Defendants Pitassi, Castellan, and Caira, was marked by a retaliatory bias, deviating from its standard protocols and policies.

63. The Department began surveilling Scatchell on November 14, 2017, which was his scheduled off-day.

64. Specifically, under the terms of the Collective Bargaining Agreement, disciplinary actions against Scatchell Jr. required just cause, a standard not met by the investigation's lack of clear objectives.

65. Moreover, the surveillance of Scatchell Jr. and his family extended beyond the investigation, indicating a deeper intent of harassment.

66. The investigation's extensive duration of 109 days and over 200 hours, resulting in more than 12 charges, starkly contrasts with the minimal effort allocated to more serious cases, such as a mere 25 hours for a murder investigation.

67. This disparate treatment and violation of both the Collective Bargaining Agreement and the Standard Operating Procedures ("SOP's") highlight the investigation's flawed and retaliatory nature. Defendants' investigation lasted approximately 109 days, over 200 hours, and culminated in over 12 charges against Scatchell Jr.

68. The individual Defendants subjected Scatchell Jr. to discriminatory treatment and breached both the Collective Bargaining Agreement (CBA) and Standard Operating Procedures (SOPs).

69. Contrary to CBA §5.3, which mandates a Review Board to evaluate extended sick leave use, Defendants Pitassi, Castellan, and Caira initiated an early investigation without convening the sick leave review board.

70. The Department's SOP's state that any internal investigation will be done in accordance with its SOP's and applicable federal, state, and local law, municipal, and county rules and the requirements of any collective bargaining agreements. *SOP §1020.2.*

71. However, the Department failed to uphold several of Scatchell's procedural rights as outlined in the SOPs, including:

a) Neglecting to record all interviews with members and witnesses, as mandated by SOP §1020.6.2(h) and 50 ILCS 725/3.7;

b) Failing to provide Scatchell with written notice and access to all materials considered by the Department in recommending discipline, along with the opportunity to respond within five days, as required by SOP §1020.10.2;

c) Denying Scatchell the chance to present additional information or mitigating factors, as per SOP §1020.11(c); and

d) denying Scatchell the opportunity to review the results of any further investigation conducted by the department and the opportunity to respond to such subsequent information. *Id.* at (d)-(e).

72. SOP §1020.3(d) provides "anonymous complaints should be accepted and investigated if information is provided."

73. The anonymous letter did not indicate where Scatchell was hunting, when he was hunting, where he was hunting, or why this anonymous tip was reliable.

74. Defendants Pitassi and Castellan quickly assigned Defendant Caira to investigate Scatchell Jr. even though (1) the MPPD had an internal affairs officer and had never previously assigned Caira to an internal investigation; (2) the MPPD had an obvious conflict of interest; and (3) they could have referred the matter to the Illinois State Police or Cook County State's Attorney but chose not to.

75. Defendants Pitassi and Castellan violated SOP §1020.9 by assigning Defendant Caira to both administrative and criminal aspects of an investigation, contrary to the requirement for separate investigators.

12

76. This "dual investigation" enabled Caira to inappropriately access law enforcement databases and obtain sensitive information, such as Scatchell Jr.'s mother's TollPass records, under the pretense of a criminal probe, thereby sidestepping privacy safeguards and civil subpoenas.

77. Defendant Caira also contacted several government agencies using Scatchell Jr.'s Personally Identifiable Information to provide "tips" to each agency about Scatchell Jr.'s alleged "unlawful activities" including communications to the IRS, the Illinois Department of Natural Resources ("DNR"), the Illinois State Police ("ISP"), and the Illinois TollPass (including a call from the TollPass Headquarters around 10:00 p.m. even though it closes at 5:00 p.m.).

78. Furthermore, when Scatchell Jr.'s legal team sought to find out how Caira obtained Scatchell Jr.'s mother's TollPass records, they submitted a FOIA request to the Illinois TollPass.

79. This inquiry was undermined as it was deliberately forwarded to Caira, marked as "SPAM," to hide the misconduct.

| | |
|---|---|
| **From:** | Schneider, Lt. David <     @getipass.com> |
| **Sent:** | Friday, February 02, 2018 4:39 PM |
| **To:** | ....a@melroseparkpd.com |
| **Subject:** | *****SPAM***** Fw: FOIA 18-0028 - Melrose Park |

### Defendants' Multi-faceted Retaliation against Scatchell Jr.

80. Defendants Pitassi and Castellan bypassed any lesser disciplinary options and deviated from any semblance of progressive discipline by providing Scatchell Jr. with no lesser alternative to punishment such as an informal investigation, verbal warning, or forfeiture of vacation days as they have done with other similarly situated officers involving similar or worse infractions.

81. Instead, on March 27, 2018, Defendants Pitassi and Castellan filed a 12-count Statement of Charges against Scatchell Jr. and referred the charges to the Board of Fire and Police Commission ("BOFPC") seeking his termination.

82. From April 25, 2018, to November 14, 2018, the BOFPC held hearings regarding Scatchell's disciplinary hearings.

83. Scatchell Sr. was repeatedly encouraged by other police officers to retire to "save" Scatchell Jr.'s job at the police department by retiring.

84. On or about April 18, 2018, Scatchell Sr. announced his retirement from the MPPD.

85. In July 2018, Scatchell Jr. and fellow officers were involved in a shooting, after which Defendants retaliated against him in ways that strayed from MPPD norms, including:

   a) Neglecting his requests for Employee Assistance Program support.

   b) Forcing him into ride-alongs without formal documentation, a requirement not applied to the other involved officers.

   c) Supervisors were instructed to scrutinize Scatchell Jr.'s behavior without proper medical expertise or knowledge.

   d) Defendants Pitassi and Castellan inappropriately contacted Scatchell Jr.'s medical providers, *ex parte*, challenging his fitness for duty and baselessly alleging he was a danger to himself or others to attempt revoking his firearm license.

86. Throughout the pendency of Scatchell's termination proceedings, Defendants allowed Plaintiff to continue working as a police officer until on or about November 15, 2018, when Scatchell was put on administrative leave.

87. Scatchell Jr. was terminated on December 7, 2018.

88. Defendants substantially departed from its duties and policies through a series of actions that undermine the impartiality and the fairness of the entire proceeding, to wit:

   a) Removal of commendation letters from Scatchell Jr.'s file by Defendants Pitassi and Castellan.

**b)** Prohibiting Scatchell Jr.'s counsel and family from filing additional FOIA requests.

**c)** Denying Plaintiff's FOIA request for Defendant Pitassi's MPPD Emails by falsely asserting that "Pitassi does not have an Email address." This was not true.

**d)** Defendants altered Plaintiff's medical authorization, which created the false appearance that Scatchell Jr. had given certain authorization for his medical records.

### The BOFPC's Arbitrary and Capricious Disciplinary Standard

89. Defendant BOFPC was required to conduct a fair and an impartial hearing as the independent administrative body that handles police and fire hiring and firing for the VMP.

90. The Board proceeding was a total sham and would never have occurred but-for the Defendants' hell-bent determination to punish Scatchell Sr. by way of his son for daring to challenge them in the Lavalais residency matter and for asserting his own protected conduct.

91. Defendants, including the BOFC, substantially departed from its duties and policies through a series of actions that undermine the impartiality and the fairness of the entire proceeding, *to wit*:

**a)** Not relying on the CBA or the SOPs in their termination decision;

**b)** Admitting that they did not have sufficient evidence to sustain the charges against Scatchell Jr.;

**c)** Failing to consider progressive discipline or mitigating evidence;

**d)** Denial of Scatchell Jr.'s discovery rights throughout his BOFPC hearing;

e) Allowing the VMP prosecutor to improperly usurp the Board's authority by filing a Petition to Enforce the Subpoena against DuPage Medical Group when that is a function of the BOPFC.[3]

f) Engaging in multiple *ex parte* communications with each of the individual Defendants after the BOFPC brought charges against Scatchell Jr. Such communications occurred before and after almost every one of Scatchell Jr.'s BOFPC hearings; and

g) Not disclosing or including such *ex parte* communications into the administrative record.

92. The Defendants have systematically endeavored to obscure their accountability in the Plaintiff's termination by denying FOIA requests, withholding pertinent discovery materials, and compelling the Plaintiff to initiate further legal action for resolution.

93. Throughout Scatchell Jr.'s proceedings at the BOFPC, Defendants' Village-issued phone records illustrate that there were substantial and repeated communications between the individual Defendants and every member of the BOFPC on every key date of Scatchell Jr. disciplinary proceedings in furtherance of their conspiracy to terminate Scatchell Jr.

94. Scatchell Jr.'s counsel sent seven different FOIA requests for these phone records. And each time, they were denied or provided only a portion or redacted records.

95. It was not until the middle of September 2019, over nine months after Scatchell Jr.'s termination, that these records were produced in raw form.[4]

---

[3] *Manual on Police and Fire Disciplinary Matters* (If a person served with a subpoena fails to appear and testify or produce books and papers as required, the board must apply to the circuit court to compel compliance with the terms of the subpoena)

[4] There were over 5,000 phone numbers that required a reverse-search to determine the caller. Further, over 22,000 pages of phone records had to be transcribed and overlayed with the timeline of the key dates in both Scatchell's cases.

96. The Defendants' failure to disclose these communications, along with altering medical authorizations and overstepping legal boundaries in subpoena enforcement, suggests a concerted effort to skew the proceedings against Scatchell Jr., compromising the integrity and fairness of the process and impeding his defense.

**Defendant's Policy of Retaliation Toward Officers Who Complain.**

97. The Village routinely engages in retaliation against those who challenge the administration, treating them more severely than those who do not. This pattern of retaliation is part of a broader municipal policy, exemplified by the following cases:

a) *Trombetta v. Board of Education*, 2003 WL 23685091: District 89 School District terminated Generoso Trombetta ("Trombetta") in retaliation for exercising his First Amendment rights to manage and support his cousin's opposing mayoral campaign against Serpico. A jury found in Trombetta's favor holding that Serpico retaliated against Trombetta and other "political enemies" by persuading and influencing the school board to terminate his contract and to investigate his five-year old niece even though Serpico was not on the school board. The jury awarded Trombetta $1 million in punitive damages against Serpico.

b) *Figueroa v. Village of Melrose Park and Sam C. Pitassi*, 1:13-cv-3026: Blanca and Anthony Figueroa are siblings. The VMP hired Anthony as a firefighter and Blanca as a police officer. Blanca sued the MPPD and Defendant Pitassi alleging gender discrimination. The case ultimately settled sometime around the end of 2015. Less than two years later, in April 2017, the BOFPC brought charges against Anthony Figueroa for his purported residency violation. He was ultimately terminated even though several other firefighters live outside of the VMP in violation of the residency policy.

17

98. On belief, additional examples of misconduct will be uncovered after a reasonable opportunity to conduct discovery related to MPPD's disciplinary practices and policies, and its disproportionate enforcement of said practices and policies.

**Defendants Applied a Different Standard to Scatchell Jr. than to other Officers.**

99. Under the current MPPD's usual mode of operation, a culture of disparate treatment and *ad hoc* policymaking has flourished at the Melrose Park Police Department ("MPPD"). Conversely, MPPD's Brass trivializes or ignores certain departmental rule violations and even criminal misconduct when favored personnel are involved.

100. This policy is an implicit understanding between and among members of the MPPD resulting in a refusal or failure to report instances of misconduct of which they are aware despite their obligation to do so as sworn peace officers to protect themselves or their fellow officers from discipline, criminal prosecution, or civil liability.

101. At all times relevant, Defendants Pitassi, Castellan, and Serpico each had family members serving in local law enforcement and emergency services. Specifically, Pitassi's son and Castellan's nephew were officers in the Melrose Park Police Department (MPPD), while Serpico's son served as a firefighter in the Melrose Park Fire Department (MPFD).

| Officer | Incident Description | Discipline Imposed | Additional Comments |
|---|---|---|---|
| Pitassi Jr. | Negligent discharge of weapon and lying about it | Education courses; no vacation days lost | Accidental firearm discharge in a bathroom during a training break |
| Pitassi Jr. | Rear end Traffic Collision with Civilian | Two vacation days (restorable); transfer | Rear-ended a civilian's vehicle, resulting in hospitalization |
| Pitassi Jr. | Collision with a Skateboarder | None | Involved in a collision while on sick leave, no disciplinary action |
| Giovanni Castellan | Stalking a Victim | None | Inappropriately contacted a domestic violence victim and getting fired from District 89 for the incident. |
| Giovanni Castellan | Arrest for Disorderly Conduct | None | Arrested off-duty for a road rage incident. Disposition was deferred prosecution. |
| Giovanni Castellan | Violating Residency Policy | None | Bought his house in MPPD at least two years after becoming an officer. The real estate attorney was Serpico. |

| | | | |
|---|---|---|---|
| Giovanni Castellan | Excessive Force Complaint | None | Used excessive force during a traffic stop, broke suspect's arm |
| Giovanni Castellan | Firing at an unarmed African American suspect during a chase following a retail theft call and claimed that he accidentally discharged his weapon and pointed it at the victim. | None | |

102.    The table below underscores the minimal or non-existent disciplinary actions taken against these officers, raising concerns about the consistency and fairness of MPPD's disciplinary practices, particularly for officers related to department leaders.

| Incident Description | Discipline Imposed | Additional Comments |
|---|---|---|
| Removing shell casings from a crime scene | None | |
| Officer receiving unearned overtime pay | None | Officer was promoted to sergeant despite the misconduct. |
| Negligent handling leading to a stolen marked squad car | Forfeited three vacation days, demotion for one week | |
| Officer's personal vehicle stolen due to negligence | None | |
| Physical altercation with a resident | None | |
| Threatening another officer and supervisor | None | Officer was promoted to lieutenant after an informal investigation. |
| Theft and damage of a golf cart | None | Involved officers were intoxicated and faced no discipline. |
| Failure to drug test after a squad car accident | None | Similar to another incident where no immediate drug test was conducted. |
| Improper prisoner search leading to found drugs | None | |
| Prisoner death in holding cell | None | No meaningful investigation or discipline reported. |
| Writing bogus parking tickets | 30-day suspension | Significant harm caused to a civilian's legal standing. |
| Relocating another officer's breast milk storage | Forfeited an unknown number of days | |
| Inappropriate behavior with a harness and service weapon | None | Officer was later promoted despite the misconduct. |
| Off-duty altercation in a store | Unknown suspension | |
| Detaining and berating an anti-abortion activist | None | https://chicago.suntimes.com/2019/1/17/18363963/anti-abortion-activist-says-melrose-park-cop-chastised-and-left- him-in-maywood. |
| Hiring of an officer with a history of racial insensitivity | None | Hiring board claimed ignorance of the officer's past misconduct. |
| 2 Officers battering a handcuffed suspect | None | This incident was captured on video. |
| Off duty officer shot and killed an African American man | None | Returned to full duty and retired |

**103.** The common factor among the officers mentioned is that none have filed a civil rights complaint against any of the named defendants, nor are they affiliated with individuals who have, such as Scatchell Jr. or Scatchell Sr.

**104.** On belief, the BOFPC never terminated a police officer for abusing the sick leave policy, much less a first-time offender.

**105.** Instead, when the BOFPC sustained charges of sick leave abuse, the BOFPC did not punish the officer or suspended him. For example:

   **a)** The BOFPC suspended—not terminated—Officer Negron for violating the sick leave policy even though he had a prior disciplinary history, which included at least five prior sick leave violations, insubordinate behavior, and conduct unbecoming of a police officer.

   **b)** The BOFPC also did not suspend or terminate Defendant Serpico's son, former Melrose Park firefighter, Michael Serpico even though he violated at least six (6) direct orders and had not shown up to work in some time. On belief, the charges against Michael Serpico were withdrawn and he voluntarily resigned.

**Post-Termination Retaliation Against Scatchell Jr.**

**106.** Even though Defendants terminated Scatchell Jr., their retaliatory conduct has continued. Below are a few of the incidents that have occurred against Scatchell Jr. or his father:

   **a)** Defendants broke Scatchell Jr.'s personal lock on his department locker and removed his personal effects without contacting his counsel to be present when it was opened.

   **b)** Defendants refused to pay Scatchell Jr. for his unused vacation and compensatory time. MPPD officers work in 2018 for their 2019 vacation and compensatory time, which is based on a long-standing past practice.

c) Then on January 11, 2019, the Village rescinded his COBRA insurance coverage under the guise of "gross misconduct." On belief, the Village provided COBRA insurance coverage to other VMP employees it terminated for misconduct.

d) Sending a letter to Scatchell's counsel and family telling them that they could not submit any additional FOIA requests.

e) In 2019, Serpico acted as the legal representative for the buyer during the sale of Scatchell Sr.'s mother's property following her passing. Serpico asserted that the buyer deserved closing credits due to an alleged property encroachment despite also having managed the closing for the encroaching property himself.

f) In 2019, Serpico directed a red-light traffic violation notice to the deceased mother's residence, with the infraction dated two months prior and coincidentally arriving during the week of her funeral.

g) In 2021, when Scatchell Sr. aimed to run for trustee, objections were raised by two individuals associated with the VMP, citing potential voter confusion due to the absence of an initial to distinguish his name from his son's name on the ballot. Serpico and two others served on the electoral board and both Scatchell Jr. and Sr. were compelled to testify. Ultimately, Scatchell Sr.'s candidacy was disqualified from the ballot.

h) In 2022, a certain police officer drove past the Scatchell's residence during the Easter parade and flipped off the Scatchell family.

i) In 2023, that same officer saw both Scatchells at a restaurant, and he attempted to provoke the Scatchells into a physical altercation. When this was unsuccessful, he contacted the police department to falsely claim that the Scatchells had assaulted him.

107.    Defendants Serpico, Castellan, Pitassi, and Caira have done nothing to stop the retaliation as required by MPPD or Village policy. Plaintiff is informed and believes that other third parties were encouraged to act against Plaintiff. By allowing the retaliation against Plaintiff to continue unabated, Defendants condoned, ratified, encouraged, and agreed to the retaliation.

### COUNT I—MONELL CLAIM FOR EQUAL PROTECTION DEPRIVATION BASED ON RETALIATION
### Plaintiff v. Defendant Village of Melrose Park, Illinois

108.    The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

109.    Scatchell Jr. was singled out for discipline over his alleged conduct, when no other employee, of which there were several, committed the same or worse offenses and were not terminated. His firing was disproportionate and not reasonably justified given the facts surrounding his alleged actions.

110.    The retaliation was a result of the Village of Melrose Park's (VMP) entrenched policies, notably a "code of silence" within the Melrose Park Police Department (MPPD), tacitly approved by policymakers including Mayor Serpico and Director Pitassi. These practices institutionalized a culture of retaliation and discrimination.

111.    The VMP's punitive measures against the Plaintiff for his father's association with Lavalais, an African American, represent a breach of Equal Protection due to discrimination based on selective enforcement.

112.    The VMP's retaliation extends to employees' family members, employing abusive tactics irrespective of their actual culpability. This was a recognized practice among MPPD supervisors, who either engaged in or tolerated such actions.

113. Under color of law, Defendants Serpico, Pitassi, Castellan, and Caira engaged in direct actions against Scatchell Jr., including an extensive investigation and termination, deviating from VMP's standard policies due to his familial relations.

114. Retaliation against Scatchell Jr. was devised, approved, and carried out by individuals with final policymaking authority with respect to the actions taken, including as follows:

    **a)** As a home rule municipality, Mayor Serpico generally has free reign over promotions, hiring, firing, and general management of Melrose Park.

    **b)** By authority delegated to him by state law and village ordinance, Director Pitassi is responsible for the general management and control of the police department.

    **c)** Within the Department, Pitassi has delegated certain policymaking authority to his Deputy Chiefs Castellan and Caira including to take disciplinary actions and to issue instructions to department employees in the line of their duties.

    **d)** Director Pitassi was aware of the retaliation against Plaintiff, described above, and knowingly allowed it to continue unabated thereby encouraging, fostering, and causing the retaliation.

115. The misconduct described in this Count was the result of Defendant Village of Melrose Park's deliberate indifference to the policies and widespread practices described more fully above and in that:

    **a)** Municipal policymakers are aware of, condone and facilitate by their inaction, a "code of silence" in the MPPD, by which officers understand that any opposition to the administration amounts to a betrayal.

    **b)** Municipal policymakers are aware of, condone and facilitate the enforcement of the "code of silence" within the MPPD through the retaliation against any officer that takes any actions considered to be "adverse" to it.

    **c)** As a matter of both policy and practice, Melrose facilitated the very type of misconduct at issue here by allowing it to continue as a matter of practice within the MPPD, thereby leading officers to believe that the code of silence will be enforced throughout the Department and, in that way, directly encouraging future retaliation while ensuring compliance of its conduct.

**d)** As a matter of widespread practice so prevalent as to comprise municipal policy, officers of the MPPD who have dared to speak out about the misconduct of others have experienced retaliation a manner similar to that alleged by Plaintiff.

116. As part of this plan, Defendants engaged the conduct described throughout the complaint and including, but not limited to: (a) unlawfully accessing and disclosing Plaintiff's PII; (b) improperly restricting Plaintiff's right to travel outside of the VMP during his pre-approved compensatory time off; (c) unlawful surveillance of Scatchell Jr.; (d) mischaracterizing or disregarding evidence; (e) ignoring contrary evidence and failing to correct or report false or exculpatory evidence; (f) disregarding or deviating from protocol set forth by the CBA or SOP's; (g) accusing Scatchell Jr. of committing various crimes; (h) improperly withholding or redacting public records in violation of FOIA; and (i) terminating Scatchell Jr. based on retaliating against him for his association to his father for engaging in protected activity.

117. That as a result of employing an action, custom, policy, or practice espoused by the VMP to retaliate against Scatchell Jr. and other employees who complained about its unlawful employment practices, Plaintiff suffered and will likely continue to suffer harm including, without limitation, loss of vocation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment in their favor and against Defendant in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and for all such other relief that the Court deems just and proper.

**COUNT II –§ 1983 EQUAL PROTECTION DEPRIVATION BASED ON RETALIATION**
**Plaintiff John Scatchell Jr. v. All Individual Defendants**

118. The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

24

119.   The 14th Amendment to the United States Constitution guarantees the Plaintiff the right to be free from retaliation for protected activity, including the right to be free from third-party reprisals for his father's protected conduct.

120.   Plaintiff John Scatchell Jr. asserts that the 14th Amendment protects him from retaliation for his and his father's protected activities, including freedom from reprisals due to a family member's protected actions and the 1st Amendment protects him from retaliation based on his association to a person who engaged in protected activities.

121.   As described more fully above, by the direct and personal actions of the individual Defendants under color of law, Plaintiff was subjected to an extensive and unprecedented investigation, termination, and deviation from Defendant VMP's policies because of his familial relationship with his father, who engaged in protected speech and conduct.

122.   Defendants Serpico, Pitassi, Castellan, and Caira at all times, under color of law and through their state-based actions, directly or personally investigated, oversaw, surveilled, or specially attended to Scatchell Jr. in unprecedented ways outlined hereinbefore, during, and throughout his investigation, termination, and actions after his termination.

123.   That the misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

124.   As part of this plan, Defendants engaged the conduct described throughout the complaint and including, but not limited to: (a) unlawfully accessing and disclosing Plaintiff's PII; (b) improperly restricting Plaintiff's right to travel outside of the VMP during his pre-approved compensatory time off; (c) unlawful surveillance of Scatchell Jr.; (d) mischaracterizing or disregarding evidence; (e) ignoring contrary evidence and failing to correct or report false or exculpatory evidence; (f) disregarding or deviating from protocol set forth by the CBA or

SOP's; (g) accusing Scatchell Jr. of committing various crimes; (h) improperly withholding or redacting public records in violation of FOIA; and (i) terminating Scatchell Jr. based on retaliating against him for his association to his father for engaging in protected activity.

125. Scatchell Jr. contends these acts were part of a broader discriminatory policy or practice under 42 U.S.C. § 1983, causing significant harm including loss of employment, emotional distress, and reputational damage. He seeks judgment against the Defendants for damages, reinstatement, and legal fees, claiming their actions were driven by malice and indifference to constitutional rights.

126. As a result of the aforementioned deprivation, Plaintiff has suffered monumental injuries, *to wit*, subjection to a sham and unprecedented police surveillance and investigation, subjection to proceedings before the BOFPC, and termination from his job as a police officer and corresponding loss of pay, benefits, reputational damage, humiliation, and garden variety of emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff, John Scatchell Jr. requests that this Court enter judgment in his favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which he is entitled, and the Court deems just and proper.

### COUNT III - CIVIL RIGHTS ACT OF 1964 – ASSOCIATIONAL DISCRIMINATION
### Plaintiff v. Village of Melrose Park, Illinois

127. The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

128. At all times relevant, Defendant Village of Melrose Park, Illinois has been an Employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. 2000e, *et seq.*

129.    At all times relevant, Scatchell Jr. has been an employee within the meaning of Title VII and an employee of the Village of Melrose Park, Illinois.

130.    Scatchell Jr. has the fundamental right to preserve the sanctity and integrity of his family by way of his father-son relationship. Accord, *Thompson v. North American Stainless, LP*, 131 S. Ct. 863 (2011)(finding of retaliation based on a close family member's protected activity); *Zamora v. City of Houston*, 798 F.3d 326, 335 (5th Cir. 2015)(City retaliated against a police officer after his father sued the City of EEO violations)., cert. denied sub nom.; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015).

131.    At all times relevant, Scatchell Sr. engaged in conduct protected by Title VII, including, but not limited to, opposing unlawful and discriminatory practices toward the Village of Melrose Park, Illinois' only African American police sergeant, *to wit*, Kyll Lavalais and filing a lawsuit against the VMP and Defendants Pitassi and Castellan.

132.    Scatchell Jr. associated and never denounced or distanced himself from his father's actions and refused to disavow his father's right and lawful actions.

133.    Scatchell Jr.'s relationship to his father was the moving force behind the BOFPC charges, and his ultimate termination.

134.    The foregoing actions against Scatchell Jr. constitute a severe and pervasive hostile work environment, all that started during his employment with the Village, and such actions because of his association with his father, Scatchell Sr., who opposed the unlawful and discriminatory practices concerning Lavalais. This harassment created a hostile work environment, ultimately resulting in Plaintiff's unlawful termination.

135.    As a direct and proximate result of the discriminatory treatment described above Scatchell Jr. has suffered anguish, inconvenience, embarrassment, the loss of enjoyment of life and lost wages.

136.    Defendants' discrimination against Plaintiff based on his association to his father is oppressive, malicious, and exceptionally reprehensible, and demonstrated total disregard for and reckless indifference to Plaintiff's civil rights. Consequently, an award of punitive damages against the individual Defendants is warranted.

WHEREFORE, Scatchell Jr. respectfully requests that this Court enter judgment in his favor and against the Defendant VMP and provide the following relief:

a)  Enter a declaratory judgment determining that the actions complained of in this complaint are unlawful in violation of the provisions of 42 U.S.C. § 2000e-3 and issue a mandatory injunction against the VMP to take affirmative steps to ensure that it and all individuals working under it refrain from engaging in any actions with respect to Scatchell Jr. which are prohibited under the terms of the aforesaid Act;

b)  Issue a mandatory injunction directing the VMP to place Scatchell Jr. in the position of employment that he would have held had it not been for its retaliatory discriminatory conduct;

c)  Award Scatchell Jr. damages sufficient to compensate him for economic losses suffered as a result of the aforementioned conduct alleged in this complaint;

d)  Award Scatchell Jr. compensatory and exemplary damages to the extent permitted by law;

e)  Assess costs and reasonable attorney's fees against the VMP; and

f)  Provide such other relief as the Court deems to be equitable and just.

**COUNT IV–INTERFERENCE WITH RIGHT OF FAMILIAL ASSOCIATION, UNDER 42 U.S.C. § 1983, FIRST AND FOURTEENTH AMENDMENTS**

**Plaintiff John Scatchell Jr. v. All Individual Defendants**

137.    At all times, Scatchell Jr. has the fundamental right to preserve the sanctity and integrity of his family by way of his father-son relationship.

138.    The associational interest, the relationship between parent and child, is one that courts have recognized as protected. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984); *Gorman v. Rensselaer Cnty.*, 910 F.3d 40, 47 (2d Cir. 2018); *Clark v. Boughto*n, No. 3:21-CV-1372 (SRU), 2023 WL 5349149, at *9 (D. Conn. Aug. 21, 2023).

139.    At all times, Scatchell Jr. never distanced himself from his father's actions, never denounced his father's actions, and refused to disavow his father's right and lawful actions.

140.    Scatchell Jr. was not an accidental victim of the retaliation. To the contrary, injuring him was the Defendants' intended means of harming Scatchell Sr.

141.    The individual Defendants, because of Scatchell Sr.'s protected conduct, visited further retribution upon, Scatchell Jr., in a way that deprived him of his fundamental right to preserve the sanctity of the family relationship and for no better reason than that he is Scatchell Sr.'s son.

142.    Defendants' actions were substantially motivated by Scatchell Sr.'s protected activities given that the extensive internal investigation bypassed the procedures set forth in the Standard Operating Procedures and began 18 days after the Defendants were on notice of Scatchell Sr.'s EEOC charges.

143.    As a result of Scatchell Sr.'s exercise of protected speech, Defendants Village of Melrose Park, Mayor Serpico, Director Pitassi, Castellan, Rogowski, retaliated against Plaintiff

Scatchell Jr. by subjecting him to an unprecedented investigation and sham disciplinary proceedings before the BOFPC that resulted in Plaintiff Scatchell Jr.'s termination.

144.     Regardless of the BOFPC's termination decision, the sole reason Scatchell Jr. was sought for termination for such matters was because of his family relationship with his father.

WHEREFORE, for the foregoing reasons, Plaintiff, John Scatchell Jr. requests that this Court enter judgment in his favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which he is entitled, and the Court deems just and proper.

### COUNT V –42 U.S.C. § 1983 CONSPIRACY TO INTERFERE WITH RIGHT OF FAMILIAL ASSOCIATION, FIRST AND FOURTEENTH AMENDMENTS
### Plaintiff v. All Individual Defendants

145.     The Plaintiff realleges all other paragraphs of this First Amended Complaint and incorporates them as if fully set forth herein.

146.     To deprive Scatchell Jr. of his constitutional rights described in the previous paragraphs of this Complaint, the Defendants reached an agreement amongst themselves to retaliate against Scatchell Sr. and Scatchell Jr.

147.     On information and belief, defendants Serpico, Pitassi, Castellan, Caira, and other unknown employees and agents of Melrose agreed or reached a mutual understanding to commit acts in retaliation against Scatchell Sr. for his perceived opposition.

148.     Defendants violated the Scatchell Jr.'s clearly established right to freedom of association and by taking punitive actions against him in retaliation for Scatchell Sr.'s constitutionally protected expression of criticism of the department through his protected activities involving the Lavalais matter, filing an EEOC charge, and filing a lawsuit.

149.    As part of this plan, Defendants engaged in the following acts: (a) ignoring contrary evidence and failing to correct or report false information; (b) withholding evidence or public records pursuant to FOIA; (c) deleting or failing to preserve exculpatory communications and video evidence; (d) accusing Scatchell Jr. of committing various crimes; and (e) ultimately terminating Scatchell Jr.

150.    The object of the conspiracy was to terminate and harass anyone who engaged in what was perceived as opposition to the Serpico administration.

151.    Plaintiff was deprived of his Constitutional rights in the manner described in the preceding paragraphs, including the Fourteenth Amendment's right to be free from retaliation.

152.    That in furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity with state actors under color of law.

153.    That the misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

154.    As a result of the aforementioned deprivation of federal rights, Plaintiff has suffered and will likely continue to suffer injuries including but not limited to emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment in their favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which he is entitled and the Court deems just and proper.

### COUNT VI– INDEMNIFICATION
### Plaintiff v. Defendant Village of Melrose Park, Illinois

155.    The Plaintiff realleges all other paragraphs of this Complaint and incorporates them as if fully set forth herein.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment in their favor and against Defendants and order Defendant Village of Melrose Park, Illinois, to indemnify the other Defendants.

## JURY TRIAL DEMAND

**156.**    Plaintiff hereby requests a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, John Scatchell Jr., prays that this Honorable Court:

   **A.**  Conduct a mediated settlement conference or refer the case to its court-annexed mediation program to assist the parties in bringing about a settlement of this case; and,

   **B.**   Grant such further relief as the Court deems necessary and proper under the circumstances.

Respectfully submitted,

John Scatchell Jr.

By: /s/ Gianna Scatchell Basile, ESQ.