UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN A. SCATCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-1045 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| VILLAGE OF MELROSE PARK, RONALD SERPICO, SAM PITASSI, MICHAEL CASTELLAN, and PETER CAIRA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

John Scatchell Jr. served the public as a police officer in Melrose Park, Illinois for over six years, before getting fired. He lost his job after the Board of Fire and Police Commissioners found that he went waterfowl hunting with a convicted felon while on sick leave. He helped the felon get a shotgun, and then watched the felon shoot it at some unsuspecting ducks.

Since then, Scatchell Jr. has spent more than six years fighting his termination. The long-running saga has included two separate lawsuits.

In the first case, Scatchell Jr. challenged the Board's decision in state court, and lost. The state court upheld the Board's decision. The state court also rejected his attempt to amend the complaint late in the game, concluding that the amendment was untimely. Scatchell Jr. appealed that decision, and lost again.

While that case was ongoing, Scatchell Jr. opened a second front by filing a second lawsuit. He now attempts to bring claims that the state court viewed as untimely. Basically, Scatchell Jr. hit a wall in the first lawsuit, and he is trying to get around it by filing a second lawsuit.

Scatchell Jr. brings six claims against the Village of Melrose Park and four individuals who played a role in his termination. The Village was a defendant in the earlier state-court case, and so were two of the individuals. Scatchell Jr. alleges a vast conspiracy, claiming that Defendants punished him because the Village had a dispute with his father (a police officer, too).

Defendants moved to dismiss the complaint based on res judicata. As Defendants see things, Scatchell Jr. had an opportunity to bring those claims in the first lawsuit, so he can't bring

them now in a second lawsuit. In response, Scatchell Jr. addressed three of his claims, but did not come to the defense of the other three claims. When it was time to speak, he said nothing about those three claims.

For the following reasons, the Court grants Defendants' motion to dismiss.

**Background**

At the motion-to-dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Most of the time, courts stick to the pleading and look only to the facts in the complaint when deciding a motion to dismiss. But not always.

Courts can take judicial notice of facts, too. For a motion to dismiss, "the record . . . is limited to the language of the complaint and to those matters of which the court may take judicial notice." *See Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987); *see also* 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2023) ("[C]ourts resolving Rule 12(b)(6) motions may consider . . . items subject to judicial notice."). Taking judicial notice does not convert a motion to dismiss into a motion for summary judgment. *See Anderson v. Simon*, 217 F.3d 472, 474–75 (7th Cir. 2000) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)).

In particular, courts can take judicial notice of court orders, including orders entered by state courts. "[O]rders entered by a state court . . . are public records and appropriate subjects of judicial notice." *See In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018).

The ability to consider other litigation has special meaning here. The case at hand is not the first lawsuit brought by Scatchell Jr. about his termination. He previously challenged his termination by filing suit in state court, too.

For whatever reason, Scatchell Jr.'s 32-page amended complaint neglected to mention that this case is his second lawsuit on the same subject.

So, this Court will summarize the facts in the amended complaint. And then, this Court will give a tour of the highlights of the state-court litigation. In short, Scatchell Jr.'s complaint only tells half of the story. The orders by the Illinois courts tell the rest of the story.

**I.      The Complaint at Hand**

The complaint tells a long story of retaliation. Here's the punchline. Scatchell Jr.'s father, Scatchell Sr., had a dispute with Melrose Park. And Scatchell Jr. believes that the Village terminated him to get back at his father.

Scatchell Jr. is a resident of Melrose Park, Illinois. *See* Am. Cplt., at ¶ 5 (Dckt. No. 110). He was a full-time Melrose Park police officer for over six years. *Id.*

His father, Scatchell Sr., was also a Melrose Park police officer. *Id.* at ¶ 15. Scatchell Sr. was a lieutenant for over 33 years. *Id.*

### A.     The Problems with Scatchell Sr.

The story begins with a dispute about a residency requirement.

Melrose Park has a residency requirement for its police officers. The officers must live in Melrose Park. *Id.* at ¶ 24. But the Village has an exception for minorities – they can live outside the Village. *Id.* at ¶ 26.

The complaint alleges that the Village failed to apply the rule and the exception in an even-handed way. In fact, the complaint alleges that the Village seemed to apply the exact opposite of the rule. Melrose Park gave a hard time to an African American officer who lived elsewhere, even though the exception allowed him to live outside the Village. And Melrose Park looked the other way when white officers lived outside the Village.

Specifically, the complaint alleges that the Village enforced the residency requirement against Lieutenant Kyll Lavalais, the only African American officer, despite the exception for minorities. *Id.* at ¶ 22. On the flipside, several non-minority officers lived outside Melrose Park, in violation of the residency rule, but the Village did nothing. *Id.* at ¶ 25.

Lavalais filed a formal written grievance with the Melrose Park Fraternal Order of Police ("FOP") and requested arbitration. At the time, Scatchell Sr. was the president of the FOP. *Id.* at ¶ 27.

Scatchell Sr. supported the grievance and the request for arbitration. The FOP emailed the Village and disclosed that the FOP intended to arbitrate Lavalais's grievance. *Id.* at ¶ 28.

The Village apparently wasn't pleased with the FOP's decision to pursue the grievance. So it punished Scatchell Sr. by pulling the plug on a promotion.

At the time, Scatchell Sr. was due for a promotion. In fact, a promotion was on the agenda – literally. The day after the FOP's email about Lavalais, the Village Board of Trustees released a meeting agenda that listed Scatchell Sr.'s appointment to Deputy Chief. *Id.* at ¶ 29.

Things soon changed. A few days later, the Trustees' attorney told Scatchell Sr. that his promotion was going to be "tabled" by the Trustees at the meeting. *Id.* at ¶ 34. During the meeting, Mayor Ronald Serpico prompted a Trustee to table Scatchell Sr.'s promotion. *Id.* at ¶ 36.

3

Serpico eventually nominated someone else for the role of Deputy Chief, and the Trustees approved that person. *Id.* at ¶ 41. That switch was unusual. Until then, the Village had never announced a promotion that it did not ultimately appoint. *Id.* at ¶ 42.

Things got worse for Scatchell Sr.

A lawyer for the Village claimed that Scatchell Sr. had twice threatened legal action against the Village. *Id.* at ¶ 38. Unknown individuals set off dynamite in front of the Scatchells' home. *Id.* at ¶ 47.

Scatchell Sr. was voted out as the FOP president, and then the FOP revoked its decision to arbitrate on behalf of Lavalais. *Id.* And Scatchell Sr. was "involuntarily transferred" – in other words, demoted – to a non-supervisory role with non-substantive duties. *Id.*

Scatchell Sr. responded by filing a charge with the EEOC, alleging retaliation for trying to help Lavalais. *Id.* at ¶ 48.

As Scatchell Jr. sees it, the EEOC charge was the straw that broke the camel's back. The Village decided to go after Scatchell Jr. as a way to punish Scatchell Sr. *Id.* at ¶¶ 80–88.

**B.     The Problems with Scatchell Jr.**

The complaint alleges that the Village retaliated against Scatchell Jr. to get back at his father. The story gets long. The punchline is that the Village performed a flawed investigation of Scatchell Jr., and ultimately fired him.

Within three weeks of Scatchell Sr.'s EEOC charge, three other Melrose Park police officers – Sam Pitassi, Michael Castellan, and Peter Caira – began an informal investigation of Scatchell Jr. *Id.* at ¶ 51.

The investigation had to do with sick leave. Scatchell Jr. had a pre-existing, work-related back injury. *Id.* at ¶ 54. He exacerbated it. *Id.* His doctor advised against working, so he went on sick leave. *Id.* at ¶¶ 55–56.

A few days later, an anonymous person slid a letter under Castellan's door. *Id.* at ¶ 58. The letter accused Scatchell Jr. of going hunting while on sick leave. *Id.*

Scatchell Jr. claims that the investigation was "marked by retaliatory bias, deviating from its standard protocols and policies." *Id.* at ¶ 62. Pitassi, Castellan, and Caira spearheaded the investigation.

According to Scatchell Jr., the police department violated its own procedural rules when it "[n]eglect[ed] to record all interviews with members and witnesses, . . . [d]en[ied] Scatchell the chance to present additional information or mitigating factors, . . . and den[ied] Scatchell the opportunity to review the results of any further investigation." *Id.* at ¶ 71.

4

Scatchell Jr. claims that the officers never verified whether the anonymous tip was reliable. *Id.* at ¶ 73. The investigation took over 200 hours (in comparison, a typical murder investigation took only 25 hours). *Id.* at ¶ 66. The surveillance of Scatchell Jr. and his family extended beyond the investigation, which Scatchell Jr. viewed as a sign of harassment. *Id.* at ¶ 65.

On March 27, 2018, Pitassi and Castellan filed a 12-count "Statement of Charges" against Scatchell Jr. They referred the charges to the Board of Fire and Police Commissioners ("the Board" or "BOFPC"), seeking Scatchell Jr.'s termination. *Id.* at ¶ 81.

The charges against Scatchell Jr. became a point of leverage against Scatchell Sr. Scatchell Sr. was "repeatedly encouraged by other police officers to retire to 'save' Scatchell Jr.'s job at the police department." *Id.* at ¶ 83.

On April 18, 2018, Scatchell Sr. announced his retirement – less than a month after the charges were filed against Scatchell Jr. *Id.* at ¶¶ 81–84. Scatchell Sr. retired, but it didn't save Scatchell Jr.'s job.

The Board held a hearing on the charges against Scatchell Jr. from April to November, 2018. *See* BOFPC Decision, at 3 (Dckt. No. 118-3).

On December 6, 2018, the Board found that "cause exist[ed] for the discharge." *Id.* at 7. The Board ordered that Scatchell be "discharged and removed from his position as a police officer with the Village of Melrose Park." *Id.*

The Board's decision led to his termination. The Village fired Scatchell Jr. on December 7, 2018. *See* Am. Cplt., at ¶ 86 (Dckt. No. 110).

Scatchell Jr. takes issue with how the Board handled things. In his view, the Board "admit[ted] that they did not have sufficient evidence to sustain the charges." *Id.* at ¶ 91. The Board also "[f]ail[ed] to consider mitigating evidence," and denied his "discovery rights throughout the BOFPC hearing," among a host of other issues. *Id.* Scatchell Jr. views the proceeding as "a total sham [that] would have never occurred but-for the Defendants' hell-bent determination to punish Scatchell Sr." *Id.* at ¶ 90.

The complaint alleges that other officers committed more serious violations, but received lighter discipline. *Id.* at ¶ 101. For example, Pitassi's son, a police officer, negligently discharged his weapon and then lied about it. *Id.* As punishment, Pitassi Jr. merely had to complete a few education courses. *Id.* He didn't even lose vacation days. *Id.*

The Board sometimes punished people for abusing sick leave, too. But in other cases, the most severe discipline was a suspension. *Id.* at ¶ 105.

Scatchell Jr. claims that the retaliation didn't end when he was fired. He says that Defendants broke into his department locker without his permission, refused to pay him for his

5

unused vacation and compensatory time, and rescinded his health insurance under the guise of gross misconduct. *Id.* at ¶ 106.

## II. The State Court Litigation

That's the story that Scatchell Jr. tells in his amended complaint. But it isn't the full story. Between his termination and the filing of his amended complaint in this Court, Scatchell Jr. challenged his termination by filing suit in state court.

On December 31, 2018, Scatchell Jr. filed a complaint in the Circuit Court of Cook County, seeking review of the termination and the Board's decision. *See* Verified Cplt. (Dckt. No. 118-4).

Scatchell Jr. sued the Board, the Village of Melrose Park, Pitassi, and Castellan, plus a few other police officers who are not defendants in the current lawsuit. *Id.* at 1. In a nutshell, he claimed that the Board's decision was against the manifest weight of the evidence. *Id.* at 9–10. He also argued that the Board's proceedings violated due process, and that Board itself was illegally constituted. *Id.* at 11–18.

The Circuit Court ultimately affirmed the Board's decision. *See* 12/15/20 Order Affirming Administrative Decision, *Scatchell v. Bd. of Fire & Police Comm'rs for the Vill. of Melrose Park*, No. 2018 CH 16150 (Ill. Cir. Ct. 2020) (Dckt. No. 118-5). It started by summarizing the Board's findings.

The Board found that Scatchell Jr. had abused the sick-leave policy by going on a hunting trip with Vito Scavo, a former Melrose Park police chief and convicted felon, and allowing Scavo to possess and fire a shotgun. *Id.* at 2; *see also Scatchell v. Bd. of Fire & Police Comm'rs for the Village of Melrose Park*, 213 N.E.3d 446, 452–53 (Ill. App. Ct. 2022). The Board also found that Scatchell Jr. refused to testify after being ordered to do so, even though he was advised that his statements could not be used against him in a criminal proceeding. *See* Order Affirming Administrative Decision, at 2.

The Circuit Court concluded that the Board's findings of fact were "not against the manifest weight of the evidence. On the contrary, they [we]re well-supported by the evidence." *Id.* at 5.

That same day, the Circuit Court also ruled on Scatchell Jr.'s motion for leave to file an amended complaint. *See* 12/15/20 Order Denying Motion for Leave to Amend, *Scatchell v. Bd. of Fire & Police Comm'rs for the Village of Melrose Park*, No. 2018 CH 16150 (Ill. Cir. Ct. 2020) (Dckt. No. 118-8). Scatchell Jr. wanted to add "eight new counts alleging various statutory and constitutional violations, including civil rights violations." *Id.* at ¶ 4. Scatchell Jr. also wanted to add "entirely new Defendants," meaning Serpico and Caira. *Id.*

The Circuit Court denied the motion for leave to amend. In its view, the amendment "does not cure a defect in the existing Complaint; rather, it seeks to add new claims." *Id.* at ¶ 6.

The amendment was untimely. Scatchell Jr. "did not attempt to file the new claims in [the state] case until the existing issues were briefed and awaiting argument." *Id.*

At the end of its order, the Circuit Court declared that "[t]ogether with the Court's other order issued today, this is a final order disposing of all matters." *Id*. at 2.

### III. The Lawsuit at Hand

Meanwhile, as that state case was ongoing, Scatchell Jr. filed a second lawsuit in state court in January 2020. Defendants promptly removed it to federal court. That's the case at hand.

Judge Feinerman, this Court's predecessor (before reassignment), stayed the case pending a resolution of the other, first-filed case in state court. *See Scatchell v. Village of Melrose Park*, 2021 WL 2291072, at *1 (N.D. Ill. 2021).

### IV. The State Court Appeal

Scatchell Jr. then appealed his first state-court case to the Illinois Appellate Court. But he didn't fare any better.

On appeal, Scatchell argued that the Circuit Court had abused its discretion by denying his request for leave to file an amended complaint. *See Scatchell*, 213 N.E.3d at 472.

In September 2022, the Appellate Court issued its decision and ruled against Scatchell Jr. The Appellate Court ruled that Scatchell Jr. had filed his motion for leave to amend too late.

The Appellate Court took note of the fact that the proposed amendment was about retaliation for his father. "In the proposed amendment – which was more than 60 pages long – Scatchell alleged a complicated web of conspiracy and bias against him . . . [a]mong other things, he alleged the department investigated him because his father filed a complaint against the Village, accusing it of racial discrimination." *Id.* at 472.

According to the Appellate Court, Scatchell Jr. "could have raised the [additional claims] when he filed his original administrative-review complaint; he was raising claims of bias as early as June 2018." *Id.* at 474.

The Appellate Court affirmed the judgment of the Circuit Court, holding that "[t]here was nothing arbitrary or unreasonable about th[e] [Circuit Court's] conclusions." *Id.* at 473–74.

### V. Back to Federal Court

Meanwhile, the case in federal court remained stayed, awaiting the resolution of the state-court litigation. While it was stayed, the case was reassigned from Judge Feinerman to this Court.

7

In September 2023, the Illinois Supreme Court denied Scatchell Jr.'s petition for leave to appeal. *See Scatchell v. Bd. of Fire & Police Comm'rs for the Village of Melrose Park*, 221 N.E.3d 331 (Table) (Ill. 2023). So, at long last, the state-court litigation was over.

When the state litigation ended, this Court lifted the stay. *See* 11/7/23 Order (Dckt. No. 97).

Scatchell Jr. requested and received leave to file an amended complaint. *See* 2/5/24 Order (Dckt. No. 109). The amended complaint includes six counts against five Defendants, including the Village and four individuals (Serpico, Pitassi, Castellan, and Caira).

The first claim is a *Monell* claim about equal protection (Count I). Scatchell Jr. brings that claim against the Village (only).

The second claim is an equal protection claim under section 1983 based on the retaliation (Count II). Scatchell Jr. brings that claim against all Defendants.

The third claim alleges associational discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count III). Scatchell Jr. brings that claim against the Village (only).

The fourth claim alleges interference with the right of familial association under the First and Fourteenth Amendments (Count IV). Scatchell Jr. brings that claim against all Defendants.

The fifth claim alleges a conspiracy to interfere with the right of familial association (Count V). Scatchell Jr. brings that claim against all Defendants.

The sixth claim seeks indemnification (Count VI). Scatchell Jr. brings that claim against the Village (only).

Defendants moved to dismiss. *See* Mtn. to Dismiss (Dckt. No. 115). Scatchell Jr. filed a response, but he didn't respond to everything. Scatchell Jr. responded to the arguments about three of the six claims against the Village.

But he didn't respond to the arguments about the other three claims against the Village. And he didn't respond to any of the arguments about the claims against the four individuals.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell*

8

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Analysis

Scatchell Jr.'s claims don't get very far before hitting two roadblocks. The first barrier is waiver, and the second is res judicata (also called claim preclusion).

Waiver applies to the claims against the individuals, and to three of the six claims against the Village. Res judicata applies to the claims against the Village.

The first problem is waiver. Defendants moved to dismiss the complaint in its entirety, including the claims against the individuals. *See* Mtn. to Dismiss (Dckt. No. 115); Defs.' Mem. (Dckt No. 118). Scatchell Jr. responded, but the response was not fully responsive.

Scatchell Jr. did not respond to any of the arguments for dismissal of the claims against the individuals. He didn't come to the defense of Count II (equal protection deprivation, based on retaliation), Count IV (interference with the right of familial association), or Count V (conspiracy to interfere with the right of familial association). *See generally* Pl.'s Resp. (Dckt. No. 124).

When it was time to say something, Scatchell Jr. had nothing to say. The failure to respond to the motion to dismiss those claims constitutes a waiver. That is, Scatchell Jr. has abandoned the claims against the individuals by failing to respond to that portion of the motion to dismiss. *See Braun v. Village of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022) (Sykes, C.J.) ("[T]he judge dismissed this claim based on Braun's failure to address it in his response to the motion to dismiss. The judge properly construed Braun's omission as a waiver."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply th[e] rule [of waiver] where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); *Stanciel v. Gramley*, 267 F.3d 575, 577 (7th Cir. 2001) (affirming a district court that "dismiss[ed] [the plaintiff]'s official capacity and state tort claims due to [his] failure to respond to defendants' arguments concerning these issues").

In fact, the Seventh Circuit recently confirmed that a district court may treat a claim as abandoned when a plaintiff comes to the defense of some, but not all, of the claims. *See Marcure v. Lynn*, 992 F.3d 625, 633 (7th Cir. 2021) ("*Stanciel* is distinguishable from this case. In contrast to Marcure, Stanciel filed a response that defended only some of the claims challenged by the motion to dismiss, despite the district court's clear warning of the consequences for failure to defend them. Stanciel's choice could be understood as waiver of the claims that he left unaddressed.").

The same conclusion applies to those three counts against the Village. Scatchell Jr. didn't merely fail to respond to the arguments about Counts II, IV, and V as applied to the individuals. He didn't respond to the arguments about those three counts at all. Scatchell Jr. had

9

an opportunity, and he took a pass. So those three counts are waived and abandoned as to the Village, too.

After that roadblock, only three claims remain, and they're all against the Village. The remaining claims include the *Monell* claim (Count I), the associational discrimination claim under Title VII (Count III), and the indemnification claim (Count VI).[1]

The second problem is res judicata. Again, Scatchell Jr. has three remaining claims against the Village. But this case isn't Scatchell Jr.'s first rodeo. And the Village was at the last rodeo.

Res judicata is an affirmative defense. *See U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). But a plaintiff "may plead himself out of court by alleging . . . the ingredients of a defense." *Id.* And a court can take judicial notice of orders by other courts, too. So "the doctrine of res judicata may properly be raised as a basis to dismiss a complaint pursuant to Rule 12(b)(6)." *Anderson v. Guaranteed Rate, Inc.*, 2013 WL 2319138, at *3 (N.D. Ill. 2013).

The doctrine of res judicata prohibits parties from relitigating claims that were raised or could have been raised in a previous action. *See Johnson v. Cypress Hill*, 641 F.3d 867, 874 (7th Cir. 2011) (citation omitted). The principle behind res judicata is simple: if you have a shot, take the shot or forever hold your peace.

Res judicata applies to a state court's review of an administrative decision. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982) (holding that under 28 U.S.C. § 1738, a federal district court is required to give preclusive effect to a state court's decision to uphold an administrative agency's decision).

A federal court must apply Illinois law about res judicata when evaluating the effect of a state-court judgment. *See Garcia v. Village of Mount Prospect*, 360 F.3d 630, 634 (7th Cir. 2004) ("A judgment of a state court sitting in an administrative review capacity will have preclusive effect on claims and issues brought in subsequent lawsuits *according to the law of the state where the judgment was rendered*.") (emphasis added); *Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.").

That said, state law is the first step, but not the last stop. A "federal court can deny preclusion if the state court proceedings denied the parties a fair and full opportunity to litigate by falling below the minimum requirements of due process." *Garcia*, 360 F.3d at 634.

The Court will follow the path laid down by the Seventh Circuit in *Garcia*. First, the Court will assess whether the claims are barred by res judicata under Illinois law. Second, the Court will evaluate if Scatchell Jr. "had a full and fair opportunity to litigate his claims." *Id.* at 639. Finally, the Court will consider Scatchell Jr.'s other objections.

---

[1] The indemnification claim is also dismissed for an independent reason. The individual Defendants are dismissed, so there is no one left to indemnify.

I.  **Res Judicata Under Illinois Law**

The first task is to decide whether res judicata under Illinois law applies to Scatchell Jr.'s remaining claims. It does.

Res judicata under Illinois law has three requirements. "Under Illinois law, in order for res judicata to apply to [Plaintiff's] current civil-rights claims, the circuit court's previous affirmance of the Board's decision must: (1) have reached a final judgment on the merits; (2) involve the same parties or their privies as the current claims; and (3) constitute the same cause of action as the current claims." *Id.* at 635 (citing *Pirela v. Village of North Aurora*, 935 F.2d 909, 911 (7th Cir. 1991)); *see also River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998).

The first requirement is the existence of a final judgment on the merits. That's not much of an issue here.

"An order is final and thus appealable if it either terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate branch thereof." *Hull v. City of Chicago*, 520 N.E.2d 720, 733 (Ill. App. Ct. 1987).

The state-court litigation ran its course, and Scatchell Jr. hit the end of the road. The Circuit Court denied Scatchell Jr.'s motion for leave to amend as untimely. And in doing so, it held that its dismissal was "a final order disposing of all matters." *See* Order Denying Mtn. for Leave to Amend, at 2.

The lower court then entered final judgment against him, and the Appellate Court affirmed. Scatchell Jr. litigated the case all the way to the Illinois Supreme Court. There was nowhere else to go. The state-court litigation reached the end of the line.

The second requirement is that the two cases must involve the same parties. That's not an issue either. The state-court case involved Scatchell Jr. and Melrose Park, and so do Scatchell Jr.'s remaining claims in the current case.

The third and final requirement is whether the earlier case and the current case involve the same causes of action.

Illinois uses a "transactional test" to decide whether causes of action are the same for purposes of res judicata. *See River Park*, 703 N.E.2d at 893. Under that test, "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give [sic] rise to the assertion of relief." *Id.* at 891 (citation omitted).

In other words, res judicata can apply under Illinois law even if two cases involve different claims. What matters is whether the claims arise from the same set of facts.

Illinois courts consider "whether the facts are related in time, space, origin, or motivation." *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). "The bar of res

11

judicata extends not just to what was actually decided in the first suit but also to those matters that could have been decided in that suit." *Cooney v. Rossiter*, 986 N.E.2d 618, 622 (Ill. 2012); *see also Davis v. City of Chicago*, 53 F.3d 801, 802 (7th Cir. 1995) ("Like other states, Illinois precludes sequential pursuit not only of legal theories actually litigated, but also of those that could have been litigated, in the first action.").

In *Hayes*, the Seventh Circuit analyzed a similar case about the termination of a police officer. The police board investigated him for misconduct, and he was fired. *See Hayes*, 670 F.3d at 812. He petitioned the Circuit Court for administrative review. The Circuit Court upheld the ruling, and the Appellate Court affirmed. *Id.*

Hayes filed suit in federal court, bringing discrimination and retaliation claims. *Id.* He later withdrew the retaliation claim, but kept the discrimination claim. *Id.*

The district court dismissed the discrimination claim as barred by res judicata. *Id.* The court concluded that the officer could have raised that claim when he challenged his termination as part of the administrative-review process. *Id.*

The Seventh Circuit affirmed. "We find that there is such an identity between the two claims because the underlying transaction of both actions is not only related in time, space, origin, and motivation, but the underlying transaction – Hayes's termination from the Chicago Police Department – is identical." *Id.* at 814.

The same conclusion applies here. In the state-court case, Scatchell Jr. claimed that he was wrongfully investigated, charged, and terminated. And now, Scatchell Jr. alleges basically the same thing. The two cases share a common set of facts about the investigation, the charges, and the termination.

In sum, the case at hand satisfies all of the requirements for res judicata under Illinois law.

## II. Opportunity to Litigate

The next question is whether Scatchell Jr. "had a full and fair opportunity to litigate his claims." *See Garcia*, 360 F.3d at 639. He did.

Once again, the rule applies to claims that a plaintiff actually brought, and could have brought, in prior litigation. "As a corollary to the transactional rule, Illinois adopted the doctrine of merger and bar which precludes the sequential pursuit not only of claims actually litigated, but of those that could have been litigated." *Id.*

That rule equally applies to cases in state court that challenge administrative proceedings. If a plaintiff "could have joined his federal claims with the administrative appeal of the Board's decision, then he had a full and fair opportunity to litigate those claims under Illinois law." *Id.*

Here, Scatchell Jr. could have brought his claims in state court. State courts and federal courts share jurisdiction over civil actions brought under Title VII and section 1983. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990); *see also Dookeran v. County of Cook*, 719 F.3d 570, 577 (7th Cir. 2013); *Staats v. County of Sawyer*, 220 F.3d 511, 516 (7th Cir. 2000).

The Seventh Circuit has recognized that plaintiffs have a reasonable opportunity to bring their constitutional claims in state court when they challenge an administrative decision. A plaintiff has a "reasonable opportunity to bring his equal protection claim" and other constitutional claims "before the circuit court because Illinois allows a plaintiff to join constitutional claims under § 1983 with a request for administrative review." *See Manley v. City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001) (citing *Davis v. City of Chicago*, 53 F.3d 801, 803 (7th Cir. 1995)).

*Garcia* sheds light yet again. The Seventh Circuit held that the officer had a full and fair opportunity to bring his discrimination claim in state court with his administrative appeal. "Because Illinois circuit courts could have exercised jurisdiction over Garcia's federal civil-rights claims (either directly or after Garcia exhausted available administrative remedies), Garcia could have joined those civil-rights claims with his administrative appeal of the Board's decision. Consequently, he had a full and fair opportunity to litigate his civil-rights claims in the Illinois legal system." *Garcia*, 360 F.3d at 639.

Scatchell Jr. argues that his Title VII claim remains viable because "the relief sought in these earlier cases was unavailable due to jurisdictional limitations." *See* Pl.'s Resp., at 14 (Dckt. No. 124). Not so. Again, Scatchell Jr. could have brought a Title VII claim in state court. And as the Illinois Appellate Court noted, "Scatchell could have made th[e] administrative review action his original forum for raising [the federal] claims." *See Scatchell*, 213 N.E.3d at 474.

In sum, Scatchell Jr. had a full and fair opportunity to bring his claims in state court.

### III.    Other Objections

Scatchell Jr. offers three other reasons why this Court should not apply res judicata. He offers reasons, but not good reasons.

#### A.    Express Reservation

First, Scatchell Jr. argues that the Appellate Court expressly reserved his right to pursue his claims in federal court.

The Illinois Supreme Court recognizes the Second Restatement's "expressly reserved" exception to res judicata. *See Green v. Northwest Community Hosp.*, 928 N.E.2d 550, 554 (Ill. 2010). Res judicata does not apply when "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action." *Id.* (citing Restatement (Second) of

13

Judgments § 26(1)(b) (Am. Law Inst. 1982)). That is, res judicata does not apply when the first court expressly preserves the ability of a plaintiff to bring a claim in a second lawsuit.

A good example is when a lower court dismisses a claim, but does so without prejudice. "A determination by the court that its judgment is 'without prejudice' (or words to that effect) to a second action on the omitted part of the claim, expressed in the judgment itself, or in the findings of fact, conclusions of law, opinion, or similar record, unless reversed or set aside, should ordinarily be given effect in the second action." *See* Restatement (Second) of Judgments § 26(1)(b) cmt. b (Am. Law Inst. 1982).

The express reservation must be specific, too. *See D & K Props. Crystal Lake v. Mut. Life Ins. Co. of N.Y.*, 112 F.3d 257, 261 (7th Cir. 1997) ("The identification [of a claim] must not only be express, but also the claim must be specific. A blanket reservation that seeks to reserve all causes of action reserves nothing.").

The only basis for Scatchell Jr.'s argument is a single, solitary sentence from the Appellate Court's opinion. There, the Appellate Court stated that "the fact remains that Scatchell will have his day in court on these claims of bias – federal court, before Judge Feinerman." *See Scatchell*, 213 N.E.3d at 474. He relies on one sentence in one paragraph of a 145-paragraph opinion.

Scatchell Jr.'s argument fails, for a few different reasons.

For starters, Scatchell Jr. is relying on a sentence from the Appellate Court, not the lower court. Needless to say, the lower courts are where all the action is. Parties bring claims in the lower courts, not in the appellate courts. By the time a case goes up on appeal, all the shots are fired, and the smoke is starting to clear.

Res judicata depends on claims that a plaintiff presented, or could have presented, in the trial court, not on appeal. So, when the Appellate Court offered that observation, the res judicata ship had already sailed.

What's more, the Appellate Court didn't guarantee that Scatchell Jr. could bring the bias claims in federal court. If anything, the Appellate Court recognized that the viability of any bias claims was up in the air.

When read as a whole, the paragraph was about claim-splitting. "[D]efendants are challenging that federal action with arguments of claim-splitting . . . and Scatchell would like to at least try to avoid that problem by simply amending the administrative-review complaint here." *Id.*

The Appellate Court didn't say that there was no "problem." *Id.* Quite the opposite. The Appellate Court said that Scatchell Jr. would have his "day in court" in federal court. *Id.* And that "day in court" would include any arguments that Defendants might make in the future, including res judicata. "Whether he prevails certainly cannot be the decisive factor for us." *Id.*

The Appellate Court issued its decision against the backdrop of a ruling by Judge Feinerman months earlier. Judge Feinerman stayed the federal litigation, and expressly noted the possibility of preclusion. "Once those proceedings conclude, the stay will be lifted, and Defendants may seek dismissal of this suit on preclusion grounds and/or renew their motion to dismiss on claim-splitting grounds." *See Scatchell*, 2021 WL 2291072, at *6.

With that background in mind, the best reading of the sentence from the Appellate Court is straightforward. The Appellate Court noted that claims might be precluded, or they might not be – and Judge Feinerman would sort it out.

That's a far cry from an express reservation of an ability to bring a claim in federal court.

### B. Fraud and Misrepresentation

Next, Scatchell Jr. argues that an exception for "fraud or misrepresentation" applies. *See* Pl.'s Resp., at 10 (Dckt. No. 124).

Scatchell Jr. points to language in the Second Restatement that recognizes a fraud exception. "A defendant cannot justly object to being sued on a part or phase of a claim that the plaintiff failed to include in an earlier action because of the defendant's own fraud." *See* Restatement (Second) of Judgments § 26 cmt. j (Am. Law Inst. 1982).

Scatchell Jr. believes that the exception applies because one of his claims alleges fraud. "The case at hand involves allegations of the Village of Melrose Park engaging in undisclosed and improper ex parte communications, which Scatchell's legal team was not made aware of." *See* Pl.'s Resp., at 10 (Dckt. No. 124).

That's not the sort of fraud that the Second Restatement has in mind. The fraud exception is not about fraud claims per se. That is, the exception does not apply when the *substance* of the claim is about fraud. The fraud exception applies when a party used fraud to prevent another party from *making a claim*.

That's not the situation here. Scatchell Jr. does not allege that anyone used fraud to prevent him from bringing his claims in state court.

And in any event, the Appellate Court already addressed this argument. The Appellate Court noted that Scatchell Jr. tried to bring claims about "improper ex parte communications," but he did so too late. *See Scatchell*, 213 N.E.3d at 472.

### C. Fundamental Unfairness

Finally, Scatchell Jr. argues that the doctrine of res judicata is "fundamentally equitable." *See* Pl.'s Resp., at 14–15 (Dckt. No. 124). He believes that the doctrine is a technicality that "emphasizes technical preclusion over substantive justice." *Id.* at 16.

15

Illinois law does allow a limited window of opportunity to appeal to fundamental fairness. "[T]he doctrine of res judicata need not be applied where fundamental fairness so requires." *Weisman v. Schiller, Ducanto & Fleck*, 733 N.E.2d 818, 822 (Ill. App. Ct. 2000).

But the "fundamental fairness" exception usually shows up in criminal cases. *See Pabian v. PNC Bank, N.A.*, 2019 WL 6728441, at *4 (Ill. App. Ct. 2019) ("The fundamental fairness exception applies most frequently in criminal cases, especially where application of the rule would deny the defendant his constitutional rights."); *see also People v. Luzaj*, 2018 WL 1308237, at *4 (Ill. App. Ct. 2018) (applying the exception in favor of a criminal defendant's postconviction claim which would have been "barred by a strict application of res judicata" where the defendant claimed that his trial counsel was ineffective for failing to convey a plea offer before trial).

For example, the Illinois Supreme Court applied the exception to an argument about effective assistance of counsel. *See People v. Somerville*, 245 N.E.2d 461 (Ill. 1969). In contrast, the Seventh Circuit didn't apply the exception to an argument about false testimony before a grand jury. *See Nwoke v. Lewis*, 62 F. App'x 702, 704 (7th Cir. 2003).

This Court sees no fundamental unfairness. The simple truth is that Scatchell Jr. had plenty of chances to raise any claims that he wanted to raise. He has had his day in court – *lots* of days in court – and then some.

If anything, fundamental fairness cuts the other way. Defendants are entitled to fairness, too. And fairness includes the need for finality. At some point, parties need to know that a case is over.

And now, this one is.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's amended complaint is hereby granted. The amended complaint is dismissed with prejudice.

Date: March 26, 2025

Steven C. Seeger
United States District Judge